Michael DiChiara, Esq.
Krakower DiChiara LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Telephone: 201-746-0303
Fax: 347-765-1600

*Attorneys for Named Plaintiff and the ERISA and Rule 23 NYLL Class Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------x
**DEBRA JULIAN, on behalf of herself and others similarly situated,**

               **Plaintiff,**

   v.

**METLIFE, INC., METROPOLITAN LIFE INSURANCE COMPANY, and METLIFE INSURANCE COMPANY, USA,**

               **Defendants.**
----------------------------------------------------------x

**COMPLAINT**

**ERISA AND NYLL CLASS ACTION**

**CIVIL ACTION NO.**

**DEMAND FOR JURY TRIAL**

Plaintiff DEBRA JULIAN, individually and on behalf of herself and all others similarly situated, brings this Class Action Complaint against Defendants METLIFE, INC., METROPOLITAN LIFE INSURANCE COMPANY, and METLIFE INSURANCE COMPANY, USA ("Defendants") and alleges as follows:

## INTRODUCTION

1. Plaintiff alleges that she is: (i) entitled to unpaid wages from Defendants for working more than forty (40) hours in a week and not being paid overtime wages at a rate of one-and-one-half times the regular rate for all such hours over forty in a week, as required by the FLSA, 29 U.S.C. § 207; and (ii) entitled to maximum liquidated damages and attorneys' fees pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. § 216(b).

2. Plaintiff alleges on behalf of herself and all other similarly situated current and former employees who worked for Defendants as Long Term Disability Claims Specialists or in similar positions pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. that she and they are entitled to monetary relief.

3. Plaintiff complains on behalf of herself and a class of other similarly situated employees who worked for Defendants as Long Term Disability Claims Specialists or in similar positions pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), that she and they are: (i) entitled to unpaid wages from Defendants for working hours for which they received no pay, in violation of the New York Minimum Wage Act ("NYMWA"), New York Labor Law §§ 650 *et seq.* ("NYLL") and supporting regulations of the New York State Department of Labor ("NYSDOL"); and (ii) entitled to maximum liquidated damages, costs, and attorneys' fees pursuant to the NYMWA, NYLL § 650 *et seq.*, including NYLL § 663, and the regulations thereunder, 12 NYCRR § 132-2.2.

4. Plaintiff complains on behalf of herself and a class of other similarly situated employees who worked for Defendants as Long Term Disability Claims Specialists or in similar positions pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP"), that she and they are: (i) entitled to unpaid wages from Defendants for working more than forty (40) hours in a week and not being paid overtime wages at a rate of one-and-one-half times the regular rate for all such hours over forty in a week, as required by the NYMWA, NYLL §§ 650 *et seq.* and supporting regulations of the New York State Department of Labor ("NYSDOL"); and (ii) entitled to maximum liquidated damages, costs, and attorneys' fees pursuant to the NYMWA, NYLL § 650 *et seq.*, including NYLL § 663, and the regulations thereunder, 12 NYCRR § 132-2.2.

**JURISDICTION AND VENUE**

5. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA") and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.

6. This Court also has original jurisdiction over the state law claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because this is a class action in which: (1) there are 100 or more members in Plaintiff's proposed classes; (2) at least some members of the proposed classes have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

7. In addition, this Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law wage and hour law claims, because those claims derive from a common nucleus of operative fact.

8. The Southern District of New York has personal jurisdiction over Defendants, because Defendants are headquartered at 200 Park Avenue, New York, New York and because many of the acts complained of occurred in this State and this District and gave rise to claims alleged herein.

9. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Defendant MetLife, Inc.**

10. Defendant MetLife, Inc. is, and at all times material hereto was, a corporation organized under the laws of the State of Delaware, with its headquarters in New York, New York. Defendant MetLife is an insurance group that provides life insurance, annuities, employee benefit and asset management services to clients throughout the United States and internationally. It therefore engages in interstate commerce or engages in the delivery of goods and services for commerce.

**Defendant Metropolitan Life Insurance Company**

11. Defendant Metropolitan Life Insurance Company is, and at all times material hereto was, a corporation organized under the laws of the State of New York, with its headquarters in New York, New York. Defendant Metropolitan Life Insurance Company is a wholly-owned subsidiary of Defendant MetLife, Inc., and provides life insurance, annuities, employee benefit and asset management services to clients throughout the United States. It therefore engages in interstate commerce or engages in the delivery of goods and services for commerce.

**Defendant MetLife Insurance Company USA**

12. Defendant MetLife Insurance Company USA is, and at all times material hereto is a Delaware corporation originally incorporated in Connecticut in 1863. Its principal place of business is in North Carolina. Defendant MetLife Insurance Company USA is a wholly-owned subsidiary of Defendant MetLife, Inc. If offers It offers individual annuities, individual life insurance, and institutional protection and asset accumulation products throughout the United States, and therefore engages in interstate commerce or engages in the delivery of goods

and services for commerce. It therefore engages in interstate commerce or engages in the delivery of goods and services for commerce.

13. Defendants MetLife, Inc., Metropolitan Life Insurance Company, and MetLife Insurance Company USA are hereinafter collectively referred to as "MetLife."

**Plaintiff Debra Julian**

14. Plaintiff Debra Julian resides in Clinton, New York.

15. Ms. Julian worked for MetLife in Oriskany, New York from August 2004 to April 2016.

16. Plaintiff was employed as a Long Term Disability ("LTD") Claims Specialist from January 2011 to April 2016.

17. Plaintiff and the class members have been and are employed by MetLife.

18. Upon information and belief, Defendants hired, fired, and supervised LTD Claims Specialists.

19. Upon information and belief, Defendants controlled the terms of LTD Claims Specialists' employment, including the compensation they were paid and the hours they worked.

20. At all relevant times, the unlawful conduct against Plaintiff and class members, as described in each and all of the foregoing paragraphs, was motivated, in whole or in part, to serve MetLife.

21. At all relevant times, upon information and belief, the unlawful conduct described in each and all of the foregoing paragraphs was reasonably foreseeable by MetLife, and committed under actual or apparent authority granted by MetLife, such that all of the aforementioned unlawful conduct is legally attributed to MetLife.

**CLASS ACTION ALLEGATIONS – ERISA**

22. Plaintiff brings this action for violations of ERISA as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and all other similarly situated current and former employees who worked for Defendants as Long Term Disability Claims Specialists or in similar positions in the State of New York on or after the date that is six years before the filing of the Complaint in this case.

23. The ERISA Class is so numerous that joinder of all members is impracticable. Upon information and belief, Defendants employed thousands of employees who satisfy the definition of the ERISA class as described herein.

24. Questions of law and fact common to the ERISA class as a whole include, but are not limited to the following:

   a) Whether Defendants failed and continues to fail to maintain accurate records of actual time worked, and/or failed and continue to fail to pay all wages and benefits earned and to be earned by Plaintiff and the ERISA Class;

   b) Whether Defendants failed and continue to fail to provide accurate wage statements itemizing all actual time worked and wages earned by Plaintiff and the ERISA Class;

   c) Whether Defendants have violated and continue to violate ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1) as alleged herein;

   d) Whether Defendants failed and continue to fail to credit Plaintiff and the ERISA Class with all Eligible Compensation to which they were, are or will be entitled to be paid for purposes of the MetLife 401k Plan as required by ERISA; and

e) Whether Defendants violated and continues to violate ERISA's fiduciary standards by their failure to credit Plaintiff and the ERISA Class with all Eligible Compensation to which they were, or will be, entitled to be paid for purposes of the MetLife 401k Plan, as required by ERISA.

25. Plaintiff's claims are typical of those of the ERISA Class. Plaintiff, like all other ERISA Class members, were subject to Defendants' policies and practices of failing to record all overtime worked, and Defendants' policy and practice of failure to pay and/or credit all overtime compensation earned as Eligible Compensation under the MetLife 401k Plan.

26. Questions of fact and law common to the Class Members predominate over any questions affecting only individual members. Defendants' violations of ERISA as described herein result from generally applicable policies or practices and do not depend on the personal circumstances of the Class Members. Adjudications with respect to individual members of the class would, as a practical matter, be dispositive of the interests of the other members because Defendants acted or refused to act on grounds generally applicable to the ERISA Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the ERISA Class as a whole.

27. Plaintiff will fairly and adequately protect the interests of the Class Members and have retained counsel experienced in pursuing complex employment matters and class action/multi-party litigation who will adequately, competently and vigorously represent the interests of the Class Members.

28. Class action treatment is superior to other available methods for the fair and efficient adjudication of the controversy alleged herein. Treating this as a class action will permit a large number of persons to prosecute their common claims in a single forum

simultaneously, efficiently and without the duplication of effort and expenses that numerous individual actions would entail. Conversely, the presentation of separate actions by individual employees could establish incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of the Class Members to protect their interests.

## RULE 23 CLASS ALLEGATIONS – NYLL

29. Plaintiff brings this action under NYLL pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all persons employed by Defendants as LTD Claims Specialists in the State of New York on or after the date that is six years before the filing of the Complaint in this case (the "NYLL Class Period").

30. All said persons, including Plaintiff, are referred to herein as the "NYLL Class." The NYLL Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The positions held and wages earned for each NYLL Class member are also determinable from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

31. The proposed NYLL Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the court. Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of Defendants, upon information and belief, there are more than one hundred (100) members of the NYLL Class.

32. Plaintiff's claims are typical of those claims which could be alleged by any member of the NYLL Class, and the relief sought is typical of the relief which would be sought by each member of the NYLL Class in separate actions. All the NYLL Class members were

subject to the same corporate practices of Defendants, as alleged herein, of failing to pay legally required minimum wage for all hours worked and at least one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek.  Defendants' corporate-wide policies and practices affected all NYLL Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each NYLL Class member.  Plaintiff and other NYLL Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

33.     Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the NYLL Class.  Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

34.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate Defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual NYLL Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual NYLL Class members to redress the wrongs done to them.  On the other hand, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however,

treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the NYLL Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the NYLL Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

35. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

36. There are questions of law and fact common to the NYLL Class which predominate over any questions affecting only individual class members, including:

> a) Whether Defendants were employers of Plaintiff and the NYLL Class members within the meaning of the New York Labor Law;
>
> b) Whether Plaintiff and the NYLL Class members were employees of Defendants within the meaning of the New York Labor Law;

    c)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the compensation of NYLL Class members;

    d)    Whether Defendants unlawfully failed to properly compensate Class members minimum wage for all hours worked in violation of the New York Labor Law; and

    e)    Whether Defendants unlawfully failed to properly compensate Class members at least one-and-one-half times their regular rates for work in excess of forty (40) hours per workweek in violation of the New York Labor Law.

## FACTS

37. Defendants committed the following acts knowingly, intentionally and willfully.

38. Defendants employed Plaintiff and the other ERISA and NYLL Class members as LTD Claims Specialists to gather information from claimants and collect medical data and other relevant information. They then forwarded this documentation to various specialized staff or managers who gave opinions on whether to take action on a claim. For example, whenever a change in a claimant's medical status might affect a claim, Plaintiff and class members had to contact MetLife's nursing staff for an opinion concerning the claimant's prognosis based on his/her medical records. Similarly, MetLife required LTD Claims Specialists to contact MetLife's "vocational" staff for opinions on whether a claimant's capacity was within occupational requirements.

39. Plaintiff and the other ERISA and NYLL Class members did not have authority to make claims decisions.

40. Rather, the Unit Leaders—a position two levels above LTD Claims Specialists—decided whether to take action on a claim (such as approving, rejecting, or terminating the claim).

41. In fact, prior to approximately 2012, MetLife classified Plaintiff and other LTD Claims Specialists as hourly employees and paid them overtime.

42. In or about 2012, MetLife re-classified Plaintiff and the other LTD Claims Specialists as "exempt" from overtime pay under federal and New York statutes and regulations—without any corresponding change in job duties.

43. Plaintiff and the other ERISA and NYLL Class members regularly spend more than eight hours per day performing work for Defendants and more than forty (40) hours per week working for Defendants.

44. Indeed, in order to fulfill the basic requirements of the position, LTD Claims Specialists regularly work between 45 and 60 hours per week, which Defendants knew or should have known from the work so assigned.

45. Plaintiff regularly worked between 5 and 7 days per week.

46. Plaintiff regularly worked approximately 2 to 3 days at Defendants' facilities and the remainder of the days remotely.

47. On days Plaintiff worked at Defendants' facilities, Plaintiff would regularly clock in to work at approximately 7am and work in excess of eight hours, excluding her lunch break. Plaintiff would later log in from home and work an additional 2 to 3 hours from home.

48. On days Plaintiff worked remotely, Plaintiff regularly worked from approximately 7am – 6pm.

49. In addition, Plaintiff regularly worked remotely for 2 hours on Saturday and 2 hours on Sunday.

50. Accordingly, Plaintiff regularly worked approximately 50-60 hours per week for Defendants.

51. Defendants did not record the amount of hours spent by Plaintiff and the other Class members.

52. Plaintiff and the other NYLL Class members were not paid the State minimum wage for all hours worked.

53. Plaintiff and the other NYLL Class members often worked in excess of forty hours (40) per workweek.

54. Defendants unlawfully failed to pay Plaintiff and the other NYLL Class members one-and-one-half times their regular rate for hours that they worked in excess of forty (40) per workweek.

55. Defendants unlawfully failed to pay Plaintiff and the other NYLL Class members one-and-one-half times the State minimum wage for hours that they worked in excess of forty (40) per workweek.

56. Defendants knew that the nonpayment of overtime would economically injure Plaintiff and the other NYLL Class members and violated state laws.

57. Prior to the reclassification in 2012, MetLife paid LTD Claims Specialists overtime compensation when they worked over 40 hours in a workweek—as LTD Claims Specialists regularly did.

58. Accordingly, MetLife was fully aware that LTD Claims Specialists commonly worked over 40 hours per week.

59. Following the reclassification, Plaintiff – and all other class members – received no overtime compensation for working greater than 40 hours in a given week.

**LTD Claims Specialists Do Not Perform Work Directly Related to the Management or General Business Operations of MetLife or MetLife's Clients**.

60. LTD Claims Specialists do not perform work directly related to the management or general business operations of MetLife. As a large multinational insurance corporation, MetLife is in the business of providing insurance and processing claims. Class members process claims for disability benefits made by the employees of MetLife's clients. Accordingly, they perform work directly related to the products and services MetLife offers its client. LTD Claims Specialists are not involved with the management or general business operations of MetLife.

61. Similarly, LTD Claims Specialists do not perform work directly related to the management or general business operations of MetLife's clients. The claimants, who are employees of MetLife's clients, generally have claims for insurance benefits from MetLife. Class members deal principally with these claimants; not with MetLife's clients. LTD Claims Specialists' job duties do not affect the finances, management, or business operations of MetLife's clients.

**LTD Claims Specialists Do Not Exercise Discretion or Independent Judgment as to Matters of Significance**

62. As highly controlled and micromanaged employees, LTD Claims Specialists' primary job duties do not require the exercise of discretion or independent judgment on matters of significance. To the extent that class members have any decision- making authority, it is severely limited. Further, LTD Claims Specialists have no discretion with respect to matters of significance.

63. For instance, in order to make any changes to the status of a claim, class members must follow a claims processing protocol, whereby they gather information and must forward it to various specialized staff or managers. LTD Claims Specialists have no authority to waive or deviate from these established policies and procedures without prior approval.

64. Moreover, class members have no authority to negotiate or bind the company on significant matters. Indeed, LTD Claims Specialists are required to seek the approval of Operations Managers, positioned three levels above them, in order to make changes to any claim exceeding approximately $24,000 in monthly benefits.

65. LTD Claims Specialists likewise lack authority to commit MetLife in matters that have significant financial impact. For instance, LTD Claims Specialists are required to obtain approval from Unit Leaders to request medical records costing more than $100; to order surveillance of claimants (i.e. to hire an individual to monitor a claimant to ensure that he/she is disabled); and to order "media checks" (e.g. checking claimants' social media for evidence of disability).

66. LTD Claims Specialists are not authorized to carry out major assignments or investigate and resolve matters of significance. Rather, they merely gather and pass along information relating to the claims of individual claimants who are insured under the MetLife client's accounts.

67. LTD Claims Specialists do not negotiate the terms of clients' policies.

68. Class members also lack the authority to represent MetLife in handling complaints, arbitrating disputes, or resolving grievances. They merely gather information and forward it to various specialized staff or Unit Leaders. Only the Unit Leaders have the authority to decide whether MetLife will accept, reject, modify, or terminate a disability claim.

69. As foot soldiers in MetLife's claims-processing army, LTD Claims Specialists have no direct reports and no authority to delegate work, hire, fire, or discipline other employees. They also lack any authority to formulate, affect, interpret, or implement management policies or operating practices. They are similarly not involved in planning long- or short-term business objectives for MetLife. Their job is straightforward: they gather information and pass it along to various specialized staff or managers.

70. In short, Plaintiff and class members do not exercise discretion or independent judgment as to any matters of significance.

**FIRST CLAIM FOR RELIEF**
**(FLSA Overtime Violations, 29 U.S.C. § 201, *et seq.*)**
**(Brought by Plaintiff)**

71. Plaintiff, on behalf of herself, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

72. Throughout the statute of limitations period covered by these claims, Plaintiff regularly worked in excess of forty (40) hours per workweek.

73. At all relevant times, Defendants operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiff at one-and-one-half times her regular rate for work in excess of forty (40) hours per workweek, and willfully failing to keep records required by the FLSA, even though Plaintiff has been entitled to overtime.

74. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

75. Plaintiff seeks damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, pre- and post-judgment interest, and such other legal and equitable relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**
**Failure to Credit Compensation in Violation of ERISA § 502(a)(1)(B)**
**(Brought by Plaintiff on behalf of herself and the ERISA Class)**

76. Plaintiff, on behalf of herself and the Class Members, realleges and incorporates by reference all preceding paragraphs as if they were set forth again herein.

77. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) requires that employee benefit plan fiduciaries discharge their duties with respect to the plan solely in the interest of the participants and beneficiaries, and (a) for the exclusive purpose of providing benefits to participants and their beneficiaries and defraying reasonable expenses of administration; (b) with the care, skill, prudence and diligence under the circumstances that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with the same goals; and (c) in accordance with the documents and instruments governing the plan.

78. Upon information and belief, the MetLife 401k Plan confers on Defendants discretionary authority, responsibility, and/or control with respect to the crediting of compensation, thereby making MetLife a fiduciary with respect to the crediting of compensation thereby rendering MetLife a fiduciary in that regard.

79. Upon information and belief, Metlife has exercised actual discretionary authority, responsibility, and/or control in determining what compensation would and would not be credited and/or paid as Eligible Compensation under the MetLife 401k Plan. By reason of the

exercise of such discretion, MetLife has been a fiduciary of that Plan with respect to the crediting of compensation.

80. MetLife has breached its fiduciary duties by failing to credit and/or pay compensation due for overtime performed by the Plaintiffs and members of the ERISA Class as Eligible Compensation under the MetLife 401k Plan.

81. Pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132 (a)(1)(B), Plaintiff on behalf of herself and all members of the ERISA Class seek an injunction requiring MetLife to credit all members of the ERISA Class with Eligible Compensation under the MetLife 401k Plan for all the past and future overtime work by the class members, as well as any such other compensatory and equitable relief to which Plaintiffs and members of the ERISA Class may be entitled.

82. Plaintiffs, on behalf of themselves and members of the ERISA Class, seek recovery of their attorneys' fees and costs of action to be paid by Defendant, as provided by ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1).

### THIRD CLAIM FOR RELIEF
**(NYLL Overtime Violations, N.Y. Stat. § 650, *et seq.*)**
**(Brought by Plaintiff on behalf of herself and the NYLL Class)**

83. Plaintiff, on behalf of herself and other NYLL Class members, realleges and incorporates by reference all previous paragraphs.

84. Throughout the statute of limitations period covered by these claims, Plaintiff and the other NYLL Class members regularly worked in excess of forty (40) hours per workweek, and NYLL Class members continue to do so.

85. At all relevant times, Defendants operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiff and the other NYLL Class members at

one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek, even though the NYLL Class members have been and are entitled to overtime.

86. At all relevant times, Defendants willfully, regularly and repeatedly failed to pay Plaintiff and the NYLL Class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

87. Plaintiff, on behalf of herself and the NYLL Class Members, seeks damages in the amount of their respective unpaid overtime compensation, as well as any and all available statutory and punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and members of the ERISA and NYLL Class, prays for relief as follows:

A. A declaratory judgment that the practices complained of herein are unlawful under ERISA, the FLSA, and New York law;

B. An injunction against Defendants and Defendants' officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, as provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

C. Designation of this action as a class action pursuant to F.R.C.P. 23.

D. Designation of Plaintiff as Representative of the ERISA Class;

E. Designation of Plaintiff as Representative of the NYLL Class;

F. An award of damages, according to proof, including liquidated damages, to be paid by Defendants;

G. Penalties available under applicable laws;

H. Costs of action incurred herein, including expert fees;

I. Attorneys' fees, including fees pursuant to 29 U.S.C. § 216, the NYLL, and other applicable statutes;

J. Pre-Judgment and post-judgment interest, as provided by law; and

K. Such other and further legal and equitable relief as this Court deems necessary, just and proper.

Dated: Park Ridge, New Jersey
February 8, 2017

Respectfully submitted,

KRAKOWER DICHAIRA LLC

By:

\_\_\_s/ Michael DiChiara_____

Michael R. DiChiara

One Depot Square
77 Market Street, Suite 2
Park Ridge, New Jersey 07656
201-746-0303
347-765-1600 (fax)

*Attorneys for Named Plaintiff and the ERISA and Rule 23 NYLL Class Plaintiffs*

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.