# Morgan Lewis

**Melissa C. Rodriguez**
Partner
+1.212.309.6394
melissa.rodriguez@morganlewis.com

February 25, 2020

**VIA ECF**

The Honorable Magistrate Judge Barbara C. Moses
United States District Court, Southern District of New York
500 Pearl Street, Room 740
New York, New York 10007

Re:    Julian et al. v. Metropolitan Life Insurance Co., No. 17-cv-00957 (AJN)(BCM)

Your Honor:

We represent Defendant Metropolitan Life Insurance Company ("Defendant"). We write in response to Plaintiffs' February 20, 2020 letter (Dkt. No. 107) requesting a pre-motion conference seeking to compel Defendant to produce a 30(b)(6) deponent to testify about broad-based electronically stored information ("ESI"), including Topics VII.25 and VII.26 of Plaintiffs' 30(b)(6) deposition notice. Plaintiffs' request should be denied.

Defendant asserts that Plaintiffs are exempt from overtime requirements under, *inter alia,* the administrative exemption. Accordingly, this case turns, very simply, on Plaintiffs' actual work functions and duties – not on burdensome and irrelevant 30(b)(6) testimony on the technical aspects of over 20 different ESI systems and/or sources or record retention mechanisms. Recognizing from the depositions taken to date that their claims will fail on the merits, Plaintiffs have switched their strategy to now focus on burdening Defendant with unending requests for ESI, including wholly irrelevant technical information.[1] Plaintiffs' abusive discovery tactics should not be countenanced.

While Plaintiffs argue that they seek "narrowly tailored" testimony "germane to their claims and damages," their own 30(b)(6) notice (Ex. A) demonstrates that nothing could be farther from the truth. Indeed, Plaintiffs seek 30(b)(6) testimony concerning over twenty different types of

---

[1] By way of example only, on January 13, 2020, Plaintiffs submitted over **330** search terms to be run across the "emails and calendars" of thirty custodians – without regard to the fact that each custodian has been involved in Defendant's LTD organization for different periods of time and in connection with different, discrete functions -- and demanded that a report of all the search terms for the entire limitations period going back to 2011 be provided within **four** days. Defendant is currently in the process of forensically harvesting emails and calendars for these 30 custodians and uploading them into a platform that enables Plaintiffs' proposed complex searches to be run. On January 31, 2020, Plaintiffs have identified an additional **sixty** custodians and additional search terms, and have demanded that the search terms be run on these custodians' emails and calendars for the entire limitations period. Plaintiffs should, at a minimum, be required to pay for the costs of ESI discovery concerning the additional 60 (and any other) custodians.

1

electronic information, data and systems, over a 9 year period, including: (1) "email communications"; (2) "computer systems, software, programs, or applications"; (3) Disability Process Automation ("DPA"); (4) Intellis; (5) AbsTraks; (6) Short Message Service (SMS) systems; (7) work phone records; (8) home phone records; (9) cell phone records; (10) pager records; (11) voicemail systems; (12) security video data; (13) *"any data"* reflecting entrances or exits from workplaces (emphasis added); (14) *"any data"* reflecting access to work computers (emphasis added); (15) *"any data"* reflecting use of printing system (emphasis added); (16) word processing systems; (17) "spreadsheet systems"; (18) "database systems"; (19) "system history files"; (20) "customer databases"; (20) "calendar systems"; (21) virtual private networks (VPNs); (22) "intranet systems"; (23) "other networks used or accessed by Class Members"; and (24) computer log-in information.[2]  The sheer volume of systems and data upon which Plaintiffs are seeking 30(b)(6) testimony (many of which may involve software that has changed over time), alone, is reason enough to deny their request.[3]

Rule 30(b)(6) requires Plaintiff to "describe with reasonable particularity the matters on which examination is requested." As Defendant has explained to Plaintiffs, many of their 30(b)(6) topics are unintelligible, even after consulting with ESI experts, such that Defendant is unable to identify a 30(b)(6) deponent(s), let alone appropriately prepare such individual(s) to knowledgeably testify about such topics.  For example, it is unclear what Plaintiffs are seeking by way of testimony on "any data reflecting access" to computers, printers or entrances/exits from the workplace, any "database systems," "spreadsheet systems," or "other networks."  It is also unclear what testimony any 30(b)(6) deponent could provide on the "home phones" of Plaintiffs or the putative class members.  It is simply impossible for Defendant to identify anyone who may testify on these topics -- let alone properly prepare such person(s) to testify as a corporate representative -- because Defendant does not understand what Plaintiffs are seeking, or whether, why, or how such information is relevant to Plaintiffs' claims.  *See Innomed Labs, LLC v. Alza Corp.*, 211 F.R.D. 237, 240 (S.D.N.Y. 2002) (finding 30(b)(6) notice "insufficiently particularized" where "the party to be examined is unable to determine who within the corporation would be best able to provide the information sought").

Moreover, as Defendant has explained to Plaintiffs, there is not one single individual (and likely not even two or three) who is able to competently testify about over 20 different electronic systems and/or data sets, or retention policies/cycles.  Plaintiffs know this because when they questioned Fred Coffin (Director of LTD Claims), one of MetLife's 30(b)(6) deponents they already deposed, about some of these systems, *he testified that entirely different departments are responsible for such systems*, such as the Plan Master Department (for United in Force), the Production Support Department (for Intellis), and the DPA IT team (for DPA).  *See* Coffin Dep. at 168:18-169:5 (at Ex. B).

Plaintiffs argue that Defendant should prepare a 30(b)(6) designee based on documents, other employees or other sources.  And Defendant can prepare 20 different witnesses to testify about

---

[2] Plaintiffs' list does not end there.  In their February 20 letter, Plaintiffs include additional systems, such as "UDS and UIS."  Dkt. No. 107, p. 2.  Further, in meet and confer discussions, Plaintiffs' counsel have indicated that there may be other, additional systems on which they may seek 30(b)(6) testimony.

[3] Plaintiffs' misstate the holding in *Meyer Corp. U.S. v. Alfay Designs, Inc.*, 2012 WL 3536987 (E.D.N.Y. Aug. 13, 2012). The issue in *Meyer* was that the 30(b)(6) witness was unprepared – the *topic* of the deposition (which happened to be "information technology") was wholly irrelevant to the holding of the case.

2

each of the systems with which they are familiar, if that is what Plaintiffs are looking for (and obtain permission from the Court to depose more than 10 individuals). It would, however, be incredibly burdensome to prepare one person by reviewing over 20 systems, which would potentially require meeting with over 20 different individuals, in order to learn what each system is, how it is used, historical information about each system, any changes made to the system during the limitations period, and other technical details that are wholly irrelevant to the work performed by LTD Claims Specialists – the only relevant issue in this case.[4] Moreover, it would be grossly unfair to bind Defendant to the answers of such a single surrogate on these highly technical issues.

Plaintiffs argue that they are merely seeking testimony on "time records" so that they "may rely on data from a combination of sources" (such as badge, telephone and VPN records) to try to reconstruct the alleged work hours of LTD Claims Specialists.[5] Dkt. No. 107, p. 2. However, what Plaintiffs do not (and cannot) explain is why anything beyond the actual VPN, phone log-in or badge-in data (if any), all of which could provide time data, is required. Indeed, Plaintiffs are merely seeking "discovery on discovery" which is impermissible where "[n]one of these requests bear on plaintiff's underlying claim." *246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, 2011 WL 13254283, at *4 (E.D.N.Y. Apr. 1, 2011). In fact, Plaintiffs themselves already testified as to what some of these systems do and do not show by way of work hours.[6]

To the extent Plaintiffs believe they need technical information as to, for example, how long and where VPN data is retained (which again, has no bearing on Plaintiffs' work hours or duties), no witness will be able to provide that level of specificity with respect to multiple systems "real time" in the context of one deposition. Instead, as Defendant has already suggested, a much more efficient way to obtain such information (should it even be necessary) is to provide written questions concerning the technical details Plaintiffs seek concerning each system, so that Defendant can obtain fulsome responses from the multiple appropriate subject matter experts. Plaintiffs' position -- that asking the questions "in real time" is more efficient -- is nonsensical where there are not one, two, or even ten people who could possibly testify as to all 20 systems, and where Defendant is still unsure as to everything Plaintiff actually seeks.

Plaintiffs next argue that they are entitled to 30(b)(6) testimony concerning the "claims processing tools" used by LTD Claim Specialists. Dkt. No. 107, p. 3. However, they fail to inform the Court that they already obtained 30(b)(6) testimony from Mr. Coffin, concerning these exact systems. Indeed, Mr. Coffin testified, for example, with respect to DPA, "[whenever] they take an action on a claim, they document the actions they are taking and the

---

[4] Plaintiffs' reliance on *Bush v. Element Financial Corp.*, 2016 WL 8814347 (S.D.N.Y. Dec. 13, 2016) is misplaced, as defendant in *Bush* did not attempt to produce different witnesses for different topics. Here, Defendant has already produced two 30(b)(6) witnesses for different topics and is willing to produce additional witnesses. However, Plaintiffs' one "topic," concerning over **20 systems**, could in and of itself require a dozen or more additional witnesses. For this reason, Plaintiffs' reliance on *Soroof Trading Dev. Co. v. GE Fuel Cell Sys., LLC*, 2013 WL 1286078, at *5 (S.D.N.Y. Mar. 28, 2013), is also misplaced. In *Soroof* the information to be learned by the 30(b)(6) deponent was "*reasonably* available to the defendants." The information at issue here is not.

[5] Defendant disputes that any such sources accurately depict anyone's actual hours of work. For example, it is entirely possible for an individual to come into a MetLife location after badging in, but have breakfast or coffee before actually starting to work.

[6] For instance, Plaintiff Julian testified that that "VPN would only stay logged in for eight hours, and then it would knock you out." *See* Julian Dep. at 363:3-4 (Ex. C). Opt-in Plaintiff Pamela Wolber testified that some LTD Claim Specialists do not "lock" their DPA when they are away from their desks and not working. *See* Wolber transcript at p. 159:24-160:11 (Ex. D).

3

rationale." Coffin Dep. at 159:4-9.  He also testified that LTD Claims Specialists use the "United in Force" system to "check and see if there is an eligibility feed from the employer." *Id.* at 159:18-25.  He further testified that LTD Claims Specialists use Intellis to determine payments because it "house[s] salary information," among other things. *Id.* at 161:9-20.  This testimony more than sufficiently explains when and how LTD Claim Specialists use these systems.

To the extent Plaintiffs seek more specific technical information concerning how data from these systems is retained or "can be exported and produced in discovery," that is not a proper subject for a 30(b)(6) deposition, but classic impermissible "discovery on discovery." *246 Sears*, 2011 WL 13254283, *4; *Nycomed U.S. Inc. v. Glenmark Generics Ltd.*, 2009 WL 3463912, at *2 (E.D.N.Y. Oct. 21, 2009) ("Information demanded by Glenmark ordinarily is the subject of good-faith discussions between counsel, rather than the testimony of 30(b)(6) witnesses.") Defense counsel is working with Defendant's relevant personnel in order to ensure relevant information is appropriately collected.  And, again, to the extent Plaintiffs are seeking technical information concerning, for example, when any particular system came to be used and whether and when any specific changes have been made to such systems, and whether, how and for how long any system retains data, *not one particular person will be able to provide that level of specificity with respect to dozens of systems in the context of a single deposition*.

While Defendant disputes that such technical information has any bearing on Plaintiffs' actual work duties or hours, Defendant, in fact, proposed to Plaintiffs: (1) producing 30(b)(6) deponents for the main systems used by LTD Claims Specialists (*e.g.,* DPA, Intellis, UIS, and SIR) and; (2) following such testimony, counsel would work together to determine whether any additional information or testimony is necessary.   However, Plaintiffs rejected that offer, instead insisting on obtaining 30(b)(6) testimony on all the systems and data sets listed in their notice -- and potentially others, depending on the results of the proffered testimony.

Finally, while Plaintiffs quibble over the efficacy of Defendant's ESI efforts, their purported concerns cannot be resolved with a 30(b)(6) deposition.  If Plaintiffs have concerns about, for example, the format or completeness of Defendant's multiple productions,[7] procedural mechanisms are available to seek relief.  A 30(b)(6) deposition is not one of them.

Defendant is available at the Court's convenience for a conference to discuss the aforementioned discovery issues.

Respectfully submitted,

*/s/ Melissa C. Rodriguez*

Melissa C. Rodriguez

cc:   Michael Palmer, Esq.; David Tracey, Esq.; Michael R. DiChiara, Esq. (Attorneys for Plaintiffs, via ECF)

---

[7] For instance, Plaintiffs protest that Defendant has produced certain documents in hard copy.  They fail to note, however, that, as Defendant has repeatedly explained, *there are certain documents that only exist in hard copy format* and for which no metadata exists (e.g., questionnaires completed in handwriting, personnel forms completed in writing).  No 30(b)(6) deposition on ESI will change that fact.