**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **DEBRA JULIAN & STEPHANIE MCKINNEY**, *on behalf of themselves and others similarly situated,*<br><br>*Plaintiffs,*<br><br>**v.**<br><br>**METROPOLITAN LIFE INSURANCE COMPANY,**<br><br>*Defendant.* | **Case No.: 1:17-cv-00957-AJN**<br><br><br>**THIRD AMENDED**<br>**CLASS ACTION COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Debra Julian, Plaintiff Stephanie McKinney, and Plaintiff Kimberly Harris (collectively, "Plaintiffs") on behalf of themselves and all other similarly situated current and former Long Term Disability Claim Specialists ("LTD Claim Specialists")[1] employed by Defendant Metropolitan Life Insurance Company ("MetLife" or "Defendant") complain by their attorneys as follows:

## I. OVERVIEW OF METLIFE'S VIOLATIONS OF FEDERAL, NEW YORK, CONNECTICUT, AND ILLINOIS OVERTIME LAW

1. This action seeks to remedy Defendant's illegal practices, whereby Defendant deliberately and uniformly denied overtime compensation due to Plaintiffs Debra Julian, Stephanie McKinney, Kimberly Harris, and their fellow LTD Claim Specialists, in violation of the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the New York Labor Law ("NYLL"), the Connecticut Minimum Wage Act

---

[1] As used herein, "LTD Claim Specialists" refers to MetLife employees who worked on long term disability insurance claims and were known as, *inter alia*, "Claim Specialists," "Senior Claim Specialists," "Case Managers," or "Senior Case Managers."

("CMWA"), Conn. Gen. Stat. §§ 31-58, *et seq*, and the Illinois Minimum Wage Law ("IMWL"), 820 Ill. Comp. Stat. 105/1, *et seq*.

2.      Defendant Metropolitan Life Insurance Company and its affiliated companies provide insurance, annuities, employee benefits and asset management services to approximately 100 million customers in 50 countries, including more than 90 of the top one hundred Fortune 500 companies.  In 2015, MetLife, Inc., Defendant's parent company, reported $5.2 billion in net income.

3.      Despite its immensely profitable business, Defendant cheats LTD Claim Specialists out of overtime pay legally earned under federal, New York, Connecticut, and Illinois law.

4.      For at least three years prior to the filing of the original Complaint in this action, Defendant routinely denied LTD Claim Specialists overtime compensation that the FLSA, NYLL, CMWA, and IMWL guarantee to employees who work more than 40 hours in a workweek.

5.      Prior to November of 2013, MetLife classified these LTD Claim Specialists as hourly employees and paid them overtime.

6.      In or about November of 2013, MetLife re-classified them as "exempt" from overtime pay under federal, New York, Connecticut, and Illinois statutes and regulations—without any corresponding change in job duties. In fact, MetLife told LTD Claim Specialists that the reclassification was a benefit to them because they would now be able to work unlimited hours on MetLife business without having to seek approval to work overtime.

7.     Accordingly, beginning in or about November of 2013, MetLife willfully denied overtime pay to Plaintiffs and other LTD Claim Specialists who routinely work more than 40 hours per week.

8.     Upon information and belief, during the above-mentioned period, MetLife failed to adequately keep track of LTD Claim Specialists' work hours. In particular, MetLife did not regularly keep time sheets or other formal records of the hours LTD Claim Specialists worked. Nonetheless, MetLife electronically monitored their LTD Claim Specialists' hours through MetLife's online disability claims systems. Accordingly, based on these limited records, MetLife knew or had reason to know that LTD Claim Specialists routinely worked more than 40 hours per week.

## II.  JURISDICTION AND VENUE

9.     This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 because the action arises under a federal statute, 29 U.S.C. § 216(b).

10.     The Court has supplemental jurisdiction over the Connecticut Minimum Wage Act claims, the Illinois Minimum Wage Law claims, and New York Labor Law claims pursuant to 28 U.S.C. § 1367 because the claims under Connecticut, Illinois, and New York state law arise from the same transaction or occurrence as Plaintiffs' and the Class's federal claims.

11.     This Court also has original jurisdiction over the state law claims in this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d) because this is a class action in which: (1) there are 40 or more members in Plaintiffs' proposed classes; (2) at least some members of the proposed classes have a different citizenship from Defendant; and (3) the claims of the proposed class members exceed $5,000,000 in the aggregate.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).

13.     The Southern District of New York has personal jurisdiction over Defendant, because Defendant is headquartered at 200 Park Avenue, New York, New York and because many of the acts complained of occurred in this State and this District and gave rise to claims alleged herein.

### III.  PARTIES

14.     **Plaintiff Debra Julian** resides in Clinton, New York.  Ms. Julian worked for MetLife in Oriskany, New York from August 2004 to April 2016.  Ms. Julian was employed as an LTD Claim Specialist from January 2011 to April 2016.

15.     **Plaintiff Stephanie McKinney** resides in Charleston, South Carolina.  Ms. McKinney worked for MetLife in Bloomfield, Connecticut from September 2013 to July 2016 as an LTD Claim Specialist.

16.     **Plaintiff Kimberly Harris** resides in North Aurora, Illinois. Ms. Harris was employed by MetLife in the LTD Claim Specialist role in Mount Prospect and Aurora, Illinois from before June 2010 to August 15, 2018.

17.     **Defendant Metropolitan Life Insurance Company** is, and at all times material hereto was, a corporation organized under the laws of the State of New York, with its headquarters in New York, New York.  Defendant Metropolitan Life Insurance Company provides life insurance, annuities, employee benefit and asset management services to clients throughout the United States. It therefore engages in interstate commerce or engages in the delivery of goods and services for commerce.

4

18.     At all relevant times Defendant was and is legally responsible for all of the unlawful conduct, policies, practices, acts and omissions as described in each and all of the foregoing paragraphs as the employer of Plaintiffs and class members.[2]

19.     Plaintiffs and the class members have been and are employed by MetLife.

20.     Defendant hired, fired, and supervised LTD Claim Specialists.

21.     Defendant controlled the terms of LTD Claim Specialists' employment, including the compensation they were paid and the hours they worked.

22.     At all relevant times, the unlawful conduct against Plaintiffs and class members, as described in each and all of the foregoing paragraphs, was motivated, in whole or in part, to serve MetLife.

23.     At all relevant times, upon information and belief, the unlawful conduct described in each and all of the foregoing paragraphs was reasonably foreseeable by MetLife, and committed under actual or apparent authority granted by MetLife, such that all of the aforementioned unlawful conduct is legally attributed to MetLife.

24.     The overtime wage provisions set forth in § 207 of the FLSA, in the New York Labor Law, in the Illinois Minimum Wage Law, and in the Connecticut Minimum Wage Act, and regulations, and the wage payment provisions set forth in New York, Illinois, and Connecticut law, apply to Defendant.

25.     The class members' jobs are not positions involving work that falls within any exception or exemption set forth in 29 U.S.C. § 213(a)(1), 12 NYCRR § 142-2.14,

---

[2] Unless otherwise specified, the term "class members" as used in the Complaint refers collectively to the members of the FLSA collective action alleged under 29 U.S.C. § 216(b) and to the members of the Connecticut, Illinois, and New York classes alleged under Fed. R. Civ. P. 23.  The term includes Plaintiffs Julian, McKinney, and Harris.

Conn. Gen. Stat. § 31-76i, 820 Ill. Comp. Stat. 105/4a, or otherwise in the FLSA, NYLL, CMWA, or IMWL.

## IV. FACTUAL ALLEGATIONS

26.    MetLife is a major player in the long-term disability market, and it provides long term disability coverage for a number of large companies throughout the United States, including Verizon, Morgan Stanley, and Campbell's Soup Company. These companies are MetLife's clients.

27.    As LTD Claim Specialists, Plaintiffs and class members gathered information from claimants (e.g. covered employees under the applicable long-term disability plans) and collected medical data and other relevant information. They regularly presented this documentation to various specialized MetLife staff persons or supervisors who gave opinions on whether to take action on a claim. For example, when a change in a claimant's medical status might affect a claim, Plaintiffs and class members regularly had to contact MetLife's nursing staff for an opinion concerning the claimant's prognosis based on his/her medical records. Similarly, MetLife regularly required LTD Claim Specialists to contact MetLife's "vocational" staff for opinions on whether a claimant's capacity was within occupational requirements.

28.    Plaintiffs and the class members had little to no authority to make many claim decisions on their own. Rather, Plaintiffs' supervisors were regularly responsible for deciding whether to take certain actions on a claim (such as rejecting or terminating the claim), and nursing, vocational, and psychiatric staff regularly rendered opinions that were necessary for claims decisions.

29.     Plaintiffs and class members routinely worked more than 8 hours a day and 40 hours per week for Defendant. Indeed, in order to fulfill the basic requirements of the position, LTD Claim Specialists regularly work between 45 and 60 hours per week, which Defendant knew or should have known from the work so assigned and from information it gathered about LTD Claim Specialists' work activity.

30.     For instance, Plaintiff McKinney regularly started her workday between 8:00 and 8:30 a.m. and stopped working between 5:00 and 5:30 p.m. She also routinely worked six or more hours per week from home on nights and weekends. Therefore, Plaintiff McKinney often worked at least 10 hours of overtime per week.

31.     Similarly, Plaintiff Julian worked at least six hours of overtime per week. For most of her time as an LTD Claim specialist, Plaintiff Julian regularly worked approximately 2 to 3 days at Defendant's facilities and the remainder of the days remotely. On days Plaintiff Julian worked at Defendant's facilities, Plaintiff Julian would regularly clock in to work between 7:00 a.m. and 7:15 a.m. and stopped working around 3:50 p.m. (with a lunch break lasting around 40 minutes). On days Plaintiff Julian worked remotely, Plaintiff Julian regularly worked from approximately 6:45 a.m. or 7:00 a.m. until as late as 5:30 or 6:00 p.m. (with no more than a fifteen-minute lunch break). Plaintiff Julian also worked approximately two weekends each month for approximately four hours each weekend.

32.     Plaintiff Harris also estimates that she worked at least ten hours of overtime each week. As an LTD Claim Specialist, Ms. Harris worked in the MetLife office location in Mount Prospect, Illinois, and later worked in the MetLife office location in Aurora, Illinois. She regularly worked approximately 2 to 3 days at Defendant's facilities and the

remainder of the days remotely. On days Plaintiff Harris worked at Defendant's facilities, Plaintiff Harris would regularly clock in to work at approximately 9:00 a.m. and work in excess of eight hours, excluding her lunch break. On days Plaintiff Harris worked remotely, Plaintiff Harris regularly worked from approximately 9:00 a.m. until 6:00 or 7:00 p.m.

33.     Prior to November of 2013, MetLife classified both LTD Claim Specialists and Short Term Disability Claim Specialists as "non-exempt." In or around November 2013, MetLife deliberately reclassified Plaintiffs and the class members as "exempt" as a cost-cutting measure even though their job responsibilities did not change. By contrast, Short Term Disability Claim Specialists remained classified as non-exempt hourly employees and continued to receive overtime pay.

34.     Prior to the reclassification in November 2013, MetLife paid LTD Claim Specialists overtime compensation when they worked over 40 hours in a workweek—as LTD Claim Specialists regularly did.  Accordingly, MetLife was fully aware that LTD Claim Specialists commonly worked over 40 hours per week.

35.     Following the reclassification, Plaintiffs – and all other class members – received no overtime compensation for working greater than 40 hours in a given week.

36.     On February 19, 2016, Plaintiff McKinney filed a complaint against MetLife with the Connecticut Department of Labor. After conducting an investigation, the Department of Labor informed Plaintiff McKinney that MetLife misclassified her position as exempt and owed her back pay damages because, *inter alia*, Plaintiff had no direct reports, no advanced education, and could not make independent decisions.

37.     In lieu of further pursuing a remedy with the Connecticut Department of Labor, Ms. McKinney exercised her right to take her case to Court.

**A. LTD Claim Specialists Do Not Perform Work Directly Related to the Management or General Business Operations of MetLife or MetLife's Clients.**

38.     LTD Claim Specialists do not perform work directly related to the management or general business operations of MetLife. As a large multinational insurance corporation, MetLife is in the business of providing insurance and processing claims. Class members process claims for disability benefits made by the employees of MetLife's clients. Accordingly, they perform work directly related to the **products** and **services** MetLife offers its clients.  LTD Claim Specialists are not involved with the management or general business operations of MetLife.

39.     Similarly, LTD Claim Specialists do not perform work directly related to the management or general business operations of MetLife's clients. The claimants, who are employees of MetLife's clients, generally have claims for insurance benefits from MetLife. Class members deal principally with these claimants, not with MetLife's clients. LTD Claim Specialists' job duties do not affect the finances, management, or business operations of MetLife's clients.

**B.     LTD Claim Specialists Do Not Exercise Discretion or Independent Judgment as to Matters of Significance.**

40.     As highly controlled and micromanaged employees, LTD Claim Specialists' primary job duties do not require the exercise of discretion or independent judgment on matters of significance. To the extent that class members have any authority in their jobs, it is severely limited.

41.     For instance, class members regularly follow a claims processing protocol, whereby they gather information, document their steps, and regularly seek direction and

guidance from specialized staff or supervisors. LTD Claim Specialists generally have no authority to waive or disregard these established policies and procedures.

42.     Moreover, class members have no authority to negotiate or bind the company on significant matters.

43.     LTD Claim Specialists likewise are restricted in their authority to commit MetLife in certain matters that have even a limited financial impact.  For instance, LTD Claim Specialists are required to obtain approval from managers to request that MetLife pay invoices of more than $100. They are also required to seek their managers' approval to order surveillance of claimants (i.e. to hire an individual to monitor a claimant to ensure that he/she is disabled).

44.     LTD Claim Specialists are not authorized to carry out major assignments or investigate and resolve matters of significance without guidance.  They principally gather information relating to the claims of individual claimants, follow MetLife's detailed protocols for processing claims, and seek the instruction and direction of their managers, nurses, vocational staff, and other specialized staff.

45.     LTD Claim Specialists do not regularly negotiate with MetLife's clients (such as Campbell's) over the terms of clients' policies.  Instead, LTD Claim Specialists principally interact with MetLife's clients' employees (e.g. Campbell's employees, or other beneficiaries, such as spouses) who file disability claims under MetLife's policies.

46.     Class members also lack the authority to represent MetLife in handling complaints, arbitrating disputes, or resolving grievances. Rather, they gather information, follow MetLife's detailed claims processing protocols, and present information to various specialized staff or managers. Supervisors and specialized staff regularly provide necessary

instruction and direction as to whether MetLife will approve a claim for disability benefits. Supervisors also retain the ultimate authority over whether MetLife will reject or terminate a disability claim.

47.     As foot soldiers in MetLife's claims-processing army, LTD Claim Specialists have no direct reports and no authority to delegate work, hire, fire, or discipline other employees. They also lack any authority to formulate, affect, interpret, or implement management policies or operating practices. They are similarly not involved in planning long- or short-term business objectives for MetLife. Their job is straightforward: they principally gather information, follow MetLife's claims processing protocols, and present claim information to various specialized staff or supervisors, who provide instruction and direction as to how to resolve claims.

48.     In short, Plaintiffs and class members do not exercise discretion or independent judgment as to any matters of significance.

V.    **COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA**

49.     Plaintiffs Julian, McKinney, and Harris bring FLSA claims on behalf of themselves and other similarly situated individuals who worked for Defendant. Specifically, Plaintiffs bring FLSA claims on behalf of people employed by MetLife as Claim Specialists and Senior Claim Specialists who worked on long term disability insurance claims ('LTD Claim Specialists') at any time since February 8, 2014 (three years from the filing of the complaint in this action) ("FLSA Collective Action Members").[3]

50.     Plaintiffs consent to be party plaintiffs in this lawsuit against Defendant to recover unpaid overtime pay and remedy the alleged violations of the FLSA. Plaintiffs

---

[3] *See* Dkt. No. 65 (Memorandum Opinion and Order) at 1.

Julian's and McKinney's Consent to Join Forms were previously filed with the Court. *See* Dkt. Nos. 3 and 4-2. Plaintiff Harris submitted her Consent to Join Form during the notice and opt-in period after the Court conditionally certified the FLSA Collective Action. *See* Dkt. No. 87.

51.     The FLSA claims are properly brought under and maintained as an opt-in collective action pursuant to § 16(b) of the FLSA (29 U.S.C. § 216(b)).

52.     Plaintiffs and the other FLSA Collective Action Members perform and have consistently performed substantially similar job duties and are subject to the same policies and restrictions.

53.     All FLSA Collective Action Members were and/or are paid in the same manner and have been subject to Defendant's common policies, programs, practices, procedures, protocols, routines, and rules of willfully failing and refusing to pay them at least one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek.   The claims of Plaintiffs Julian, McKinney, and Harris stated herein are essentially the same as those of the other FLSA Collective Action Members.

54.     Defendant intentionally misclassified Plaintiffs and the other FLSA Collective Action Members as exempt from the FLSA's overtime pay requirements.   The FLSA Collective Action Members are not covered by any exemption to the protections of the FLSA, including its overtime pay requirements.

55.     There are numerous FLSA Collective Action Members who have been, and/or are misclassified as exempt under the FLSA.   Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

56.     At all relevant times, Defendant has been, and continues to be, an "employer" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.   At all relevant times, Defendant has employed "employee[s]," including Plaintiffs and each of the FLSA Collective Action Members.

## VI.   CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23 AND THE NEW YORK LABOR LAW

57.     Representative Plaintiff Debra Julian brings this class action to recover damages under New York law, and to recover overtime wages on behalf of herself and the following class of current and former LTD Claim Specialists in New York who have been deprived of lawful overtime wages as mandated by New York Labor Law and governing regulations. This action includes all such employees whom MetLife continues to deprive of required overtime wages in the future. The New York class is defined as follows:

> All individuals who worked full-time for MetLife in New York as LTD Claim Specialists (including "Claim Specialists," "Senior Claim Specialists," "Case Managers," and "Senior Case Managers" – as well as other individuals holding a similar job position – who worked on long term disability claims) who were classified as exempt from overtime at any time between six years before the filing of the original Complaint and the date of final judgment (the "NYLL Class Period").

58.     This action is properly brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

59.     The New York class consists of over 40 persons and is so numerous that joinder of all members, whether required or permitted, is impracticable.

60.     There exist questions of fact and law common to the New York class which predominate over any questions affecting only individual members including:

13

a) whether Defendant improperly withheld overtime wages from New York class members;

b) whether the New York class members are entitled to overtime compensation for hours worked over 40 hours in a week;

c) whether Defendant is liable to the New York class; and

d) whether Defendant had a good faith belief that the failure to pay New York class members overtime was in compliance with the law.

61.     Plaintiff Julian's claims are typical of those claims which could be alleged by any member of the New York class, and the relief sought is typical of the relief which would be sought by each member of the New York class in separate actions.  Like all New York class members, Plaintiff Julian was subject to Defendant's corporate policy, practice, and procedure of misclassifying her as an exempt employee and not paying her at least one-and-one-half times her regular rate for work in excess of forty (40) hours per workweek.  The damages suffered by Plaintiff Julian and the other New York class members arise from the same unlawful policies, practices and procedures.

62.     Plaintiff Julian is able to fairly and adequately protect the interests of the New York class and has no interests antagonistic to the New York class.

63.     Plaintiff Julian has hired counsel who are able and experienced in class action litigation, and will fairly and adequately protect the interests of the class.

64.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense

that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual New York class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual New York class members to redress the wrongs done to them.  Moreover, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action will result in a significant saving of these costs.  The prosecution of separate actions by individual members of the New York class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the New York class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

65.     Upon information and belief, class members harbor a fear of retaliation that would further support the superiority of a class action.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Likewise, both current and former employees are often fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

66.     Additionally, Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## VII.   CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23 AND THE CONNECTICUT MINIMUM WAGE ACT

67.     Representative Plaintiff Stephanie McKinney brings this class action to recover damages under Connecticut law, and to recover overtime wages on behalf of herself and the following class of current and former LTD Claim Specialists in Connecticut who have been deprived of lawful overtime wages as mandated by Connecticut labor law and governing regulations. This action includes all such employees whom MetLife continues to deprive of required overtime wages in the future. The Connecticut class is defined as follows:

> All individuals who worked full-time for MetLife in Connecticut as LTD Claim Specialists (including "Claim Specialists," "Senior Claim Specialists," "Case Managers," and "Senior Case Managers" – as well as other individuals holding a similar job position – who worked on long term disability claims) who were classified as exempt from overtime at any time from February 19, 2014 through the date of final judgment.

68.     This action is properly brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

69.     The Connecticut class consists of over 40 persons and is so numerous that joinder of all members, whether required or permitted, is impracticable.

70.     There exist questions of fact and law common to the Connecticut class which predominate over any questions affecting only individual members including:

> 1)   whether Defendant improperly withheld overtime wages from Connecticut class members;

16

2)  whether Connecticut class members are entitled to overtime compensation for hours worked over 40 hours in a week;

3)  whether Defendant is liable to the Connecticut class; and

4)  whether Defendant had a good faith belief that the failure to pay Connecticut class members overtime was in compliance with the law.

71.     Plaintiff McKinney's claims are typical of those claims which could be alleged by any member of the Connecticut class, and the relief sought is typical of the relief which would be sought by each member of the Connecticut class in separate actions.  Like all Connecticut class members, Plaintiff McKinney was subject to Defendant's corporate policy, practice, and procedure of misclassifying her as an exempt employee and not paying her at least one-and-one-half times her regular rate for work in excess of forty (40) hours per workweek.  The damages suffered by Plaintiff McKinney and the other Connecticut class members arise from the same unlawful policies, practices and procedures.

72.     Plaintiff McKinney is able to fairly and adequately protect the interests of the Connecticut class and has no interests antagonistic to the Connecticut class.

73.     Plaintiff McKinney has hired counsel who are able and experienced in class action litigation, and will fairly and adequately protect the interests of the class.

74.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages

suffered by each of the individual Connecticut class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Connecticut class members to redress the wrongs done to them.  Moreover, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action will result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Connecticut class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Connecticut class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

75.    Upon information and belief, class members harbor a fear of retaliation that would further support the superiority of a class action.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Likewise, both current and former employees are often fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

76.     Additionally, Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## VIII.   CLASS ACTION ALLEGATIONS UNDER FED. R. CIV. P. 23 AND THE ILLINOIS MINIMUM WAGE LAW

77.     Representative Plaintiff Kimberly Harris brings this class action to recover damages under Illinois law, and to recover overtime wages on behalf of herself and the following class of current and former LTD Claim Specialists in Illinois who have been deprived of lawful overtime wages as mandated by Illinois labor law and governing regulations. This action includes all such employees whom MetLife continues to deprive of required overtime wages in the future. The Illinois class is defined as follows:

> All individuals who worked full-time for MetLife in Illinois as LTD Claim Specialists (including "Claim Specialists," "Senior Claim Specialists," "Case Managers," and "Senior Case Managers" – as well as other individuals holding a similar job position – who worked on long term disability claims) who were classified as exempt from overtime at any time from three years before the filing of the original Complaint through the date of final judgment ("IMWL Class Period").

78.     This action is properly brought as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

79.     The Illinois class consists of over 40 persons and is so numerous that joinder of all members, whether required or permitted, is impracticable.

80.     There exist questions of fact and law common to the Illinois class which predominate over any questions affecting only individual members including:

> 1)  whether Defendant improperly withheld overtime wages from Illinois class members;
>
> 2)  whether Illinois class members are entitled to overtime compensation for hours worked over 40 hours in a week;

3) whether Defendant is liable to the Illinois class; and

4) whether Defendant had a good faith belief that the failure to pay Illinois class members overtime was in compliance with the law.

81.     Plaintiff Harris's claims are typical of those claims which could be alleged by any member of the Illinois class, and the relief sought is typical of the relief which would be sought by each member of the Illinois class in separate actions.  Like all Illinois class members, Plaintiff Harris was subject to Defendant's corporate policy, practice, and procedure of misclassifying her as an exempt employee and not paying her at least one-and-one-half times her regular rate for work in excess of forty (40) hours per workweek. The damages suffered by Plaintiff Harris and the other Illinois class members arise from the same unlawful policies, practices and procedures.

82.     Plaintiff Harris is able to fairly and adequately protect the interests of the Illinois class and has no interests antagonistic to the Illinois class.

83.     Plaintiff Harris has hired counsel who are able and experienced in class action litigation, and will fairly and adequately protect the interests of the class.

84.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.  Because the losses, injuries and damages suffered by each of the individual Illinois class members are small in the sense pertinent to

a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Illinois class members to redress the wrongs done to them.  Moreover, important public interests will be served by addressing the matter as a class action.  The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action will result in a significant saving of these costs.  The prosecution of separate actions by individual members of the Illinois class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Illinois class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  The issues in this action can be decided by means of common, class-wide proof.  In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

85.     Upon information and belief, class members harbor a fear of retaliation that would further support the superiority of a class action.  Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation.  Likewise, both current and former employees are often fearful of bringing claims because doing so can harm their current employment, future employment, and future efforts to secure employment.  Class actions provide class members who are not named in the complaint a degree of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

86.     Additionally, Defendant has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## IX.  CAUSES OF ACTION

## COUNT I: VIOLATION OF THE FAIR LABOR STANDARDS ACT (FLSA)

87.     Plaintiffs Julian, McKinney, and Harris incorporate by reference the preceding paragraphs of this Complaint as if fully alleged herein.

88.     Because MetLife willfully violated the FLSA by misclassifying Plaintiffs and class members as exempt employees, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

89.     MetLife has willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by misclassifying Plaintiffs and similarly-situated LTD Claim Specialists as "exempt" employees, and thereby failing and refusing to pay them proper hourly wage compensation in accordance with § 207 of the FLSA.

90.     Plaintiffs and the class members are not employed in a "bona fide executive, administrative, or professional capacity" pursuant to 29 U.S.C. § 213(a)(1) and corresponding regulations.  Plaintiffs and the class members are not subject to any other exemptions set forth in the FLSA or administrative regulations.

91.     As a result of Defendant's violations of the FLSA, Plaintiffs, as well as all others similarly situated, have suffered damages by being denied overtime wages in accordance with § 207 of the FLSA.

92.     Defendant has not made a good faith effort to comply with the FLSA as to its compensation of Plaintiffs and other similarly situated present and former LTD Claim Specialists.

93.     Because of Defendant's unlawful acts, Plaintiffs and all similarly situated current and former LTD Claim Specialists have been deprived of overtime compensation in amounts to be determined at trial, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b).

## COUNT II: VIOLATION OF THE NEW YORK LABOR LAW

94.     Representative Plaintiff Julian incorporates by reference the preceding allegations of this Complaint as if fully alleged herein.

95.     Throughout the statute of limitations period covered by these claims, Plaintiff Julian and the other New York class members regularly worked in excess of forty (40) hours per workweek, and New York class members continue to do so.

96.     At all relevant times, Defendant operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiff Julian and the other New York class members at one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek, even though the New York class members have been and are entitled to overtime.

97.     At all relevant times, Defendant willfully, regularly and repeatedly failed to pay Plaintiff Julian and the New York class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

98.     Plaintiff Julian, on behalf of herself and the New York class members, seeks damages in the amount of their respective unpaid overtime compensation, as well as any and all available statutory and punitive damages, pre- and post-judgment interest,

attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## COUNT III: VIOLATION OF THE CONNECTICUT MINIMUM WAGE ACT

99.     Representative Plaintiff McKinney incorporates by reference the preceding allegations of this Complaint as if fully alleged herein.

100.    MetLife improperly failed to compensate the Connecticut employee class members, whom the company has misclassified as exempt under Conn. Gen. Stat. § 31-76i and corresponding regulations. These misclassified class members have performed overtime work and MetLife has deprived them of overtime compensation in violation of the provisions of the Minimum Wage Act, Conn. Gen. Stat. §§ 31-58, *et seq.*, and corresponding regulations of the Connecticut Department of Labor.

101.    Under Connecticut law: "Any employer who pays or agrees to pay an employee less than the minimum fair wage or overtime wage shall be deemed in violation of the provisions of this part."  Conn. Gen. Stat. § 31-60(a).

102.    A "wage" is defined as "compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation." Conn. Gen. Stat. § 31-71a(3).

103.    In Connecticut, the workweek is forty hours. If an employee works more than forty hours, Conn. Gen. Stat. § 31-76c requires the employer to pay the employee at the rate of time and a half.

104.    An employer in Connecticut is required to pay "all moneys due each employee [including overtime wages] on a regular pay day…"  Conn. Gen. Stat. § 31-71b.

105.    In order to facilitate these objectives, Connecticut law further provides that an employer "shall keep at the place of employment for a period of three years a true and accurate record of the hours worked by, and the wages paid by him to, each employee." Conn. Gen. Stat. § 31-66.

106.    MetLife is an "employer" within the meaning of the Connecticut labor statutes, and Plaintiff and the class members are "employees" of MetLife under Conn. Gen. Stat. § 31-58.

107.    MetLife deliberately and improperly misclassifies Plaintiff and the class members as exempt employees and denies them the overtime compensation to which they are entitled under Connecticut law.   Plaintiff and the class members are not in fact "employed in a bona fide executive, administrative or professional capacity" § 31-76i(e), as defined in relevant regulations (including Conn. Agencies Regs. §§ 31-60-14 and 31-60-15) or subject to any other enumerated exception.

108.    MetLife has failed to pay, and continues to fail to pay Plaintiff and the class members all wages due to them – including overtime pay – at the end of their designated pay periods and to the present date, in violation of Conn. Gen. Stat. § 31-71b.

109.    Consequently, under Conn. Gen. Stat. §§ 31-68, 31-72, and 52-596, Plaintiff and the class members are entitled to recover twice the amount of unpaid compensation owed to them for the class period, as well as reasonable attorneys' fees and costs.

## COUNT IV: VIOLATION OF ILLINOIS LAW

110.    Representative Plaintiff Harris incorporates by reference the preceding allegations of this Complaint as if fully alleged herein.

111.     At all relevant times, Defendant has been, and continues to be, an employer within the meaning of the Illinois Minimum Wage Law, 820 Ill. Comp. Stat. 105, *et seq.* ("IMWL").

112.     At all relevant times, Defendant employed employees, including Plaintiff Harris and each of the Illinois class members, within the meaning of the IMWL.

113.     Plaintiff Harris and the other Illinois class members regularly worked in excess of forty (40) hours per workweek, and Illinois class members continue to do so.

114.     At all relevant times, Defendant operated under common policies, plans and practices of willfully failing and refusing to pay Plaintiff Harris and the other Illinois class members at one-and-one-half times their regular rate for work in excess of forty (40) hours per workweek, even though the Illinois class members have been and are entitled to overtime.

115.     At all relevant times, Defendant willfully, regularly and repeatedly failed to pay Plaintiff Harris and the Illinois class members at the required overtime rate for hours worked in excess of forty (40) hours per workweek.

116.     Plaintiff Harris, on behalf of herself and the Illinois class members, seeks damages in the amount of their respective unpaid overtime compensation, as well as any and all available statutory and punitive damages, pre- and post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## IX. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly-situated persons, pray for the following relief:

A.  The FLSA action to be maintained as a collective action pursuant to 29 U.S.C. § 216(b).

B.  The New York Labor Law action be certified as a class action pursuant to Federal Rule of Civil Procedure 23;

C.  The Connecticut Minimum Wage Act action be certified as a class action pursuant to Federal Rule of Civil Procedure 23;

D.  The Illinois Minimum Wage Law action be certified as a class action pursuant to Federal Rule of Civil Procedure 23;

E.  An award in excess of $50,000,000 to compensate all class members for all wage and liquidated damages recoverable by law;

F.  Unpaid wages and liquidated damages pursuant to the FLSA and supporting regulations, in an amount to be determined at trial;

G.  Unpaid wages and liquidated damages pursuant to New York Labor Law and supporting regulations, in an amount to be determined at trial.

H.  Unpaid wages and liquidated damages pursuant to the Connecticut Minimum Wage Act and supporting regulations, in an amount to be determined at trial;

I.  Unpaid wages, treble damages, and damages of 5% of the amount of any wage underpayments for each month following the date of payment during which such underpayments remain unpaid pursuant to the Illinois Minimum Wage Law and supporting regulations, in an amount to be determined at trial;

J.   An injunction requiring Defendant to pay all statutorily-required

wages pursuant to Connecticut, New York, and Illinois labor law;

K.   Declare Defendant's conduct charged herein to be illegal;

L.   Penalties available under applicable laws;

M.   Attorneys' fees and costs;

N.   Pre-judgment and post-judgment interest; and

O.   Such other relief as this Court shall deem just and proper.

## X. <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand

a trial by jury on all questions of fact raised by the Complaint.

Dated: March 6, 2020

Respectfully submitted,

By: <u>/s/ Michael D. Palmer</u>
    Michael D. Palmer
    Jeremy Heisler
    Andrew Melzer
    David Tracey
    Melinda Koster
    Meredith Firetog

**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, Floor 31
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
mpalmer@sanfordheisler.com
jheisler@sanfordheisler.com
amelzer@sanfordheisler.com
dtracey@sanfordheisler.com
mkoster@sanfordheisler.com

mfiretog@sanfordheisler.com

-- and –

Michael R. DiChiara
**KRAKOWER DICHIARA LLC**
One Depot Square
*77* Market Street, Suite 2
Park Ridge, New Jersey 07656
201-746-0303
347-765-1600 (fax)

*Counsel for Plaintiffs Debra Julian,
Stephanie McKinney, Kimberly Harris, the
Collective Action Members, and the
Proposed Classes*