## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**DEBRA JULIAN, STEPHANIE MCKINNEY AND KIMBERLY HARRIS**, *on behalf of themselves and others similarly situated*,

     *Plaintiffs*,

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY**,

     *Defendant*.

**Case No.: 1:17-cv-00957-AJN**

*Electronically Filed*

---

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE TIME-BARRED CLAIMS SET FORTH IN PLAINTIFFS' THIRD AMENDED COMPLAINT

---

**MORGAN, LEWIS & BOCKIUS LLP**
Christopher A. Parlo
Melissa C. Rodriguez
101 Park Avenue
New York, New York 10178
212.309.6000

*Attorneys for Defendant Metropolitan Life Insurance Company*

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ............................................................................................ 1

   II.  STATEMENT OF FACTS AND RELEVANT PROCEDURAL
        HISTORY ........................................................................................... 2

        A.  Factual Background ................................................................... 2

        B.  Procedural Background .............................................................. 3

III.  ARGUMENT ............................................................................................ 5

   A.  The Statute of Limitations Bars Plaintiffs' Pre-February 9, 2015 Class
       Claims Under the Connecticut Minimum Wage Act. ........................... 5

   B.  The Statute of Limitations Bars Plaintiffs' Pre-March 6, 2017 Claims
       Under the Illinois Minimum Wage Law. .......................................... 7

       1.  A Three-Year Statute of Limitations Applies to Illinois Minimum
           Wage Law Claims. .............................................................. 7

       2.  The Newly-Pled Illinois Minimum Wage Law Claims Cannot
           Relate Back To The Original Complaint. ................................... 8

           a.  The Illinois Law Providing the Applicable Statute of
               Limitations Does Not Allow Relation Back In This
               Context. ................................................................. 9

           b.  The Illinois Claims Do Not Qualify for Relation Back
               Under Rule 15(c)(1)(B). ............................................. 13

               i.   The new Illinois state law class claims do not arise
                    "out of the same conduct, transaction, or
                    occurrence" set out in the original Complaint ................ 13

               ii.  MetLife Had NO Notice of the Proposed Illinois
                    Class Claims ........................................................ 14

               iii. MetLife Will Be Significantly Prejudiced by Any
                    Relation Back of the New Illinois State Law Class
                    claims ................................................................. 19

               iv.  The Illinois Claims Do Not Qualify for Relation
                    Back Because The Omission of The New IMWL
                    Claims And New Illinois Class  and Plaintiffs Was
                    Not A Mistake. ..................................................... 20

IV.  CONCLUSION ......................................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*,
106 F.3d 11 (2d Cir. 1997).................................................................................20

*Albany Park Serv., Inc. v. Kenny–Paschen Joint Venture*,
568 N.E.2d 230 (Ill. App. Ct. 1st Dist. 1991) .......................................................10

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974)...............................................................................6, 18

*Anderson v. City of Wood Dale, IL*,
No. 93-425, 1995 WL 106318 (N.D. Ill. March 9, 1995)........................................19

*ASARCO LLC v. Goodwin*,
756 F.3d 191 (2d Cir. 2014)...........................................................................14

*Bemis v. Safeco Ins. Co. of Am.*,
No. 09-0315, 2009 WL 1972169 (S.D. Ill. July 8, 2009) ..........................................9

*Butler v. McIntosh*,
No. CV 950555751S, 1997 WL 112010 (Conn. Sup. Ct. Feb. 21, 1997) ...........................6, 7

*Carlin v. City of Chicago*,
104 N.E. 905 (Ill. 1914).............................................................................11

*Charlot v. Ecolab, Inc.*,
97 F. Supp. 3d 40 (E.D.N.Y. 2015) ..................................................... *passim*

*Cliff v. Payco Gen. Am. Credits, Inc.*,
363 F.3d 1113 (11th Cir. 2004) ..................................................................14, 18

*Crown, Cork, & Seal Co. v. Parker*,
462 U.S. 345 (1983)....................................................................................6

*Dial Corp. v. News Corp.*,
No. 13-6802, 2016 WL 690895 (S.D.N.Y. Feb. 9, 2016)...................................13, 21

*Echlin v. PeaceHealth*,
887 F.3d 967 (9th Cir. 2018) ........................................................................14

*Feuerstack v. Weiner*,
No. 12-4253, 2013 WL 3949234 (D.N.J. July 30, 2013) .........................................17

*Ghartey v. St. John's Queens Hosp.*,
869 F.2d 160 (2d Cir. 1989)...........................................................................5

*Higgins v. NYP Holdings, Inc.*,
836 F. Supp. 2d 182 (S.D.N.Y. 2011)...............................................................14

*Hogan v. Fischer*,
    738 F.3d 509 (2d Cir. 2013)...........................................................................................9

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir. 2007)............................................................................................5

*Lee v. ABC Carpet & Home*,
    236 F.R.D. 193 (S.D.N.Y. 2006) ..................................................................................17

*Levy v, U.S. Gen. Accounting Office*,
    175 F.3d 254 (2d Cir. 1999)..........................................................................................20

*Levy v. U.S. Gen. Accounting Office*,
    No. 97-4016, 1998 WL 193191 (S.D.N.Y. Apr. 22, 1998) ...........................................9

*McClelland v. Deluxe Financial Services, Inc.*,
    431 F. App'x 718 (10th Cir. 2011) ...............................................................................14

*McGinnis v. A.R. Abrams, Inc.*,
    490 N.E.2d 115 (Ill. App. Ct. 4th Dist. 1986)..............................................................10

*Merryman v. JP Morgan Chase Bank, N.A.*,
    319 F.R.D. 468 (S.D.N.Y. 2017)............................................................................20, 21

*Metzger v. New Century Oil & Gas Supply Corp. Income & Dev. Program–1982*,
    594 N.E.2d 1218 (Ill. App. Ct. 1st Dist. 1992) .............................................................9

*Midland Funding LLC v. Brent*,
    No. 08-1434, 2010 WL 703066 (N.D. Ohio Feb. 22, 2010)........................................17

*O'Hara v. Weeks Marine, Inc.*,
    294 F.3d 55 (2d Cir. 2002)............................................................................................14

*Onlyx Properties LLC v. Bd. of County Comm'rs of Elbert Cnty.*,
    916 F. Supp. 2d 1191 (D. Colo. 2012)...........................................................................6

*Porter v. Decatur Mem'l Hosp.*,
    882 N.E.2d 583 (Ill. 2008)..............................................................................................9

*Reliance Ins. Co. v. PolyVision Corp.*,
    292 F. App'x 106 (2d Cir. 2008) ..................................................................................20

*In re Safeco Ins. Co. of Am.*,
    585 F.3d 326 (7th Cir. 2009) ..........................................................................................9

*Schillinger v. 360 Networks USA, Inc.*,
    No. 06-0138, 2006 WL 1388876 (S.D. Ill. May 18, 2006) ...........................................9

*Schorsch v. Hewlett–Packard Co.*,
    417 F.3d 748 (7th Cir. 2005) ..........................................................................................9

*Senterfitt v. SunTrust Mortg. Inc.*,
    385 F. Supp. 2d 1377 (S.D. Ga. 2005)..........................................................................18

*Tran v. Tran*,
    67 F. App'x. 40 (2d Cir. 2003) ...........................................................................................14

*Vincent v. Williams*,
    664 N.E.2d 650 (Ill. App. Ct. 1st Dist. 1996) ..........................................................11

*In re Vitamin C Antitrust Litig.*,
    995 F. Supp. 2d 125 (E.D.N.Y. 2014) ......................................................................9

*Weber v. Cueto*,
    253 N.E.2d 442 (Ill. App. Ct. 5th Dist. 1993) ........................................................11

*Wilder v. News Corp.*,
    No. 11-4947, 2015 WL 5853763 (S.D.N.Y. Oct. 7, 2015) ......................................21

*Young v. Lepone*,
    305 F.3d 1 (1st Cir. 2002) .......................................................................................15

*Zeh v. Wheeler*,
    489 N.E.2d 1342 (Ill. 1986) ...................................................................................10

*Zelinka v Commonwealth Edison Co.*,
    No. 09-2946, 2012 WL 3005375 (N.D. Ill. July 23, 2012) .....................................11

*Zorrilla v. Carlson Rests.*,
    255 F. Supp. 3d 465 (S.D.N.Y. 2017) .....................................................................16

**Statutes**

29 U.S.C. § 216(b) ...........................................................................................................12

29 U.S.C. § 256(b) ...........................................................................................................17

C.G.S. § 31-68 .................................................................................................................6

C.G.S. § 31-72 .................................................................................................................12

C.G.S. § 52–596 .......................................................................................................1, 3, 4, 5

Ill. Comp. Stat. § 5/2–616(b) ...................................................................................9, 10, 13

Ill. Comp. Stat. § 105/4a(2)(E) .......................................................................................11

Ill. Comp. Stat. § 105/12(a) .........................................................................................7, 12

Ill. Comp. Stat. § 115/2 ..................................................................................................12

N.Y. Lab. Law § 198(1-a) ................................................................................................12

**Other Authorities**

Defining and Delimiting the Exemptions for Executive, Administrative,
    Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22,122,
    22,260–74 (April 23, 2004) ....................................................................................11, 12

Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed. 2020) .............................................14

## I.     <u>INTRODUCTION</u>

On March 6, 2020, Plaintiffs filed a Third Amended Complaint (TAC), adding a new named Plaintiff (Kimberly Harris), new Illinois state law claims and a new putative Illinois class. The TAC now pleads an FLSA claim, a New York Labor Law claim, a Connecticut Minimum Wage Act claim and an Illinois Minimum Wage Law claim, each with a different limitations period.  More specifically, Plaintiffs now *allege* that:

- The FLSA limitations period extends back to three years from the filing of the original Complaint – to February 8, 2014.
- The New York Labor Law limitations period extends back to six years from the filing of the original Compliant – to February 8, 2011 (shortened to November 13, 2013 because MetLife did not classify the Long Term Disability Claim Specialist position as exempt until that time).
- The Connecticut Minimum Wage Act limitations period extends back to ***two years prior to Plaintiff McKinney filing her individual complaint with the Connecticut Department of Labor*** – until February 19, 2014.
- The Illinois Minimum Wage Law limitations period extends back to ***three years from the filing of the original Complaint*** – until February 8, 2014 (even though no Illinois claim was pled until the TAC was filed ***on March 6, 2020***).

Through this motion, MetLife seeks an Order dismissing and/or striking the untimely portions of the Connecticut and Illinois claims set forth in the TAC.  More specifically, Plaintiffs cannot proceed with claims under Connecticut law for the period between February 19, 2014 and March 3, 2015, because the two-year limitations period for such claims only extends back to March 3, 2015 – two years prior to the filing of those claims in this case.  Any claims filed prior to March 3, 2015 are untimely.  Ms. McKinney's filing of an administrative proceeding with the Connecticut Department of Labor ("DOL" or the "Department") in February 2016 may have tolled the limitations period for her individual claim, but can**not** toll the limitations period for the claims of the putative Connecticut class members that she purports to represent.  The statute of limitations for their claims continued to run until March 2, 2017, when the Connecticut claims were filed here.

Similarly, the Illinois claims that were pled for the first time on March 6, 2020, by newly-added named Plaintiff Kimberly Harris, cannot relate back to the February 8, 2017 filing of the original Complaint. The three-year limitations period for those claims extends back only to March 7, 2017 – three years prior to the filing of the first pleading setting forth those claims, and there is no valid basis for relating the Illinois claims back to the filing date of the original Complaint. As a result, all Illinois law class claims prior to March 7, 2017 must be dismissed or stricken from this action.

## II.   STATEMENT OF FACTS AND RELEVANT PROCEDURAL HISTORY

### A.   Factual Background

MetLife issues group insurance policies to a large number of employers, which insurance serves as the funding for the LTD benefit plans of those employers, and provides LTD coverage and benefits to the employees covered by those plans. *See* Dkt. No. 27, ¶ 25. Plaintiffs worked for MetLife as Long Term Disability Claim Specialists ("LTDCSs"). LTDCSs evaluate LTD claims and decide, *inter alia*, whether to approve or deny (or continue or terminate) the payment of LTD benefits. To do so, an LTDCS analyzes the definitions of disability and any exclusions under the applicable LTD plan and conducts a detailed investigation of each assigned claim (which may include analyzing the claimant's medical records, interviewing the claimant and medical providers, consulting with medical specialists and taking other steps) to assess whether the claimant's medical condition and related restrictions prevent the employee from working in his or her, or any other, occupation (*i.e.*, determines whether the claimant is "disabled" as defined under the terms of the applicable plan). *See ECF 49,* Ex. 5. LTDCSs use this information to determine whether a claim should be approved or denied. *Id.* If approval of a claim results in the payment of benefits to a claimant under a certain monetary limit, which varies from LTDCS to LTDCS and may exceed $10,000 per month (or $120,000 per year) per

claimant, the approval decision may not need to be reviewed by anyone else. Gill Tr. 127:6-130:8, ECF 49, Ex. 4; Julian Tr. 260:17-262:19, ECF 49, Ex. 2. If an LTDCS approves a claim, but the resulting payment of benefits is above their financial authority threshold, the recommendation to approve the claim may then be reviewed by a Unit Leader. Gill Tr. 127:6-130:8; 350:3-18, ECF 49, Ex. 4; Julian Tr. 260:17-262:19; 324:12-17, ECF 49, Ex. 2. When claims are approved, the LTDCS authorizes payments to qualified claimants of up to several thousand dollars per claimant, per month. *See id.* When claims are denied, the employee claimants seeking LTD benefits do not receive the wage replacement compensation for which they applied. Because no two claimants have precisely the same medical condition or restrictions, and because each condition may affect a claimant's ability to work in different ways, there is no formulaic method for deciding whether to approve or deny claims for LTD benefits.

In November 2013, in conjunction with changes that were being implemented to the LTDCS position, MetLife reclassified Plaintiffs as exempt from overtime regulations based upon the administrative exemption. Plaintiffs challenge that current classification in this action.

### B.   Procedural Background

On February 19, 2016, Stephanie McKinney filed an *individual* wage claim with the Connecticut DOL. The Department conducted an investigation of Ms. McKinney's *individual* claim and unsuccessfully attempted to broker an *individual* settlement between the Company and Ms. McKinney. Ultimately, Ms. McKinney decided not to settle her *individual* claim or further pursue a remedy with the Connecticut DOL, choosing instead to exercise her right to take her claim to Court.

On February 8, 2017, Plaintiff Debra Julian filed this action, alleging collective action claims under the FLSA and class claims under the New York Labor Law. On March 2, 2017, Ms. McKinney joined this suit as part of the filing of a First Amended Complaint, adding Ms.

McKinney as a named Plaintiff and, for the first time, raising and adding putative class claims under the Connecticut Minimum Wage Act to this action.

On February 21, 2019, collective action notice was distributed to LTDCSs across the country. On March 6, 2019, Kimberly Harris submitted a Consent to Join form and became a member of Plaintiffs' FLSA collective action. Other Illinois LTDCS's similarly opted in to the FLSA collective during March 2019 and April 2019.

There were no Illinois claims pled in Ms. Julian's original February 8, 2017 Complaint, in Plaintiffs' March 2, 2017 Amended Complaint or in Plaintiffs' March 23, 2017 Second Amended Complaint. There were also no Illinois-based plaintiffs named in any of those pleadings. Plaintiffs did not even seek to add any Illinois claims or Illinois plaintiffs in March 2019, when Ms. Harris consented to join the FLSA collective, or in or after April 2019 when other Illinois residents joined the action.

It was not until *March 6, 2020* – **over three years after the commencement of this action**, and a year after Ms. Harris and others from Illinois joined the FLSA collective – that Plaintiffs added Ms. Harris as a named plaintiff and added Illinois state law claims. Nevertheless, in their Third Amended Complaint ("TAC") Plaintiffs now allege that the class claims of all Illinois-based LTDCSs relate back to three years prior to the filing of the *original* Complaint – until February 2014 – thereby seeking to create a six-year limitations period for claims that by statute can go back only three-years. *See* ECF 120, ¶¶ 16, 77. Plaintiffs also baselessly allege that the limitations period for their Connecticut Minimum Wage Act class claims extends back to February 19, 2014 – two years prior to the date when Ms. McKinney filed her individual administrative complaint with the Connecticut DOL.[1]

---

[1] *See* Third Amended Complaint, ECF 120, ¶ 36 ("On February 19, 2016, Plaintiff McKinney filed a complaint against MetLife with the Connecticut Department of Labor"); ¶ 67 ("The Connecticut class is defined as follows: All individuals who worked for MetLife in Connecticut as LTD Claim Specialists (including all "Claim Specialists, "Senior Claim Specialists," "Case Managers," and "Senior Case

Through this motion, MetLife seeks dismissal of the time-barred portions of Plaintiffs' Illinois and Connecticut class claims.

## III.   <u>ARGUMENT</u>

Where it appears on the face of the Complaint that a claim asserted therein is time-barred, the Court may, under Rule 12(b)(6), dismiss the claim as untimely. *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) (where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss); *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007) (affirming dismissal of claims and denial of cross-motion to amend as to time-barred claims). That is the situation here as to Plaintiffs' pre-February 9, 2015 Connecticut law class claims and pre-March 7, 2017 Illinois class claims.

### A.   The Statute of Limitations Bars Plaintiffs' Pre-February 9, 2015 Class Claims Under the Connecticut Minimum Wage Act.

Under Connecticut General Statutes ("CGS") § 52–596, the Connecticut Minimum Wage Act has a two-year statute of limitations. *See* MWA § 52–596. There is no exception or extension in that statute for class claims, including because of anything filed with the Connecticut DOL. *Id*. Because Plaintiffs did not file their Connecticut law class claim until ***March 2, 2017***, members of Plaintiffs' putative Connecticut class can only assert claims that accrued on or after ***March 3, 2015***. Accordingly, the Connecticut class claims in the TAC pertaining to the period between February 19, 2014 and March 3, 2015 are time-barred as a matter of law, and fail to state a claim upon which relief can be granted.

MetLife anticipates that Plaintiffs will argue that the limitations period for the Connecticut class claims should be considered tolled during the pendency of Ms. McKinney's individual Connecticut DOL proceeding. **<u>NO</u>** authority exists to support that proposition.

Managers" – as well as any other individual holding a similar job position – who worked on long term disability claims at any time from February 19, 2014 through the date of final judgment.")

Although CGS § 52–596 provides that the two-year statute of limitations for wage claims "shall be tolled upon the filing with the Labor Commissioner of a complaint of failure to pay wages pursuant to the provisions of chapter 558," there is no legal basis for extending such tolling beyond the individual claims of Ms. McKinney.  Ms. McKinney filed an *individual* complaint with the Connecticut DOL in 2016.  No other LTDCS joined that proceeding, and no other LTDCS filed a separate wage claim with the Connecticut DOL.  The Connecticut Commissioner of Labor did not initiate an individual or class proceeding despite having the ability to do so.  *See* CGS Ch. 558 Section 31-68 ("the commissioner may bring any legal action necessary to recover twice the full amount of the unpaid minimum fair wages or unpaid overtime wages to which the employee is entitled under said sections or under an order").  Accordingly, the statute of limitations continued to run as to the claims of every other putative Connecticut class member until March 2, 2017.  It was only on that date, when Plaintiffs filed their Amended Class Action Complaint, that tolling under the doctrine advanced in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) commenced.[2]  *See Onlyx Properties LLC v. Bd. of County Comm'rs of Elbert Cnty.,* 916 F. Supp. 2d 1191 (D. Colo. 2012) (suspension of the running of a statute of limitations, as provided for in *American Pipe v. Utah*, is not applicable when the plaintiff was not a putative member of the class action during the time for which tolling is sought).

If the law were otherwise, a charge or complaint could be filed with a state DOL and that filing could remain pending with the agency for years.  That result is not just hypothetical given

---

[2] In *American Pipe*, the Supreme Court held that, in the event of a federal claim "where class action status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." *Id.* at 552-53.  The Supreme Court subsequently extended the doctrine to all putative class members, rather than solely intervenors.  *Crown, Cork, & Seal Co. v. Parker*, 462 U.S. 345, 350 (1983).

the reported backlog of agency charges and delays in decisions.[3]  That would extend the statute of limitations for years, despite the legislature including no such entitlement in the applicable law.  Such a result is neither fair nor lawful.

The Superior Court directly addressed this issue in *Butler v. McIntosh*, No. CV 950555751S, 1997 WL 112010 (Conn. Sup. Ct. Feb. 21, 1997).  There, the Commissioner of Labor himself argued that tolling under § 52-596 extended to the claims of "fellow employees" even if they did not file a complaint.  *Id.* at *5.  Reviewing the legislative history of the amendment that added the extension for claims filed with the DOL, the court found that "it would be brash judicial activism for a court to construe § 52-596 in the way the Commissioner urges; that is, to find a perpetual tolling for unidentified claimants by implication (that is, without express legislative declaration)."  *Id.* at *6.  The court further noted that the provision was added to § 52-296 without any discussion of the position taken by the Commissioner, and that **"nothing"** in the testimony of the only person to speak on the bill (Connecticut's Director of Minimum Wage and Wage Enforcement) "suggests that the filing of a claim by a single employee would, without more, constitute a perpetual repeal of the limitation of § 52-596 as to the claims of all fellow employees."  *Id.* at *7.  To the contrary, the court noted that:

> In the absence of case law supporting the Commissioner's position, and in light of the dramatic consequences which could follow the adoption of the Commissioner's construction of § 52-596, it is held that the tolling provision of § 52-596 applies only to the claim of a person who files a complaint with the Commissioner, in this case, Johnson.  Accordingly, the defendant is entitled to a partial summary judgment on her statute of limitations defense.

*Id.*

Because no member of the putative Connecticut class can sustain claims for the period between February 19, 2014 and March 3, 2015, those claims must be dismissed.

---

[3] *See e.g.* https://web.law.columbia.edu/sites/default/files/microsites/career-services/FULL%20REPORT-Enforcement%20of%20State%20Wage%20and%20Hour%20Laws.pdf  (noting that the Connecticut Department of Labor reported that wage claims before the department may last up to two years or more).

**B.      The Statute of Limitations Bars Plaintiffs' Pre-March 6, 2017 Claims Under the Illinois Minimum Wage Law.**

**1.      A Three-Year Statute of Limitations Applies to Illinois Minimum Wage Law Claims.**

The Illinois Minimum Wage Law ("IMWL") requires that actions brought under that statute be commenced "within 3 years from the date of underpayment."  820 Ill. Comp. Stat. 105/12(a).  Here, because no Illinois claims were pled until March 6, 2020, the limitations period for Ms. Harris's individual claim under the IMWL, and for the claims of putative Illinois class members, can only extend to ***March 7, 2017***.  Yet, in the TAC, Plaintiffs allege that those claims extend back to ***February 8, 2014*** – the date three years prior to Ms. Julian's filing of her original Complaint.  In other words, Plaintiffs contend that the claims of Ms. Harris and all of the putative Illinois class members whom she purports to represent should relate back to the filing of the original Complaint in this action.  That argument fails as a matter of law and, consequently, Plaintiffs' pre-March 7, 2017 IMWL claims should be dismissed.

**2.      The Newly-Pled Illinois Minimum Wage Law Claims Cannot Relate Back To The Original Complaint.**

MetLife anticipates that Plaintiffs will argue that the newly-alleged ILMW claims should relate back to the filing of the original Complaint pursuant to Fed. R. Civ. P. 15(c).  However, under Rule 15(c)(1), an amendment to a pleading relates back to the date of the original pleading only when:

(A)   the law that provides the applicable statute of limitations allows relation back;

(B)   the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C)   the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

(i)    received such notice of the action that it will not be prejudiced in defending on the merits; and

> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(A)-(C).  Broken down, and applying pertinent case law, that Rule spells out two alternate paths for relation back where an amended complaint adds a new plaintiff and new substantive claims.  First, relation back may occur if the underlying state law that provides the statute of limitations allows it.  *See* Fed. R. Civ. P. 15(c)(1)(A).  Second, relation back can occur if the claims arise out of the same transaction or occurrence, *and* the defendant received "adequate notice" of the action such that it will not be unduly prejudiced in defending it on the merits, *and* the defendant knew or should have known that the new plaintiff would have been asserting the new claims in the lawsuit *but for a mistake in the prior pleading*.  *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 72 (E.D.N.Y. 2015); *Levy v. U.S. Gen. Accounting Office*, No. 97-4016, 1998 WL 193191, at *5 (S.D.N.Y. Apr. 22, 1998) (same); *Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013) (same); *In re Vitamin C Antitrust Litig.,* 995 F. Supp. 2d 125, 128 (E.D.N.Y. 2014) (same); *see also Porter v. Decatur Mem'l Hosp*., 882 N.E.2d 583, 591 (Ill. 2008) (explaining that section 5/2-616(b) is designed to afford a defendant a fair opportunity to investigate the circumstances upon which liability is based while the facts are accessible, noting that a critical consideration is whether the defendant was given adequate notice and knowledge of the incident giving rise to the lawsuit); *Metzger v. New Century Oil & Gas Supply Corp. Income & Dev. Program–1982*, 594 N.E.2d 1218, 1232 (Ill. App. Ct. 1st Dist. 1992) ("The policy of statutes of limitation is to provide a defendant with a sufficient opportunity to investigate the factors upon which his liability may be based while such evidence is still ascertainable ....").[4]

---

[4] While relation back in this case is governed by Rule 15(c)(1), 735 Ill. Comp. Stat. § 5/2–616(b) is "functionally identical."  *See Schorsch v. Hewlett–Packard Co*., 417 F.3d 748, 751 (7th Cir. 2005); *see also Bemis v. Safeco Ins. Co. of Am.*, No. 09-0315, 2009 WL 1972169, *6 n. 4 (S.D. Ill. July 8, 2009) (same), aff'd sub nom. *In re Safeco Ins. Co. of Am*., 585 F.3d 326 (7th Cir. 2009); *Schillinger v. 360*

As explained below, neither of those two paths can be satisfied here.

>   **a.**     ***The Illinois Law Providing the Applicable Statute of Limitations Does <u>Not</u> Allow Relation Back In This Context.***

The Illinois statute concerning the relation back of newly added claims provides:

> The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not expired when the original pleading was filed, and if it shall appear from the original and amended pleadings that the cause of action asserted, or the defense or cross claim interposed in the amended pleading grew out of the same transaction or occurrence set up in the original pleading, even though the original pleading was defective in that it failed to allege the performance of some act or the existence of some fact or some other matter which is a necessary condition precedent to the right of recovery or defense asserted, if the condition precedent has in fact been performed, and for the purpose of preserving the cause of action, cross claim or defense set up in the amended pleading, and for that purpose only, an amendment to any pleading shall be held to relate back to the date of the filing of the original pleading so amended.

735 Ill. Comp. Stat. § 5/2–616(b).

On its face, Section 5/2–616(b) does mention relation back, and, in that regard, Illinois courts have found that it can apply generally to the addition of new plaintiffs in an action.  *See Albany Park Serv., Inc. v. Kenny–Paschen Joint Venture*, 568 N.E.2d 230 (Ill. App. Ct. 1st Dist. 1991) (applying 735 Ill. Comp. Stat. § 5/2–616(b) in the context of newly added plaintiffs). However, as applicable here, those same courts have found that § 5/2–616(b) does **not** apply to *allow* the relation back of new claims by new and independent parties.  *See McGinnis v. A.R. Abrams, Inc*., 490 N.E.2d 115 (Ill. App. Ct. 4th Dist. 1986) (denying relation back even where the newly added claim was "inextricably connected" to the original claims because it was still a separate cause of action of a new party).

Whether relation back is allowed under § 5/2–616(b) in the context of new claims by new parties depends on whether the newly added claims grow out of the same transaction or

---

*Networks USA, Inc*., No. 06-0138, 2006 WL 1388876, at *5 (S.D. Ill. May 18, 2006) (same); *Porter*, 882 N.E.2d at 591 (describing 735 Ill. Comp. Stat. § 5/2–616(b) as "similar" to Rule 15(c)(1)(B)).

occurrence as the original claims. *Zeh v. Wheeler*, 489 N.E.2d 1342 (Ill. 1986). And in making that determination the Illinois Supreme Court has identified the following criteria as relevant:

- Would the same evidence be appropriate to prove both the original complaint and amendment?
- Did the original complaint state a cause of action although stating such cause of action *defectively*?
- Does the amendment relate to a necessary element of the cause of action?
- Would judgment on the original complaint be res judicata to the amended complaint?

*Id.* at 1345, *citing Carlin v. City of Chicago*, 104 N.E. 905 (Ill. 1914). In this case, the answer to all of those questions is no, and that precludes relation back.

Of critical importance here, the Illinois law providing the applicable statute of limitations does <u>not</u> permit relation back where the amended complaint adds claims *that implicate different legal standards and proofs than the originally pled causes of action*. *See Weber v. Cueto*, 253 N.E.2d 442 (Ill. App. Ct. 5th Dist. 1993) (denying relation back where new claim required different proofs, even where the causes of action were identical with respect to labelling); *Vincent v. Williams*, 664 N.E.2d 650 (Ill. App. Ct. 1st Dist. 1996) (controlling factor in determining relation back is whether amended action requires same proof; *Carlin*, 104 N.E. 905 (test to determine whether the newly-pled cause of action is sufficiently similar to the originally-pled cause of action is whether the same evidence would support a judgment rendered on either).

A review of the TAC, the newly-pled IMWL claim and the pertinent case law describing the legal standard applicable to that claim confirm that relation back is <u>not</u> permitted in the context of this case. The overtime claims pled in the original, first and second amended complaints arise only under the FLSA, New York and Connecticut law, and focus on Ms. McKinney and Ms. Julian's challenge to the applicability of the administrative exemption to their LTDCS jobs. None of those claims involve the differences incorporated into the Illinois administrative exemption statute. More specifically, unlike the FLSA, New York and

-11-

Connecticut law, the IMWL specifies that the scope of the Illinois administrative and executive exemptions are as "defined by or covered by the Federal Fair Labor Standards Act of 1938 and the rules adopted under that Act, *as both exist on March 30, 2003*." 820 Ill. Comp. Stat. 105/4a(2)(E) (emphasis added).  Thus, Plaintiffs' Illinois overtime claim will be governed by the FLSA regulations that existed prior to the comprehensive amendments of April 23, 2004, which altered the definition of individuals "employed in a bona fide executive administrative, or professional capacity." *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed.Reg. 22,122, 22,260–74 (April 23, 2004); *Zelinka v Commonwealth Edison Co.*, No. 09-2946, 2012 WL 3005375 (N.D. Ill. July 23, 2012) (noting that the FLSA and IMWL differ in this "critical" respect and detailing the differences between the Illinois administrative exemption analysis and the FLSA exemption analysis).

The 2004 regulations, which are rendered inapplicable to IMWL claims by statute, provide substantive interpretations on pivotal, substantive issues, including what qualifies as the exercise of discretion and independent judgment and the definition of an employee's primary duty for purposes of the administrative exemption.  *See* 69 Fed.Reg. 22,122, 22,260–74.  In addition, the IMWL allows for a greater quantum of damages than are recoverable in conjunction with Plaintiffs' other federal and state law claims.  More specifically, the IMWL allows the recovery of treble damages for statutory violations, whereas the FLSA, New York and Connecticut law allow only a maximum recovery of double damages (and only based upon a finding that the employer lacked a good faith belief that it was complying with the law). *Compare* 820 ILCS 105/12 (allowing for recovery of treble damages); C.G.S. § 31-72 (allowing for recovery of double damages unless employer establishes a good faith believe that the underpayment of wages was in compliance with law) *with* N.Y. Lab. Law § 198(1-a) (permitting

double damages in the absence of a showing of good faith); 29 U.S.C. § 216(b) (providing for double damages unless employer shows that the FLSA breach was done in good faith, with reasonable grounds for believing that the action was not in violation of the law).[5]

Given the different legal standards and the different quantum of available damages, the recent injection of entirely new IMWL class claims into this proceeding is not just "more of the same." It is a significant departure from the prior claims, that will implicate different proofs based upon the applicable legal standards (not to mention the different managers and witnesses for Illinois LTCSs). As a result, the IMWL claims do not grow out of the same transaction or occurrence as required by 735 Ill. Comp. Stat. § 5/2–616(b), and MetLife was not fairly on notice of those claims by virtue of Ms. Julian and Ms. McKinney asserting FLSA, New York and Connecticut claims. Accordingly, § 5/2–616(b) and Fed. R. Civ. P 15(c)(1)(A) do not allow relation back here.

**b.    *The Illinois Claims Do Not Qualify for Relation Back Under Rule 15(c)(1)(B).***

Like Section § 5/2–616(b), Rule 15(c)(1)(B) and (C) allow relation back only if Plaintiffs establish that: (i) the amendment adding an Illinois plaintiff and Illinois state law class claims arises "out of the same conduct, transaction, or occurrence" set out in the original pleading; *and* (ii) MetLife received fair notice of the proposed class claims and will not be prejudiced by relation back of the new state claims; *and* (iii) MetLife knew or should have known that the failure to include Ms. Harris (or any Illinois plaintiff) and Illinois class claims in the original Complaint was a "mistake." Fed. R. Civ. P. 15(c)(1); *see also e.g. Ecolab*, 97 F. Supp. 3d at 40

---

[5] The IMWL differs from the FLSA in other significant ways as well. As the Court pointed out in *Ecolab*, "[t]he court recognizes that the IWPCA does not 'mirror' the FLSA and that the Named Plaintiffs are required to establish the existence of an agreement or a contract in order to prevail under the IWPCA, a requirement that does not exist under the FLSA. 820 Ill. Comp. Stat. § 115/2. As the R & R correctly noted, the IWPCA 'does not establish a substantive right to payment of any particular regular wages or overtime wage,' and "mandates payment of wages only to the extent the parties' contract or employment agreement requires such payment.'" *Ecolab*, 97 F. Supp. 3d at 49-50 (*citing Hoffman v. RoadLink Workforce Solutions, LLC,* No. 12–7323, 2014 WL 3808938, at *4 (N.D.Ill. Aug. 1, 2014)).

(denying relation back where plaintiffs sought to add four new plaintiffs and four new state law overtime claims after conditional certification of FLSA claims); *Dial Corp. v. News Corp.*, No. 13-6802, 2016 WL 690895 (S.D.N.Y. Feb. 9, 2016) ("Permitting relation back of an entire class of plaintiffs would blindside a defendant who thought it was dealing with a small, enumerated group of plaintiffs.").  This standard cannot be met here.

### i.     The new Illinois state law class claims do not arise "out of the same conduct, transaction, or occurrence" set out in the original Complaint

As noted above, the new Illinois state law class claims do not arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original" Complaint. *See* Fed. R. Civ. P. 15(c)(1)(B); *Ecolab*, 97 F. Supp. 3d at 56 (denying relation back because the number and identities and the various state law classes subject to different statutory requirements were not identified in the original complaint); *Cliff v. Payco Gen. Am. Credits, Inc.*, 363 F.3d 1113, 1133 n. 16 (11th Cir. 2004) (plaintiff's amended complaint alleging nationwide class-action claims did not relate back under Rule 15(c) when plaintiff "made the strategic decision to limit the class to individuals residing in one state, and subsequently decided—after the statute of limitations had run—that he wished to expand his suit to encompass individuals in all fifty states"); *McClelland v. Deluxe Financial Services, Inc.*, 431 F. App'x 718 (10th Cir. 2011) (denying relation back where new claims implicated different proofs); *Echlin v. PeaceHealth*, 887 F.3d 967 (9th Cir. 2018) (denying relation back where new claim implicated a different legal standard and different proofs).  The IMWL claims implicate FLSA regulations inapplicable to the claims in the original Complaint and involve people and proofs distinct from those claims. Accordingly, they cannot fairly be said to assert a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

### ii.     MetLife Had NO Notice of the Proposed Illinois Class Claims

As noted above, the TAC clearly seeks relation back of newly added claims, rather than

-14-

the relation back of allegations elaborating upon previously-asserted claims. Where the amendment would involve a new cause of action, the district court may deny relation back unless the original complaint gave the defendant fair notice of the newly alleged claims. *O'Hara v. Weeks Marine, Inc*., 294 F.3d 55, 68 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 202 (2d Cir. 2014) (same); *Tran v. Tran*, 67 F. App'x. 40, 42 (2d Cir. 2003) (notice is the "central question"); *Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 192 (S.D.N.Y. 2011) (the pertinent inquiry is whether the defendant received fair notice); *see also* Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed. 2020) (noting that "the standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test. Although not expressly mentioned in the rule, courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading."); *Young v. Lepone*, 305 F.3d 1, 15–16 (1st Cir. 2002) ("flatly reject[ing] the proposition that relation back is available merely because a new plaintiff's claims arise from the same transaction or occurrence as the original plaintiff's claims" and "repudiat[ing] the conceit that an action filed by one plaintiff gives a defendant notice of the impending joinder of any or all similarly situated plaintiffs," as "[s]uch a rule would undermine applicable statutes of limitations and make a mockery of the promise of repose").

Plaintiffs cannot validly assert that MetLife was provided fair notice of the recently-added individual and class claims under the IMWL. First, as noted above, the standards applicable to the IMWL claims differ from those applicable to the FLSA claims, the New York claims and the Connecticut claims. and Plaintiffs' clearly made a calculated decision not to include them. Those differences in the law preclude a finding that MetLife was given fair notice of the IMWL claims by virtue of the original Complaint. *Ecolab, Inc.*, 97 F. Supp. 3d at 73. As the court put it in *Ecolab*, "[a]lthough the basic facts of the alleged wage-and-hour violation

-15-

purportedly committed by defendant Ecolab is the same under federal law, the state standards vary such that a defendant facing multi-state claims must analyze its records and scope of liability under each state law separately. ***It would be unfair to expect a defendant to engage in this review before at least one employee from a state has stepped forward as a plaintiff to show that there is a plaintiff with standing to raise the challenge and force the defendant to consider its liability.*** *Id.* at \*73 (emphasis added).[6]

Second, as noted above, this case involves an attempt to relate back a newly added plaintiff's state law individual and class claims that the original plaintiffs never brought and had no standing to bring. Neither Ms. Julian nor Ms. McKinney could have brought those claims. Thus, Plaintiffs' previous assertion of FLSA, New York and Connecticut claims did not put MetLife on notice that it might be sued, in this action, by different plaintiffs asserting individual and class claims under the wage-and-hour laws of any additional state(s). *Ecolab*, 97 F. Supp. 3d at 72 (prior assertion of FLSA, New York and New Jersey claims did not put defendant on notice that it might be sued under the wage and hour laws of four additional states). Moreover, no Illinois opt-in sought to become a named plaintiff or assert Illinois individual or class claims a year ago when they joined the collective. *See* ECF No. 85 (filing Consent to Join forms submitted by multiple Illinois opt-ins in February, March and April 2019, including by Ms. Harris). *Accordingly, for four years after the filing of the action MetLife had no notice of any Illinois state law claims, much less Illinois class claims.*[7]

---

[6] Plaintiffs themselves have argued that there is a sharp distinction between named plaintiffs and opt-in plaintiffs for discovery purposes in opposing additional discovery of opt-ins. Accordingly, they cannot now suggest that Illinois opt-in plaintiffs should be treated as if they were part of this suit from the date of the original Complaint for relation back purposes.

[7] To the extent that Plaintiffs attempt to rely upon *Zorrilla v. Carlson Rests.*, 255 F. Supp. 3d 465 (S.D.N.Y. 2017), to argue that relation back is appropriate in this context, such reliance is misplaced. Even under the more liberal relation-back standard applied in *Zorrilla*, which the Second Circuit has not adopted, the court must conduct a "claim-by-claim examination of the potential for prejudice." *Id.* at \* 479 (citing *Young*, 305 F.3d at 17). Where "a new state claim creates a form of liability sufficiently distinct from the original nationwide FLSA" claim, then prejudice lies. *Id.* As noted above, because of the different standards for assessing liability, and the massive difference in available damages, there is no

-16-

The requirement of fair notice recognizes that plaintiffs wishing to rely on relation back bear some responsibility to define the scope of the action that they are bringing, so that defendants may properly evaluate and respond to such claims. *Ecolab*, 97 F. Supp. 3d at 73. Here, Defendants were not provided fair notice of those claims via the original pleading where Plaintiffs asserted individual and class claims under the laws of entirely different states. It would thus be "inherently unfair" to MetLife to permit relation back of Plaintiff's newly-minted Illinois claims.[8] *Id.* at *54.

Third, it is not enough that the IMWL claims bear "some resemblance" to the FLSA claims. *Id.* at 55. To quote the court, in *Ecolab*, "[t]his reasoning would defeat the purpose of Rule 15(c)'s notice requirement, if the filing of a single FLSA collective action automatically put a national defendant on notice of any and all potentially related state class claims that may arise." *Id.* at *56, *citing Cliff*, 363 F.3d at 1132–33 (denying relation back where original complaint alleging Florida class claim did not put defendant on notice of proposed nationwide class); Cf. *Midland Funding LLC v. Brent*, No. 08-1434, 2010 WL 703066, at *3 (N.D. Ohio Feb. 22, 2010) (denying relation back where original complaint alleging Ohio class claim did not put defendant on notice of proposed nationwide class) and *Feuerstack v. Weiner*, No. 12-4253, 2013 WL

---

identity of claims which is required under the *Zorrilla* standard. Moreover, for those same reasons, plus the substantial delay by Plaintiffs in asserting the Illinois claims, Defendant is clearly prejudiced. Finally, unlike the plaintiffs' conduct in *Zorrilla*, Plaintiffs' conduct during this litigation does ***not*** "justif[y] [the] inference" that the Illinois class claims "were going to be litigated and were, in fact, already being 'unofficially' litigated." *Id.* at 478. To the contrary, unlike in *Zorrilla*, in no prior pleading (complaint or Scheduling Order), did "Plaintiffs state[] their intention to, at the end of the opt-in period, 'move to amend to add additional state law claims under Federal Rule of Civil Procedure 23 and class representatives for those claims'" or do "so in a timely manner." *Id.* Accordingly, *Zorrilla* is inapplicable.

[8] The absurdity of Plaintiff's relation back argument is further illustrated by the fact that the statute of limitations indisputably continued to run on Ms. Harris's FLSA claim (a claim actually set forth in the original Complaint) until she filed her consent to join form in 2019. See 29 U.S.C. § 256(b); *Lee v. ABC Carpet & Home*, 236 F.R.D. 193, 199 (S.D.N.Y. 2006) ("Signed consents do not relate back to the original filing date of the complaint"). How, then, can she contend that her IMWL claim should relate back to 2017, even though she did not plead it until March 2020, and had no claim in any case until 2019? There is no authority that would support that leap in logic.

3949234, at *4 (D.N.J. July 30, 2013) (denying relation back where original complaint alleging New Jersey class claim did not put defendant on notice of proposed nationwide class).

On this "fair notice" issue, the court in *Ecolab* found that just because the original complaint included nationwide FLSA claims was NOT enough to show that the defendant had sufficient notice of the potential state claims by individuals who had not yet been identified or opted into the collective action. *Ecolab, Inc.*, 97 F. Supp. 3d at 54-55. The same result is warranted here. If the Court were to permit relation back in this context, it would mean that a defendant with a national operation is deemed to be on notice of potential class claims in every state in which it operates as soon as an FLSA collective action is filed, and before any representative plaintiffs were identified and joined the action. It would also mean that every time a plaintiff simply files an FLSA collective action complaint they effectively stop the statute of limitations clock on *all* state law wage-and-hour claims in *all* 50 states. Defendants have not found a single case that has so held on either point, and the court in *Ecolab* expressly rejected both of those results. *Ecolab*, 97 F. Supp. 3d at 54, 56.

That is not surprising. In misclassification cases like this, which are often pending for several years, plaintiffs could add decade-old claims from other states, and force employers to defend against such stale claims, merely because there was an FLSA allegation in the original pleading. That is not fair notice or a fair result. *Id.* at 54 ("under the Named Plaintiffs' relation back theory, tolling differences between class actions and FLSA collective actions would effectively permit putative members of the FLSA collective to resurrect their claims as state law overtime class members, despite the expiration of the statute of limitations on their federal claims ... [t]his result would be inherently unfair to a defendant ....").

Fourth, the amount of notice needed in a putative class case is far more extensive than in an individual case. As the Court held in *Ecolab*, based on the rationale in *American Pipe,* in a

putative wage and hour class action "fair notice should alert a defendant to "not only the substantive claims being brought against [defendant], *but also of the number and generic identities of the potential plaintiffs who may participate in the judgment*.'" *Ecolab*, 97 F. Supp. 3d at 53 (emphasis added) (noting that, consistent with Supreme Court guidance, relation back under Rule 15(c)(1)(B) emphasizes "a class action defendant's need for notice of the newly alleged claims, the scope of its liability, and the identity and size of the class members") *citing American Pipe,* 414 U.S. at 554–55; *see also Cliff,* 363 F.3d at 1132–33 (affirming district court's finding that plaintiff asserting class claims on behalf of Florida residents did not provide adequate notice to defendant of proposed claims on behalf of national class for purposes of relation back); *Senterfitt v. SunTrust Mortg. Inc.,* 385 F. Supp. 2d 1377, 1380 (S.D. Ga. 2005) (finding that second amended complaint could not relate back because prior pleadings did not adequately put defendant on notice of a significantly larger class whose claims stretched twenty years into the past); *Anderson v. City of Wood Dale, IL,* No. 93-425, 1995 WL 106318, at *3 (N.D. Ill. March 9, 1995) (noting that, "[w]hile ... an increase in potential liability is not sufficient prejudice to deny the relation back of new plaintiffs, a defendant is entitled to notice of the existence and involvement of new plaintiffs").

In short, the original Complaint did **not** afford MetLife fair notice of the Illinois state law individual and class claims that were added on March 6, 2020, claims which the original plaintiffs did not allege, and lacked standing to bring, when the original Complaint was filed.

### iii.   MetLife Will Be Significantly Prejudiced by Any Relation Back of the New Illinois State Law Class claims

Permitting a six-year statute of limitations for claims that, by statute, can only be brought for three years is also unduly prejudicial to MetLife.

The TAC significantly increased the number and identities of the potential class plaintiffs, added a claim implicating a different legal standard than those previously asserted and

involving an entire state law class that was not contemplated by the original Complaint or any previous amendments.  Such a significant expansion of the class claims was never contemplated prior to March 2020.  Moreover, allowing six-year old claims dating back to 2014 would involve, in many instances, putative class members and managers who long-ago left the company and memories that have understandably faded with the passage of time.,

On this point, the *Ecolab* case is particularly instructive.  The plaintiffs in *Ecolab* originally filed an FLSA collective action and asserted class claims under *only* New York and New Jersey law.  They later sought to amend the complaint to add plaintiffs from Illinois, North Carolina, Pennsylvania and Washington, and to assert class claims arising under the laws of each of those states that would relate back to the original complaint.  The Court held that permitting such an amendment would prejudice *Ecolab* as, inter alia, it would require the company to defend stale claims of which it had not previously been put on notice.  *Ecolab, Inc.*, 97 F. Supp. 3d at 56.

As in *Ecolab*, MetLife would be severely prejudiced if Plaintiffs' new claims were to relate back to the filing of the original Complaint.  Accordingly, relation-back should not be permitted.

### iv. *The Illinois Claims Do Not Qualify for Relation Back Because The Omission of The New IMWL Claims And New Illinois Class and Plaintiffs Was Not A Mistake.*

Although courts have come to differing conclusions as to whether the "mistake" requirement in Fed. R. Civ. P. 15(c)(1)(C) applies where the amended pleading adds a plaintiff, the Second Circuit and this Court have held on numerous occasions that the party seeking relation back must show that a mistake was made in the original pleading.  *See, e.g., Levy v, U.S. Gen. Accounting Office*, 175 F.3d 254, 255 (2d Cir. 1999) (affirming dismissal of an amended complaint as time-barred where the proposed additional plaintiffs were not added because of a

mistake, as required by Rule 15(c)(1)(C)); *Merryman v. JP Morgan Chase Bank, N.A.*, 319 F.R.D. 468 (S.D.N.Y. 2017) (noting that most district courts in this Circuit have required a mistake in order to relate back claims of a newly added plaintiff, including in class actions); *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 19 (2d Cir. 1997) ("While Rule 15(c) is framed in terms of an amendment that would change the party 'against' whom a claim is asserted and of the new party's ability to maintain a 'defense,' it is also applicable to a proposed change of plaintiffs"; allowing the substitution of plaintiffs as the real parties in interest under Rule 17(a).); *Reliance Ins. Co. v. PolyVision Corp.*, 292 F. App'x 106, 108 (2d Cir. 2008) (applying mistake requirement in context of plaintiff attempting to relate untimely claims to an earlier, separately filed action); *see also Ecolab*, 97 F. Supp. 3d at 83-83 (gathering cases from the Second Circuit and S.D.N.Y.).

Indeed, in the same context as this case -- an attempt to add new class claims in an existing FLSA action -- the court found that the party seeking the amendment was required to show that a mistake was made.  *See Ecolab*, 97 F. Supp. 3d at 40 (holding that the plaintiffs failed to establish that the omission of the Illinois, North Carolina and Pennsylvania plaintiffs and claims from prior pleading was a mistake, and as a result there could be no relation back).

Numerous cases have followed *Ecolab* and echoed the rationale expressed therein.  *See e.g. Merryman,* 319 F.R.D. 468 (noting that most district courts in this Circuit have required a mistake in order to relate back claims of a newly added plaintiff, including in class actions); *Dial Corp.*, 2016 WL 690895 at *2 ("The reason undergirding application of Rule 15(c)(1)(C)'s mistake requirement to bar amendments adding new Plaintiffs has even greater persuasive power in the context of a class action.  Permitting relation back of an entire class of plaintiffs would blindside a defendant who thought it was dealing with a small, enumerated group of plaintiffs."); *Wilder v. News Corp.*, No. 11-4947, 2015 WL 5853763, *16 (S.D.N.Y. Oct. 7, 2015) (noting that

the weight of authority indicates that relation back for new plaintiffs is permitted only when the omission of newly added plaintiffs from the timely filed complaint was a mistake) (collecting cases). *See also* Fed. R. Civ. P. 15 (Advisory Committee Notes to 1966 Amendment) (stating that "the chief consideration of policy is that of the statute of limitations, and the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs.").

In line with Second Circuit precedent and the Advisory Committee's notes on Rule 15, this Court should apply Rule 15(c)(1)(C) here and evaluate whether MetLife was aware *both* that plaintiffs meant to include Ms. Harris (or another Illinois plaintiff), and an entire Illinois class claim, and that Plaintiff's omitted those additions by mistake in all of their prior pleadings. There is nothing to support such a conclusion here.  It is clear from the face of the original Complaint that although Plaintiffs were aware that MetLife was a national company, they made the strategic decision to file their action only on behalf of Ms. Julian and Ms. McKinney. Moreover, after learning last year, when several joined this action, that there were individuals who worked for Defendant in Illinois, Plaintiffs did not claim any mistake or seek to add Illinois class claims.

On this point, it bears noting that Ms. Harris (and other Illinois LTDCS's) submitted their Consents to Join the FLSA collective action back in March of 2019 – a full year before Plaintiffs filed the TAC adding claims under the IMWL.  Plaintiffs cannot possibly contend that they mistakenly omitted the Illinois claims from their original pleadings and mistakenly failed to amend their Complaint in the twelve months after Ms. Harris opted in to the FLSA collective action. *Ecolab*, 97 F. Supp. 3d at 57 ("'the Named Plaintiffs could have taken steps to promptly identify the Proposed Named Plaintiffs,' but waited until April 15, 2014 to notify defendant of

their motion to add new plaintiffs and claims.").  In short, nothing in the prior pleadings suggests that an Illinois plaintiff and/or Illinois claims were contemplated, but mistakenly omitted.

Moreover, in no communication, amended complaint or other pleading or filing have Plaintiffs ever asserted that not including an Illinois class action claim in any of their prior complaints was a "mistake."  *See, e.g.,* every one of Plaintiffs' filings on the Docket.  Plaintiffs could not in good faith make that assertion now.

Accordingly, Plaintiffs cannot satisfy the mistake requirement in Rule 15(c)(1)(C), and their pre-March 7, 2017 claims should be dismissed.

## IV.    **CONCLUSION**

As detailed above, the pre-March 3, 2015 Connecticut law claims and pre-March 7, 2017 Illinois claims set forth in Plaintiff's Third Amended Complaint are time-barred.  Accordingly, MetLife respectfully requests that this Court enter an Order dismissing and/or striking those claims.

Dated:  May 1, 2020                         MORGAN, LEWIS & BOCKIUS LLP

                                            By: /s/ *Christopher A. Parlo*
                                                    Christopher A. Parlo
                                                    Melissa C. Rodriguez
                                                    101 Park Avenue
                                                    New York, New York 10178

                                                    *Attorneys for Defendant*