## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

**DEBRA JULIAN, STEPHANIE**
**MCKINNEY, & KIMBERLY HARRIS,**
**on behalf of themselves and others similarly**
**situated,**

               **Plaintiffs,**

**v.**

**METROPOLITAN LIFE INSURANCE**
**COMPANY,**

               **Defendant.**

------------------------------------- x

:
:
:
:
:
:
:
:
:
:
:
:

**Case No. 1:17-cv-00957-AJN-BCM**

## <u>PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE TIME-BARRED CLAIMS SET FORTH IN PLAINTIFFS' THIRD AMENDED COMPLAINT</u>

## TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

COUNTERSTATEMENT OF PROCEDURAL HISTORY ........................................................3

I. DEFENDANT'S MOTION SHOULD BE DENIED AS PROCEDURALLY IMPROPER .....7

II. THE IMWL CLAIMS RELATE BACK TO THE ORIGINAL COMPLAINT......................8

    A.    Courts Have Adopted a Liberal Standard for Rule 15(c) Relation Back.......................8

    B.    Relation Back Is Particularly Appropriate in Class and Collective Actions Such as this One .................................................................................................................9

    C.    The Court Should Follow Judge Torres' On-Point Decision in *Zorrilla*....................13

        1.   Same "Conduct, Transaction, or Occurrence".......................................................14

        2.   Identity of Interest.................................................................................................15

        3.   No Undue Prejudice ...............................................................................................15

    D.    *Charlot v. Ecolab* Is Distinguishable and Should Not Be Followed ...........................17

    E.    There is No "Mistake" Requirement When Plaintiffs Are Added or Substituted in Class Cases.................................................................................................................18

III. THE CMWL CLAIM IS TOLLED FROM MS. MCKINNEY'S LABOR COMPLAINT, WHICH PUT METLIFE ON NOTICE OF A CLASS-BASED OVERTIME ACTION .......21

CONCLUSION...................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*Andujar v. Rogowski*,
113 F.R.D. 151 (S.D.N.Y. 1986)................................................................. 10, 12, 20

*Arreola v. Godinez*,
546 F.3d 788 (7th Cir. 2008)................................................................. 12

*Baranco v. Ford Motor Co.*,
No. 17-cv-03580, 2018 WL 5474549 (N.D. Cal. Oct. 26, 2018).............................. 13

*Barwise v. Lexington Healthcare Grp., Inc.*,
No. CV990066432S, 2001 WL 1378792 (Conn. Super. Oct. 24, 2001).................................. 21

*Beach v. Citigroup Alternative Invs. LLC*,
No. 12 Civ. 7717, 2014 WL 904650 (S.D.N.Y. Mar. 7, 2014).................................... 11, 19, 20

*Bensinger v. Denbury Res. Inc.*,
No. 10 Civ. 1917, 2013 WL 3353975 (E.D.N.Y. July 3, 2013)........................................ 11, 20

*Bilodeau v. English*,
No. HHDCV176075270, 2019 WL 5066863 (Conn. Super. Sept. 12, 2019).......................... 21

*Blagman v. Apple, Inc.*,
No. 12 Civ. 5453, 2013 WL 2181709 (S.D.N.Y. May 20, 2013) ............................................. 8

*Bowling v. Johnson & Johnson*,
No. 17-cv-3982, 2018 WL 1587598 (S.D.N.Y. Mar. 28, 2018) (Nathan, J.) ............................ 8

*Brown v. Coach Stores, Inc.*,
163 F.3d 706 (2d Cir. 1998)................................................................. 23

*Burnett v. N.Y. Cent. R. Co.*,
380 U.S. 424 (1965) ................................................................. 22

*Butler v. Hartford Technical Inst.*,
708 A.2d 222 (Conn. 1997)................................................................. 24

*Butler v. McIntosh*,
No. CV 950555751S, 1997 WL 112010 (Conn. Super. Ct. Feb. 21, 1997).............................. 25

*Chaplake Holdings, Ltd. v. Chrysler Corp.*,
766 A.2d 1 (Del. 2001)................................................................. 21

*Charlot v. Ecolab, Inc.*,
97 F. Supp. 3d 40 (E.D.N.Y. 2015)................................................................. 17

*Coleman v. United Healthcare Servs. Inc.*,
No. 2:12–cv–02156, 2013 WL 842596 (W.D. Tenn. Mar. 6, 2013)........................................ 13

*Comm'r of Labor v. C.J.M. Servs., Inc.*,
806 A.2d 1105 (Conn. App. Ct. 2002), *aff'd in relevant part*, 842 A.2d 1124 (Conn. App. Ct. 2004)................................................................. 21, 24

*Connecticut State Fed'n of Teachers v. Bd. of Ed. Members*,
538 F.2d 471 (2d Cir. 1976) ...................................................................................... 25

*Cronas v. Willis Group Holdings Ltd.*,
No. 06 Civ. 15295, 2007 WL 2739769 (S.D.N.Y. Sept. 17, 2007) ......................... 23

*Crossland Sav. FSB v. Rockwood Ins. Co.*,
700 F. Supp. 1274 (S.D.N.Y. 1988) ............................................................................ 9

*Danecker v. Bd. of Trs. of Serv. Employees 32BJ N. Pension Fund*,
882 F. Supp. 2d 606 (S.D.N.Y. 2012) ...................................................................... 22

*Dave v. District of Columbia*,
811 F. Supp. 2d 111 (D.D.C. 2011) .......................................................................... 13

*DeLodder v. Aerotek, Inc.*,
No. CV 08–6044, 2009 WL 1684409 (C.D. Cal. June 15, 2009) ...................... 11, 13

*Dixit v. City of N.Y. Dept. of Soc. Servs.*,
972 F. Supp. 730 (S.D.N.Y. 1997) ............................................................................ 23

*Echlin v. Peace Health*,
887 F.3d 967 (9th Cir. 2018) ..................................................................................... 16

*Employees Committed For Justice v. Eastman Kodak Co.*,
407 F. Supp. 2d 423 (W.D.N.Y. 2005) ..................................................................... 12

*Ewer v. United States*,
63 Fed. Cl. 396 (2005) ............................................................................................... 11

*Flood v. Carlson Rests. Inc.*,
No. 14-civ-2740, 2016 WL 3221146 (S.D.N.Y. June 7, 2016) ................................ 10

*Freight Drivers & Helpers Local Union No. 557 v. Penske Logistics, LLC*,
784 F.3d 210 (4th Cir. 2015) ..................................................................................... 21

*Gomes v. Avco Corp.*,
964 F.2d 1330 (2d Cir. 1992) .................................................................................... 23

*Haley v. Teachers Ins. & Annuity Assoc. of Am.*,
377 F. Supp. 3d 250 (S.D.N.Y. 2019) ........................................................................ 8

*Hall v. Spencer Cty., Ky.*,
583 F.3d 930 (6th Cir. 2009) ..................................................................................... 13

*Harris v. Johns*,
No. 3:06-cv-433, 2007 WL 2310784 (M.D. Fla. Aug. 8, 2007) .............. 7, 15, 21, 26

*Henkel v. Highgate Hotels, L.P.*,
No. 3:15-cv-1435, 2018 WL 5886542 (M.D. Pa. Nov. 9, 2018) ............................. 20

*Hnot v. Willis Group Holding Ltd.*,
No. 01 Civ. 6558, 2004 WL 1794493 (S.D.N.Y. 2004) .......................................... 12

*Holland v. United States*,
62 Fed. Cl. 395 (2004) ............................................................................................... 21

*In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*,
638 F. Supp. 2d 1290 (D. Colo. 2009) ............................................................. 13

*In re Cmty. Bank of N. Va.*,
622 F.3d 275 (3d Cir. 2010) ............................................................................ 20

*In re Gilat Satellite Networks, Ltd.*,
No. 02 Civ. 1510, 2005 WL 2277476 (E.D.N.Y. Sept. 19, 2005) ................... 20

*In re Light Cigarettes Mktg. Sales Practices Litig.*,
751 F. Supp. 2d 205 (D. Me. 2010)................................................................... 10

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
05-MD-1720, 2018 WL 4158290 (E.D.N.Y. Aug. 30, 2018) ........................... 14

*In re S. African Apartheid Litig.*,
617 F. Supp. 2d 228 (S.D.N.Y. 2009) .......................................................... 19, 20

*In re Simon II Litig.*,
211 F.R.D. 86 (E.D.N.Y. 2002), *vacated on other grounds*, 407 F.3d 125 (2d Cir. 2005) ...... 20

*Junior Gallery, Ltd. v. Neptune Orient Line, Ltd.*,
No. 94 Civ. 4517, 1997 WL 26293 (S.D.N.Y. Jan. 22, 1997) ......................... 20

*Kennedy v. Commonwealth Edison Co.*,
410 F.3d 365 (7th Cir. 2005) ........................................................................... 16

*Kinkead v. Humana at Home, Inc.*,
330 F.R.D. 338 (D. Conn. 2019) ........................................................ 10, 13, 14

*Krupski v. Costa Crociere S.p.A.*,
560 U.S. 538 (2010) ..................................................................................... 9, 18

*Lawler v. Univ. of Chicago Med. Ctr.*,
104 N.E.3d 1090 (Ill. 2017) ............................................................................... 9

*Lewis v. Giordano's Enters., Inc.*,
921 N.E.2d 740 (Ill. App. Ct. 2009)................................................................. 16

*Mayle v. Felix*,
545 U.S. 644 (2005) ........................................................................................... 9

*Michael v. Bloomberg L.P.*,
No. 14–CV–2657, 2016 WL 1659319 (S.D.N.Y. Mar. 18, 2016) ..................... 8

*Michalski v. Home Depot, Inc.*,
225 F.3d 113 (2d Cir. 2000) ............................................................................ 25

*Minetos v. City Univ. of N.Y.*,
875 F. Supp. 1046 (S.D.N.Y. 1995) ................................................................ 23

*Nettles v. Allstate Ins. Co.*,
980 N.E.2d 103 (Ill. App. Ct. 2012)................................................................. 16

*Niemiec v. Ann Bendik Realty*,
No. 1:04-cv-00897, 2007 WL 5157027 (E.D.N.Y. Apr. 23, 2007) .................. 11

*Olech v. Vill. of Willowbrook*,
  138 F. Supp.2d 1036 (N.D. Ill. 2000) ........................................................................... 20

*Otsuka v. Polo Ralph Lauren Co.*,
  No. C 07-02780, 2008 WL 111233 (N.D. Cal. Jan. 9, 2008) ................................. 11

*Otto v. Milwaukee Cty.*,
  No. 07-C-427, 2007 WL 3228118 (E.D. Wis. Oct. 30, 2007) ................................. 21

*Pastorello v. City of New York*,
  No. 95 Civ. 470, 2001 WL 1543808 (S.D.N.Y. Dec. 4, 2001) ................................ 12

*Perkins v. New Eng. Tel. Co.*,
  No. 3:07-cv-967, 2009 WL 3754097 (D. Conn. Nov. 4, 2009) ............................ 11, 14, 15, 20

*Phillips v. Ford Motor Co.*,
  435 F.3d 785 (7th Cir. 2006) ....................................................................................... 10

*Phillips v. WellPoint, Inc.*,
  900 F. Supp. 2d 870 (S.D. Ill. 2012) ........................................................................... 16

*Plubell v. Merck & Co., Inc.*,
  434 F.3d 1070 (8th Cir. 2006) ..................................................................................... 10

*Porter v. Decatur Memorial Hosp.*,
  882 N.E.2d 583 (Ill. 2008) ..................................................................................... 14, 16

*Porter v. MooreGroup Corp.*,
  17-cv-07405, 2020 WL 32434 (E.D.N.Y. Jan. 2, 2020) .......................................... 8

*Ramirez v. Ghilotti Bros.*,
  941 F. Supp. 2d 1197 (N.D. Cal. 2013) ..................................................................... 13

*Red Rock Commodities Ltd. v. M/V Kopalina Szombierki*,
  No. 92 Civ. 6016, 1994 WL 440822 (S.D.N.Y. Aug. 15, 1994)............................. 20

*Robinson v. Locke*,
  No. 11 Civ. 2480, 2012 WL 1029112 (S.D.N.Y. Feb. 1, 2012), *adopted*, 2012 WL 1028814
  (S.D.N.Y. Mar. 28, 2012)............................................................................................ 23

*Romprey v. Safeco Ins. Co. of Am.*,
  77 A.3d 726 (2013) ...................................................................................................... 22

*Rural Fire Prot. Co. v. Hepp*,
  366 F.2d 355 (9th Cir. 1966)....................................................................................... 13

*Santamarina v. Sears, Roebuck & Co.*,
  466 F.3d 570 (7th Cir. 2006)........................................................................... 9, 10, 13

*Schorsch v. Hewlett-Packard Co.*,
  417 F.3d 748 (7th Cir. 2005)......................................................................................... 9

*Scott v. Chipotle Mexican Grill, Inc.*,
  300 F.R.D. 193 (S.D.N.Y. 2014)........................................................................... 10, 16

*Shahriar v. Smith & Wollensky Rest. Group*,
  659 F.3d 234 (2d Cir. 2011) ................................................................................... 8, 16

*Slayton v. Am. Exp. Co.*,
  460 F.3d 215 (2d Cir. 2006) ............................................................................ 9

*Snell v. Suffolk Cty.*,
  782 F.2d 1094 (2d Cir. 1986) ......................................................................... 23

*Sokolski v. Trans Union Corp.*,
  173 F.R.D. 393 (E.D.N.Y. 1998) .................................................................... 12

*Stern v. Cosby*,
  645 F. Supp. 2d 258 (S.D.N.Y. 2009) ............................................................ 25

*Tolliver v. Xerox Corp.*,
  918 F.2d 1052 (2d Cir. 1990) ......................................................................... 23

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
  501 F.3d 493 (6th Cir. 2007) .......................................................................... 12

*Walstad v. Klink*,
  105 N.E.3d 1016 (Ill. App. Ct. 2018) ......................................................... 9, 16

*Weber v. Cueto*,
  624 N.E.2d 442 (Ill. App. Ct. 1993) .............................................................. 14

*Weber v. Motor Oil Corp.*,
  506 F.3d 1311 (10th Cir. 2007) ...................................................................... 10

*Wojcik v. Brandiss*,
  973 F. Supp. 2d 195 (E.D.N.Y. 2013) ............................................................ 23

*Wright v. Am. Bankers Life Assurance Co. of Fla.*,
  586 F. Supp. 2d 464 (D.S.C. 2008) ........................................................... 10, 21

*Yanes v. The Minute Maid Co.*,
  No. Civ. A. 02-2712, 2006 WL 1207992 (D.N.J. May 3, 2006) ............................ 21

*Zorrilla v. Carlson Rests. Inc.*,
  255 F. Supp. 3d 465 (S.D.N.Y. 2017) ...................................................... passim

**Statutes**

Conn. Gen. Stat. § 31 ............................................................................... 22, 23

**Other Authorities**

6A Wright & Miller, Fed. Prac. & Proc. 2d § 1501 (3d ed. updated Apr. 2020) ......... 9, 18, 20, 21

**Rules**

Fed. R. Civ. P. 1 .......................................................................................... 2

Fed. R. Civ. P. 23 ......................................................................................... 8

**Regulations**

Conn. Regs. § 31-60-15 ................................................................................ 22

## INTRODUCTION

Legions of cases establish that motions to dismiss, strike, or modify class allegations at the pleadings stage are—with rare exceptions—fatally premature. Class certification issues, including the definition and parameters of the class under Rule 23(c)(1)(B), should be determined in connection with certification. Here, MetLife's Motion to Dismiss Plaintiffs' Third Amended Complaint ("TAC") ("Defendant's Motion") does not contend that any claims are wholly time-barred and subject to dismissal. Rather, MetLife asserts that the class period on two claims is defined too broadly and should be truncated. The motion should be denied on this ground alone.[1]

Even if the Court were to address MetLife's motion on the merits, the motion should be denied. The challenged class claims—under Illinois and Connecticut law—are timely based on *American Pipe* tolling and the relation back doctrine. The liberal relation back inquiry under Rule 15(c) centers on notice and prejudice. Plaintiffs' claims easily satisfy these touchstones. Where the class claims remain essentially unchanged, courts routinely find relation back of amendments (i) adding or substituting named plaintiffs, and (ii) adding corresponding causes of action under equivalent statutes, including state law counterparts. The amendment here does nothing more.

MetLife has long been on notice of the overtime claims of Long-Term Disability Claim Specialists and Senior Long-Term Disability Claim Specialists (collectively, "LTDCSs" or "LTD Claims Specialists") who worked in Illinois, and MetLife's arguments that it faces significant prejudice are conclusory and disregard the long-standing scope of this lawsuit. Since the filing of the initial complaint by Plaintiff Stephanie McKinney on February 7, 2017, MetLife has known that Plaintiffs allege class-based claims arising from the systematic misclassification of LTDCSs.

---

[1] Indeed, in April 2020, MetLife communicated to Plaintiffs that it intended to raise these issues at certification because it would be premature to do so on the pleadings. *See infra* at 8.

MetLife was thus apprised from the outset that it faces liability with respect to each employee regardless of jobsite. Furthermore, the basic facts and circumstances—and legal theory—behind the Illinois Minimum Wage Law (IMWL) claims are identical to those behind the federal Fair Labor Standards Act (FLSA) claims. And, MetLife's obligation to defend against the claims of Illinois employees was cemented early on when Opt-in Plaintiff Tonya Gill, who reported to MetLife's Illinois office, joined the action.

From the beginning, MetLife had everything it needed to investigate and defend the claims of Illinois LTDCSs, including by examining its policies and practices, reviewing documents, and interviewing employees and managers in Illinois. Notably, Defendant deposed Ms. Gill in 2017, and then submitted evidence (including a "happy camper" declaration) from Illinois class members in opposition to Plaintiff's motion for conditional certification. *See* Dkt. No. 49-21. MetLife cannot credibly purport to be blindsided by having to face misclassification claims from Illinois LTDCSs. Restarting the clock on the IMWL claims from the date of the TAC would only reward MetLife by absolving it from liability and deprive many employees a remedy for MetLife's uniform, systematic conduct. This would contravene the purposes of Rule 15 and of Rule 23 class actions.[2]

Similarly, as to the Connecticut claims, Ms. McKinney's 2016 labor complaint and the resulting investigation put MetLife on notice that it faced class-based claims for misclassifying all LTDCSs in Connecticut. Tolling is appropriate because there is no prejudice and because Plaintiff and the class should not be penalized for pursuing an administrative remedy. Running the clock during the administrative process would discourage aggrieved employees from filing claims with the agency and would require them to go to court as a first recourse.

---

[2] *See also* Fed. R. Civ. P. 1 (Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

## COUNTERSTATEMENT OF PROCEDURAL HISTORY

On February 19, 2016, Plaintiff Stephanie McKinney filed a wage complaint with the Connecticut Department of Labor ("CT DOL").  *See* Dkt. No. 6 (Amended Complaint) ¶ 36; Declaration of Michael D. Palmer ("Palmer Decl."), Ex. A (*Stephanie McKinney v. MetLife, Inc., et al.*, No. 3:17-cv-173 (D. Conn.), Dkt. No. 1 (Complaint)) ¶ 33.  Correspondence surrounding the claim and investigation plainly put MetLife on notice that Ms. McKinney was not raising individual circumstances but a class-based claim affecting all LTD Claim Specialists, who were reclassified *en masse* as exempt from overtime in November 2013.[3] ████████████

████████████████████████████████████

████████████████████████████████ Palmer Decl. Ex. F at 1 (McKinney_MLIC 003684) (emphasis added). After completing its investigation, the CT DOL also informed Plaintiff McKinney that MetLife had misclassified her job position as exempt because, *inter alia*, she had no direct reports, no advanced education, and could not make independent decisions. In lieu of further pursuing an administrative remedy with the DOL, Ms. McKinney exercised her right to file a case in court. *See* Dkt. No. 6 (Amended Complaint) ¶ 36;

Ms. McKinney filed the initial class overtime complaint against MetLife on February 7, 2017.  Palmer Decl., Ex. A. She alleged that MetLife uniformly misclassified all LTDCSs as exempt from overtime in or about November 2013, and, thereafter, denied them overtime

---

[3] *See* Palmer Decl., Ex. B (JULIAN_000004785) (email from McKinney to DOL investigator stating that the claim "is a big deal not just for me but for all other MetLife employees that are being paid salary and don't meet the requirements of a salary worker"); Ex. C at 6 (McKinney_MLIC 000309) (email from investigator to MetLife representative requesting a list of all employees who worked in the same capacity as McKinney); Ex. D at 1 (JULIAN_000004731) (email from DOL investigator to McKinney confirming that DOL was interviewing other employees who worked in the same capacity); Ex. E at 1 (McKinney_MLIC 000283) (email from DOL investigator to MetLife representative indicating that the investigation could impact "the job positon [sic] and its classification, moving forward"; MetLife responded that the *position* "is properly classified as exempt").

compensation to which they were entitled. Ms. McKinney also alleged that all LTDCSs routinely worked more than 40 hours per week without overtime pay, and described LTDCS's duties and why those duties do not fall within any applicable exemption, particularly the administrative exemption.  In addition to pursuing a Rule 23 class action under the Connecticut Minimum Wage Act (CMWA) for all LTDCSs in Connecticut, Ms. McKinney brought a FLSA collective action under 29 U.S.C. § 216(b) for all LTDCSs regardless of office. *Id.*

The next day, on February 8, 2017, Plaintiff Debra Julian filed a related overtime class action in this Court under the New York Labor Law (NYLL). Dkt. No. 1. The *Julian* complaint levied substantially similar allegations to *McKinney*, confirming that MetLife's relevant policies and practices were uniform between locations—including Connecticut and New York.

On March 1, 2017, Plaintiffs McKinney and Julian consolidated their complaints in this action, filing an Amended Complaint. Dkt. Nos. 4-6. Consequently, in the interests of efficiency and judicial economy, Ms. McKinney voluntarily dismissed the District of Connecticut action.  As with Ms. McKinney's prior complaint, the consolidated action defined the FLSA collective as:

> All individuals who worked for MetLife in the United States as LTD Claim Specialists…at any time and were classified as exempt from overtime **between three years before the filing of the original Complaint and the date of final judgment.**

Dkt. No. 6 ¶ 50. Hence, MetLife was apprised that it faced potential liability from all LTDCSs for classifying them as exempt and failing to pay them overtime—since at least February 2014.[4] MetLife was also placed on reasonable notice that Plaintiffs intended to pursue corresponding state law class actions wherever feasible. McKinney, the Connecticut Plaintiff, brought a class action under the CMWL; Julian, the New York Plaintiff, brought a class action under the NYLL.

---

[4] Due to the NYLL's six-year statute of limitations, the state overtime claims for New York LTDCSs extended further back than February 2014, to the date of the reclassification in November 2013.

4

In addition to Plaintiffs McKinney and Julian, LTDCS Tonya Gill opted into the FLSA collective action on March 3, 2017. Dkt. No. 7. Although Ms. Gill was not a suitable Illinois class representative (as she primarily worked remotely from her home in Michigan), she reported to MetLife's Illinois office and testified extensively about the Company's practices regarding LTDCSs who worked in Illinois. Ms. Gill submitted a Declaration on August 1, 2017, in which she stated that she regularly telecommuted to MetLife's Mt. Prospect, Illinois office, received training in that office, and physically worked there on occasion. Dkt. No. 37 ¶ 4. From her experiences and observations, she testified—based on personal knowledge—regarding MetLife's practices and the job duties of LTD Claim Specialists, particularly those in Illinois. She specifically mentions seven other LTDCSs by name, several of whom worked in Illinois. *Id*. ¶ 31. They are provided as concrete examples of individuals affected by MetLife's challenged practices. *Id*.

Indeed, MetLife deposed Ms. Gill on August 21, 2017. Her deposition lasted an entire day and the transcript is 353 pages long. Palmer Decl. ¶ 10. Ms. Gill testified that even though she mostly worked remotely, she reported to MetLife's office in Mount Prospect and even physically worked in that office on several occasions. *Id.*, Ex. G, Tr. at 51:18. While there, she personally observed other LTDCSs working more than 40 hours per week. *Id*. at 249. Ms. Gill also testified that the LTDCS job was the same between locations, whether Mount Prospect, IL or other sites; in fact, the offices would seamlessly move work and accounts between themselves. *Id*. at 272-73.

MetLife was plainly on notice that the claims of LTDCSs in Illinois were at issue. It ran Ms. Gill through the gauntlet of discovery and had ample opportunity to follow up with others. All indications are that it actually did so.

On August 1, 2017, Plaintiffs filed a motion for conditional certification of an FLSA collective action. Dkt. Nos. 34-39. Plaintiffs sought certification of a collective action comprised

of all LTDCSs since February 8, 2014 (three years from the filing of the *Julian* complaint). Ms. Gill's Declaration was one of three employee declarations supporting the motion.

Defendant opposed the motion on September 8, 2017. MetLife did not contend that the LTDCS position varied by job site or that certain locations should be excluded from the scope of the collective action. Rather, it argued that the job was a high-level one involving substantial discretion and that no common policy or practice tied workers' claims together. Dkt. No. 48. Among other evidence, MetLife relied on excerpts from Ms. Gill's deposition (Dkt. No. 49-4) and the "happy camper" declaration of another LTDCS in the Illinois office, Kim Hawes (Dkt. No. 49-21). To gather such evidence—especially Ms. Hawes's declaration—MetLife would have had to reach out to and interview considerably greater numbers of employees, including LTDCSs and managers in Illinois.[5] There can be no question that MetLife was fully aware that the claims of LTDCSs in Illinois were at issue and that they actively prepared to defend those claims. In fact, between December 2017 and April 2018, MetLife had at least 50 LTDCSs, including ten LTDCSs in Illinois, complete lengthy surveys about their jobs. *See* Palmer Decl. ¶ 12.

On March 22, 2018, the Court granted Plaintiffs' motion for conditional certification, observing that Ms. Gill worked out of MetLife's Chicago area office, and concluding that all LTDCSs, regardless of location, were subject to a common classification policy and shared sufficiently similar job duties. Certification extended to all MetLife locations. Dkt. No. 65.

Following various disputes, § 216(b) notice was sent to 470 employees on February 21,

---

[5] Defendant's Supplemental Rule 26(a)(1) Disclosures, dated September 7, 2017, identify Ms. Hawes as a witness with relevant knowledge that MetLife might use to support its defenses. It indicated that she, along with other similar "happy camper" declarants, possessed "information concerning the job duties they performed as [LTDCS] or Senior Claim Specialist at the locations where each worked"—in her case, Illinois. Ex. H at A(10)(d).

2019.[6] Based on MetLife's records, the majority of the LTDCSs resided in two states: New York (approximately 169 LTDCSs) and Illinois (approximately 113 LTDCSs). *See* Palmer Decl. ¶ 13. In total, employees filed more than 80 consent to join forms in response to the notice, including 18 opt-in plaintiffs with home addresses in Illinois. *Id.* ¶ 14. Illinois Plaintiff Kimberly Harris signed her opt-in form on February 26, 2019, and it was filed with the Court on May 7, 2019. Dkt. No. 87 at 20.[7]

Beginning around June 2019, Defendant began serving discovery demands on opt-in plaintiffs, including several Illinois plaintiffs. Palmer Decl. ¶ 15.  Defendant noticed numerous opt-in depositions in June 2019 and January 2020. *Id.* ¶ 16. As of the date of this filing, Defendant has completed the depositions of Illinois Named Plaintiff Kimberly Harris and at least two other opt-ins who worked in Illinois (Jacklin Roberts and Tamitra Harris). *Id.* ¶ 17.

On March 3, 2020, Plaintiffs filed a motion for leave to file a proposed Third Amended Complaint adding Ms. Harris as a Named Plaintiff and interposing IMWL claims. Dkt. Nos. 114-115. Defendant stipulated to the amendment, and the Court approved. Dkt. Nos. 117-118.

In April 2020, MetLife represented to Class Counsel that it would not seek to dismiss the claims in the TAC as partially time-barred because doing so would be procedurally premature. Palmer Decl. ¶ 18. MetLife nevertheless filed the present motion on Friday, May 1, 2020.

## ARGUMENT

## I. DEFENDANT'S MOTION SHOULD BE DENIED AS PROCEDURALLY IMPROPER

MetLife seeks to set the class periods on the CMWL and IMWL claims far in advance of

---

[6]  Notice was delayed because Defendant refused to provide class contact information to Plaintiffs without significant restrictions. *See* Dkt. Nos. 67, 73, 75, 81. The Court ultimately rejected Defendant's position and ordered Defendant to produce the class contact information. Dkt. No. 81.

[7] Plaintiff Harris's Consent to Join is deemed filed as of March 6, 2019, the date it was received by the Claims Administrator. Dkt. Nos. 83 & 87 at 20.

when it would be appropriate to do so—that is, when the Court defines a certified class under Rule 23 or later, at summary judgment. As the Second Circuit has made clear, even where parties pursue an FLSA collective action, a Rule 23 adjunct based on equivalent state wage-and-hour law is still necessary because many employees may decline to opt in for fear of retaliation. *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234, 244 (2d Cir. 2011). Class certification issues, including the definition and parameters of the class, should be determined in connection with certification. In particular, courts have counseled, the "shape and form" of a class action evolve through the discovery process.[8] Unless a claim fails entirely as a matter of law, the appropriate class period is a matter to be determined at the certification phase—where a court is charged with defining the class and the relevant class claims, issues, and defenses. Fed. R. Civ. P. 23(c)(1)(B); *see Michael v. Bloomberg L.P.*, No. 14–CV–2657, 2016 WL 1659319, at *4 (S.D.N.Y. Mar. 18, 2016) (a motion to dismiss class claims on limitations grounds is proper only when the claims will be dismissed in their entirety and the complaint itself "*clearly* shows the claim is out of time"); *id.* at *5 ("Courts are reluctant to fix the duration of a class time period prematurely. Even on a motion to certify a class . . . courts err, appropriately, on the side of a more inclusive class time period.")).[9] Hence, since the claims here concededly survive and MetLife seeks only to define the temporal scope of the class, the motion should be denied as premature.

## II. THE IMWL CLAIMS RELATE BACK TO THE ORIGINAL COMPLAINT

### A. *Courts Have Adopted a Liberal Standard for Rule 15(c) Relation Back*

Courts in this Circuit have analyzed the relation back of amendments liberally.  As set

---

[8] *Blagman v. Apple, Inc*., No. 12 Civ. 5453, 2013 WL 2181709, at *7 (S.D.N.Y. May 20, 2013); *see also, e.g., Haley v. Teachers Ins. & Annuity Assoc. of Am*., 377 F. Supp. 3d 250, 272 (S.D.N.Y. 2019); *Bowling v. Johnson & Johnson*, No. 17-cv-3982, 2018 WL 1587598, at *5 (S.D.N.Y. Mar. 28, 2018) (Nathan, J.).

[9] *See also, e.g.*, *Porter v. MooreGroup Corp*., 17-cv-07405, 2020 WL 32434, at *10 (E.D.N.Y. Jan. 2, 2020) (claims that are partially time-barred are not futile for purposes of Rule 15).

forth in *Slayton v. Am. Exp. Co.*, 460 F.3d 215 (2d Cir. 2006):

> Rule 15(c)[(1)(B)] provides that [a]n amendment of a pleading relates back to the date of the original pleading when . . . the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading. The purpose of Rule 15 is to provide maximum opportunity for each claim to be decided on its merits rather than on procedural technicalities . . . Under Rule 15[c], the central inquiry is whether adequate notice of the matters raised in the amended pleading has been given to the opposing party within the statute of limitations by the general fact situation alleged in the original pleading.

*Id.* at 228 (citations omitted). Relation back applies when "a common core of operative facts [unite] the original and newly asserted claims." *Mayle v. Felix*, 545 U.S. 644, 646 (2005).[10]

Rule 15(c) "mandates relation back once the Rule's requirements are satisfied; it does not leave the decision . . . to the district court's equitable discretion." *Krupski v. Costa Crociere S.p.A.,* 560 U.S. 538, 553 (2010); *Slayton*, 460 F.3d at 227 ("If facts provable under the amended complaint arose out of the conduct alleged in the original complaint, relation back is mandatory.").

B.  *Relation Back Is Particularly Appropriate in Class and Collective Actions Such as this One*

Relation back under Rule 15(c) is especially appropriate where amendments add plaintiffs to existing litigation. *See generally* 6A Wright & Miller, Fed. Prac. & Proc. 2d § 1501 (3d ed. updated Apr. 2020) ("As long as defendant is fully apprised of a claim arising from specified conduct and has prepared to defend the action, his ability to protect himself will not be prejudicially affected if a new plaintiff is added, and he should not be permitted to invoke a limitations

---

[10] *See also, e.g.*, *Crossland Sav. FSB v. Rockwood Ins. Co.*, 700 F. Supp. 1274, 1279 (S.D.N.Y. 1988) ("The standard for determining when allegations derive from the same transaction or occurrence is very liberal. When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment if need be."); *Santamarina v. Sears, Roebuck & Co.*, 466 F.3d 570, 573 (7th Cir. 2006) ("The criterion of relation back is whether the original complaint gave the defendant enough notice of the nature and scope of the plaintiff's claim that he shouldn't have been surprised by the amplification of the allegations of the original complaint in the amended one"; thus, "there would be relation back if the two complaints referred to the same general set of facts though the amended one alleged a different cause of action and legal theory"); *Schorsch v. Hewlett-Packard Co.*, 417 F.3d 748, 751 (7th Cir. 2005); *Lawler v. Univ. of Chicago Med. Ctr.*, 104 N.E.3d 1090, 1096 (Ill. 2017) ("liberal" application of Illinois equivalent of Rule 15(c)); *Walstad v. Klink*, 105 N.E.3d 1016, 1021 (Ill. App. Ct. 2018) (same).

defense."); *Andujar v. Rogowski*, 113 F.R.D. 151, 158 (S.D.N.Y. 1986) ("[A]llowing an amendment to relate back is proper (1) to substitute the real party in interest, (2) when the status of the original plaintiff and a liberal reading of the complaint apprise defendant of the existence of the additional plaintiff's existence and claims, or (3) if the defendant has had actual notice that additional parties might assert claims arising out of the transaction or occurrence at issue.").[11]

These observations are only heightened in the class and collective action context because a defendant is apprised from the outset that it faces claims from similarly-situated employees arising from the same basic course or pattern of conduct. Thus, the defendant is made aware that members of the class exist and have similar claims (*Andujar* avenue 2) and might well assert those claims on their own behalf (*Andujar* avenue 3). In fact, the addition or substitution of named plaintiffs is an entirely "common and normally an unexceptionable ('routine') feature of class action litigation." *Phillips v. Ford Motor Co*., 435 F.3d 785, 787 (7th Cir. 2006) (citing cases).[12] Accordingly, it is standard, black-letter law that when a class member is elevated to named plaintiff status and asserts the same claims as the class, the addition or substitution of the new plaintiff results in no prejudice and relates back to the initial class complaint. *Id.*[13]

---

[11] *See also* <u>*infra*</u> § II(C), three-part test adopted in *Zorrilla*.

[12] *See, e.g.*, *Kinkead v. Humana at Home, Inc*., 330 F.R.D. 338, 351 (D. Conn. 2019) (addition of class plaintiff in FLSA and state law action); *Flood v. Carlson Rests. Inc*., No. 14-civ-2740, 2016 WL 3221146, at \*1-5 (S.D.N.Y. June 7, 2016) (granting motion to amend to add new class representatives and numerous new state class claims); *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 199 (S.D.N.Y. 2014) (addition of named plaintiffs and state law claims in FLSA collective action).

[13] *Accord*: *Weber v. Motor Oil Corp.*, 506 F.3d 1311, 1315-1316 (10th Cir. 2007) (amending class complaint to add or substitute plaintiffs relates back and does not commence new suit); *Santamarina*, 466 F.3d at 573-74 ("the defendant is the same in both complaints, the plaintiffs are the same except for the addition of two named plaintiffs drawn however from the same class… and the same general set of facts is alleged."); *Plubell v. Merck & Co., Inc*., 434 F.3d 1070, 1073 (8th Cir. 2006) (no prejudice from elevation of class member to class representative); *In re Light Cigarettes Mktg. Sales Practices Litig*., 751 F. Supp. 2d 205, 208, 213 (D. Me. 2010); *Wright v. Am. Bankers Life Assurance Co. of Fla*., 586 F. Supp. 2d 464, 474-475 (D.S.C. 2008) . ("[T]he elevation or addition of a new class representative relates back to the original cause of action so long as the new class representative's claims are based upon the same or substantially similar underlying conduct of the defendant and defendant would not be prejudiced").

Cases are legion, including in the employment and wage-and-hour context. For example, in *Perkins v. New Eng. Tel. Co*., No. 3:07-cv-967, 2009 WL 3754097 (D. Conn. Nov. 4, 2009), a similar overtime misclassification action, the court allowed four opt-ins to serve in a representative capacity from the original complaint. Where defendant was on notice that a class and collective had been brought on behalf of "similarly situated" employees in the same job positions, it was plainly on notice that other parties might be added; had certainly prepared to defend the claims of all such employees; and would suffer no prejudice from the amendment. *Id.* at *5-6. *See also, e.g*., *Beach v. Citigroup Alternative Invs. LLC,* No. 12 Civ. 7717, 2014 WL 904650, at *20 (S.D.N.Y. Mar. 7, 2014) (in investor fraud case, added class plaintiff's claims related back because they did not raise new substantive issues or unfairly prejudice defendants; rather, the "the allegations, which were framed with respect to the entire class . . . remained substantially the same."); *Bensinger v. Denbury Res. Inc.,* No. 10 Civ. 1917, 2013 WL 3353975, at *4–5 (E.D.N.Y. July 3, 2013) (allowing relation back of an amendment in securities case where new class plaintiff replaced original plaintiff who lacked standing to bring claim); *Niemiec v. Ann Bendik Realty*, No. 1:04-cv-00897, 2007 WL 5157027, at *14 (E.D.N.Y. Apr. 23, 2007) (permitting relation back of the representative claims of two opt-in FLSA plaintiffs added as new named plaintiffs).[14]

Indeed, this line of precedent applies even where the original complaint does not raise class

---

[14] *See further, e.g., Ewer v. United States*, 63 Fed. Cl. 396, 400 (2005) (claims of added plaintiffs in FLSA case related back where arising from same "conduct, transaction, or occurrence" set forth in original pleading—classification of certain positions as exempt); *DeLodder v. Aerotek, Inc*., No. CV 08–6044, 2009 WL 1684409, at *5 (C.D. Cal. June 15, 2009) (relation back of amendments to wage-and-hour class action, including addition of plaintiff: "Defendant was put on notice by the original complaint that it would have to defend against claims concerning its policies and practices with regard to overtime, timekeeping, and rest breaks. Plaintiff's additional claims relate to these practices and the class of plaintiffs that plaintiff seeks to add were affected by these practices."); *Otsuka v. Polo Ralph Lauren Co.*, No. C 07-02780, 2008 WL 111233, at *4 (N.D. Cal. Jan. 9, 2008) (class action for state labor code violations; claim of new plaintiff related back to original complaint even though new plaintiff worked in different type of store and was compensated, hired, and scheduled differently; despite these variations, claims arose out of same conduct— defendant's statewide labor practices—of which the first complaint provided notice).

claims but provides fair notice that similarly-situated employees are affected by the same practices. *See, e.g., Sokolski v. Trans Union Corp.*, 173 F.R.D. 393, 398 (E.D.N.Y. 1998) (defendant was on sufficient notice that allegations also concerned other persons: "the asserted claims of the proposed additional plaintiffs are identical to those of the original plaintiff and arise from the same conduct . . . Defendants had adequate notice in the original complaint of the potential additional claims arising from their conduct. Consequently, defendants should be prepared to defend the class action . . . and will not be prejudiced by [] the amendment."); *Employees Committed For Justice v. Eastman Kodak Co.*, 407 F. Supp. 2d 423, 438-40 (W.D.N.Y. 2005) (new class allegations and additional plaintiffs' claims in Title VII case related back to initial complaint; defendant was on notice from original plaintiff's EEOC Charge that she also alleged that defendant discriminated against other similarly situated employees);[15] *Arreola v. Godinez*, 546 F.3d 788 (7th Cir. 2008) (expansion of individual claims into class claims; relation back granted where clear from the outset that plaintiff challenged company policies that underpinned the new class claims).

A second, related line of precedent also comes into play here. Amendments interposing additional causes of action relate back when they are predicated on the same conduct. This is especially the case where, as here, a plaintiff merely raises a counterpart of and corollary to an existing statutory claim. *See, e.g.*, *Pastorello v. City of New York*, No. 95 Civ. 470, 2001 WL 1543808, at *5 (S.D.N.Y. Dec. 4, 2001) ("an amended complaint asserting violations of state statutes relate back to the original complaint which asserted federal civil rights claims.");[16] *Dave*

---

[15] Defendant's notice of the allegations in the amended pleading need not be established by the original complaint but may be shown by extrinsic evidence. *E.g. United States ex rel. Bledsoe v. Cmty. Health Sys, Inc.*, 501 F.3d 493, 517-518 (6th Cir. 2007); *Andujar*, 113 F.R.D. at 154-55 (notice may be "formal or informal").

[16] *Cf. Hnot v. Willis Group Holding Ltd.*, No. 01 Civ. 6558, 2004 WL 1794493, at *1-2 (S.D.N.Y. 2004) (in gender discrimination class action, permitting plaintiffs to add parallel state law claims more than three years into the case, even where plaintiffs originally made strategic choice to pursue only Title VII claims).

*v. District of Columbia*, 811 F. Supp. 2d 111, 116-17 (D.D.C. 2011) (additional claims under 42 U.S.C. §§ 1981 and 1983 related back when based on same facts as original Title VII claim); *In re Am. Family Mut. Ins. Co. Overtime Pay Litig.*, 638 F. Supp. 2d 1290, 1295-96 (D. Colo. 2009) (in class overtime case, state law claims related back to original FLSA complaint; state claims "were merely alternative theories of relief" for the same conduct: the failure to pay overtime).[17]

C. *The Court Should Follow Judge Torres' On-Point Decision in Zorrilla*

Judge Torres' recent decision in *Zorrilla v. Carlson Rests. Inc.*, 255 F. Supp. 3d 465 (S.D.N.Y. 2017) stands at the intersection of these lines of authority and is directly applicable here. *See also Kinkead v. Humana at Home*, 330 F.R.D. 338, 343-44, 356 (D. Conn. 2019) (where original complaint asserted FLSA collective action and cognate CMWL claim, amended complaint adding New York class plaintiff and corresponding NYLL claim related back under Rule 15(c)).

*Zorrilla* was a nationwide class and collective action involving more than 40,000 tipped workers at Friday's restaurants. The original complaint pled an FLSA collective action and a corresponding Rule 23 class action under the NYLL. Following conditional certification and notice, more than 4,500 workers opted into the FLSA action. Then, in an amended complaint, plaintiffs added new class representatives from eight other states and asserted new class claims

---

[17] *See also, e.g., Hall v. Spencer Cty., Ky.*, 583 F.3d 930 (6th Cir. 2009) (new legal theory and constitutional claim based on same "nexus of facts and actions"); *Santamarina*, 466 F.3d at 573-74 (new cause of action relates back if premised on same general set of facts); *Rural Fire Prot. Co. v. Hepp*, 366 F.2d 355, 361-362 (9th Cir. 1966) (amendment of wage-and-hour complaint to include claims for additional pay period related back as claim was based on same transaction, would be proven by similar evidence, and did not take employer by surprise); *Baranco v. Ford Motor Co.*, No. 17-cv-03580, 2018 WL 5474549 (N.D. Cal. Oct. 26, 2018) (where original California plaintiff alleged common vehicle defects, giving rise to implied warranty claim, granting relation back of amendment adding class plaintiff who asserted substantively similar claim under North Carolina law); *Ramirez v. Ghilotti Bros.*, 941 F. Supp. 2d 1197, 1208-10 (N.D. Cal. 2013) (in wage-and-hour case, new claims for penalties related back because they arose from same underlying allegations); *Coleman v. United Healthcare Servs. Inc.*, No. 2:12–cv–02156, 2013 WL 842596, at *7 (W.D. Tenn. Mar. 6, 2013) (plaintiff added state statutory claims in Title VII and § 1981 discrimination case; new claims, based on same "pattern of conduct," related back to original complaint); *DeLodder*, 2009 WL 1684409, at *4-5 (relation back of claims based on additional sections of Labor Code).

under the laws of those states. Defendant argued that the California claims were time-barred because the new California plaintiff had not worked for Friday's within three years of the amended complaint. Applying a three-part test, the court held that those California claims which were substantially parallel to the claims raised throughout the suit related back to the original complaint. Plaintiffs here easily meet each part of the test adopted in *Zorrilla*. 255 F. Supp. 3d at 476.

> 1. Same "Conduct, Transaction, or Occurrence"

Here, there can be no legitimate question that the IMWL claims arise out of the same "conduct, transaction, or occurrence" set out in the original February 2017 class and collective action complaints in *McKinney* and *Julian*: namely, MetLife's uniform reclassification of all LTD Claim Specialists as exempt in November 2013, as well as its resulting failure to pay them overtime compensation. *See Zorrilla*, 255 F. Supp. 3d at 477 (original and amended complaints advanced "essentially the same factual allegations and theory of liability"—company-wide violations relating to payment of overtime, requiring employees to pay for uniforms, and unlawful deductions from wages); *see also, e.g., Kinkead*, 330 F.R.D. at 356 (same policy of not paying home healthcare workers for overtime); *Perkins*, 2009 WL 3754097, at *5-6 (same company-wide conduct in misclassifying workers and failing to pay them overtime).[18] Defendant's cited cases involve the significant transformation and expansion of the factual nature and scope of the claims, not merely a delineation of a new subclass from a long-established group of potential class members.

---

[18] *See generally Porter v. Decatur Memorial Hosp.*, 882 N.E.2d 583, 589 (Ill. 2008) (Illinois same transaction or occurrence test met when pleadings or other case proceedings, including the discovery record, placed defendant on notice of the facts that form the basis of the claim against it); *Weber v. Cueto*, 624 N.E.2d 442, 448 (Ill. App. Ct. 1993) (cause of action need not be the same or even "substantially similar"; focus of inquiry is not on the cause of action, legal theory, or remedies sought but the underlying factual predicate); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig*., 05-MD-1720, 2018 WL 4158290, at *12 (E.D.N.Y. Aug. 30, 2018) (amendment relates back when it "does not involve any new conduct by Defendants, but rather calls for consideration of additional impact from the conduct already alleged.").

2.  Identity of Interest

Plaintiff Harris' IMWL claim also satisfies *Zorrilla*'s "identity of interest" element. The original complaint pled a collective action that included Ms. Harris and other Illinois employees. "In this sense, [Harris] shares the identity of the original plaintiffs and Defendant[] can be said to have been given fair notice of her claim against [it]." *Zorrilla*, 255 F. Supp. 3d at 478 (citation omitted). Indeed, MetLife was put on notice from the outset that the claims of Illinois employees were at issue and that such employees would pursue relief in this action.[19]

Despite generalized insinuations, Defendant does not contend that the class-wide facts pled in the initial complaint would fail to support a corresponding IMWL claim, or that substantially different factual allegations would have been required to plead a valid claim. In broadly asserting that the IMWL and FLSA claims are so divergent as to preclude relation back, MetLife merely points to the fact that the IMWL relies on an older version of FLSA regulations.  Defendant does not—and indeed, cannot—point to specific "proof" or "facts" that would be necessary for defending against the IMWL claim that have not already been at issue in this case since 2017.

3.  No Undue Prejudice

MetLife's conclusory assertions of prejudice are disingenuous and mislaid. The substantive claims have not changed from the first complaint, which put MetLife on notice that it would have to defend an action that included "similarly situated" LTDCSs in Illinois and elsewhere. *See Zorrilla*, 255 F. Supp. 3d at 478-79; *see also Perkins*, 2009 WL 3754097, at *5. Moreover, MetLife has endeavored from the outset of the litigation to assemble evidence and construct a defense that encompassed LTDCSs in Illinois. *See Zorrilla*, 255 F. Supp. 3d at 478-79. As described above, it

---

[19] MetLife's invocation of decisions rejecting relation back of attempts to broaden single-state cases into nationwide class actions is especially misplaced. This case is the reverse of such a situation.

even collected "happy camper" declarations and conducted job surveys from class members across multiple jobsites, including the Illinois office. No defense or evidence has become "stale" because of the omission of a formal IMWL claim from the initial complaints. *See id.*[20]

And, based on the course of litigation, MetLife should have anticipated that once § 216(b) notice went out and LTDCSs residing in Illinois joined the action, a suitable representative would step forward to serve as an IMWL plaintiff. *Cf. id.* at 479. Where the claims are based on the same facts, circumstances, and theories as the existing FLSA, CMWL, and NYLL claims,[21] refraining from pursuing a parallel IMWL action would only divest many class members of a remedy and prejudice the Illinois contingent of LTDCSs. *Cf. Shahriar*, 659 F.3d at 244. It would not have been reasonable for MetLife to assume that class counsel would refrain from pursuing all possible

---

[20] *See generally Walstad*, 105 N.E.3d at 1025 ("a defendant is not prejudiced if his attention was directed, within the time prescribed or limited, to the *facts* that form the basis of the claim asserted against him.") (citing *Porter*) (emphasis added). Defendant here had a full and "fair opportunity to investigate the circumstances upon which liability is based while the facts are accessible." *Porter*, 227 Ill.2d at 355.

[21] *See, e.g.*, *Scott*, 300 F.R.D. at 200 (in class overtime case involving executive exemption, granting leave to add Illinois claims and rejecting assertion of prejudice where defendant "has not shown, for example, that there are meaningful differences between FLSA and the proposed state law labor claims which would unduly burden [its] defense"); *Lewis v. Giordano's Enters., Inc.,* 921 N.E.2d 740, 746 (Ill. App. Ct. 2009) ("[G]iven the similarity in the language and the underlying purposes and public policy of the federal and state statutes… federal cases interpreting the FLSA… are persuasive authority and can provide guidance").

While MetLife contends that the Illinois exemption rests on a prior version of the regulations, supposedly "implicating a different legal standard" (Dkt. No. 143 at 19), the pre-2004 "short test" for the FLSA administrative exemption is substantially coextensive with the current regulations. *See Kennedy v. Commonwealth Edison Co*., 410 F.3d 365, 370 (7th Cir. 2005); *Nettles v. Allstate Ins. Co*., 980 N.E.2d 103, 110-11 (Ill. App. Ct. 2012) (under IMWL, "short test" applies to employee who meets salary threshold). Any possible distinctions are immaterial because the same facts and evidence are involved. *See, e.g., Porter*, 227 Ill.2d at 358 ("no question that relation back is appropriate where a party seeks to add a new legal theory to a set of previously alleged facts."). MetLife has not even attempted to show that variations in the exemption standard have materially prejudiced its investigation or its attempts to preserve and gather evidence. *Cf. Scott*, 300 F.R.D. at 200; *Phillips v. WellPoint, Inc.*, 900 F. Supp. 2d 870, 884 (S.D. Ill. 2012) (relation back of amendment adding defendants in class case where "defendants have not suggested in their motion to dismiss that their ability to defend themselves was impaired."). It does not identify a factual allegation unique and essential to the IMWL claims (and thus missing from the original complaints) that would have meaningfully altered its approach to the litigation. *Compare Echlin v. Peace Health*, 887 F.3d 967, 978-79 (9th Cir. 2018) (additional factual elements inherent in new claims would likely have transformed the defense).

remedies for Illinois opt-in plaintiffs, including moving to elevate an opt-in plaintiff to IMWL class representative once the option arose. That is precisely what occurred here.

D.  *Charlot v. Ecolab Is Distinguishable and Should Not Be Followed*

Several critical factors distinguish this case from *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40 (E.D.N.Y. 2015) . While the complaint in *Charlot* concerned alleged nationwide violations, this action centers on MetLife locations based out of only five states.[22] By pursuing New York and Connecticut classes, Plaintiffs made clear that they intended to bring corresponding state law class claims where feasible. And, based on the geographic distribution and concentration of LTD Claims Specialists, Defendant had no difficulty anticipating where those claims would come from: MetLife only has LTD offices in a handful of states, and Illinois has the second highest number of LTDCSs and a substantive state overtime law. Thus, MetLife did not have to guess from among fifty states and analyze each of their laws. Indeed, LTDCSs based out of the Illinois office opted into the case from the beginning, and MetLife's investigation and discovery efforts included Illinois. As set forth above, MetLife took discovery from opt-in Tonya Gill (an LTDCS based out of the Illinois office); developed and submitted evidence from Illinois class members; conducted "surveys" of at least ten Illinois LTDCSs; and noticed the depositions of Illinois opt-ins—all before Plaintiffs filed the TAC. There is simply no prejudice here.

Moreover, unlike in *Charlot*, Plaintiffs do not contend that there is a ten-year limitations period on the Illinois claims.[23] Rather, a three-year period applies to the claims, similar to the FLSA limitations period at the time the case was filed. Thus, the amendment does not expand the

---

[22] New York, Illinois, Connecticut, Massachusetts, and Florida. During the Class Period, there may have also been an office in Puerto Rico with a small number of LTDCSs.

[23] In that case, the plaintiffs attempted to bring a claim under the Illinois Wage payment and Collection Act ("IWPCA"), which is an entirely distinct statute to the IMWL with different elements and a different statute of limitations.  Accordingly, Defendant's footnote referencing the IWPCA is simply immaterial.

number of aggrieved class/collective members that MetLife faced on the day the case was filed.[24]

In any case, the Court should decline to apply the *Charlot* approach— as Judge Torres did in *Zorrilla*, 255 F. Supp. 3d at 476, 479. *Charlot* applies an overly restrictive, begrudging analysis that improperly assumes prejudice where none may exist. Here, as in *Zorrilla*, the auxiliary state law claim and original FLSA claim "allege substantively similar forms of liability, thus implicating the same evidence and defenses as the original pleading." The "legal and factual bases for these claims are substantively parallel": here, they are overtime misclassification claims arising from the reclassification of LTD Claims Specialists as exempt. The same exemption is implicated. Defending the IMWL clams presents "no significant additional burden" on MetLife. *Id*. at 479.

E.   *There is No "Mistake" Requirement When Plaintiffs Are Added or Substituted in Class Cases*

Under Rule 15(c)(1), relation back only requires a party to meet the provisions of either (A), (B), or (C). On its face, 15(c)(1)(C) applies solely to amendments changing the party *against whom* a claim is brought—here, MetLife. This makes eminent sense because the crux of the Rule is notice and knowledge on the part of a defendant. *See Krupski*, 560 U.S. at 541 ("relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge").[25] On a defendant-changing amendment, the touchstones of notice and prejudice properly center on whether the defendant knew or should have known it would have been named but for an identification error. But in a case such as this one, the same basic

---

[24] Regardless, "[a]s long as the original complaint gives defendant adequate notice [of the nature of the claim], an amendment relating back is proper even if it exposes defendant to greater damages." Wright & Miller § 1501.

[25] *See also id*. at 548 ("The question under Rule 15(c)(1)(C)(ii) is not whether Krupski knew or should have known the identity of Costa Crociere as the proper defendant, but whether Costa Crociere knew or should have known that it would have been named as a defendant but for an error. Rule 15(c)(1)(C)(ii) asks what the prospective *defendant* knew or should have known during the Rule 4(m) period, not what the *plaintiff* knew or should have known at the time of filing her original complaint."). In reaching this conclusion, *Krupski* overturned Second Circuit law on the interpretation of Rule 15(c)(1)(C)(ii). *See id*. at 546 n.2.

considerations of notice and prejudice are satisfied by Defendant's knowledge that they faced liability for misclassifying all LTD Claims Specialists in Illinois and that an Illinois plaintiff could likely step in to take up the mantle of an IMWL claim. No purpose is served by an artificial mandate of an identification error. By crystallizing the nature and import of Rule 15(c)(1)(C)—as applicable to defendant-changing amendments—*Krupski* thus abrogates any prior decisions appearing to suggest that a plaintiff must have been mistaken as to his or own identity.[26]

If mistake were in fact required with regard to amendments to add or substitute plaintiffs, there could never be relation back (except perhaps in business litigation involving convoluted corporate relationships) because no plaintiff could be mistaken as to his or her own identity and no defendant could know that another plaintiff would have sued but for a self-identification error. This is simply not the law. The purpose of the Rules was to foster the just and efficient resolution of claims on their merits, not to bar relation back whenever plaintiffs are added or substituted into an existing class case. As set forth above, such relation back is altogether common, including in

---

[26] Each of MetLife's cited Circuit cases predate *Krupski*. Moreover, they are otherwise distinguishable.

*Levy* involved "unique concerns pertaining to piggybacking employment discrimination claims." *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 290 (S.D.N.Y. 2009). Further, *Levy* was a multi-plaintiff case and not a class matter. The action did not purport from the outset to represent all employees and the amendment at issue there did not merely elevate a class member (and existing § 216(b) opt-in) to named plaintiff status. *See Beach*, 2014 WL 904650, at *19 ("The Second Circuit has not addressed whether the claims of a newly named plaintiff will relate back to the original time of filing in the class action context."); *Zorrilla*, 255 F. Supp. 3d at 476 ("The Second Circuit, however, has not issued a precedential opinion applying Rule 15(c) to this scenario").

*Advanced Magnetics* is even less supportive of Defendant's position. It indicates that, in accordance with the liberal purposes of the Rules, Rule 15(c) relation back (not the "mistake" rubric of 15(c)(1)(C)) applies to proposed changes of plaintiffs and that substitutions should be freely allowed. Like *Levy*, it is not a class case. *Advanced Magnetics* is consistent with the 1966 Advisory Committee Notes—stating that "the attitude taken in revised Rule 15(c) toward change of defendants extends by analogy to amendments changing plaintiffs." This does not entail that "mistake" is required but that the overall "attitude" of liberality is appropriate and that such amendments should freely relate back even though not expressly mentioned in the Rule.

Finally, *Reliance Ins.*, an unpublished decision, is another single-party business litigation. The opinion rests mainly on the ground that relation back cannot apply between separate actions in different courts.

employment actions. A "mistake" requirement would overturn scores of cases finding relation

back as a matter of course. Class litigation does not start over from scratch every time a plaintiff

comes in; this would only create procedural turmoil and provide an undue windfall to Defendant.

Accordingly, many courts have held that a showing of mistake is not required for

amendments adding or substituting plaintiffs, particularly in class cases. *E.g. Zorrilla*, 255 F. Supp.

3d at 476-77 (rejecting "mistake" requisite in favor of three-part test); *Beach*, 2014 WL 904650,

at \*19 ("In this Circuit, courts have rejected the 'mistake' requirement when adding new named

plaintiffs in a class action and focus on whether the new plaintiff's claims were reasonably

foreseeable and whether their addition would prejudice the defendants."); *Bensinger*, 2013 WL

3353975, at \*5 ("'mistake' need not be shown in this context, as Rule 15(c) extends to plaintiffs

as long as defendants had reasonable notice of the existence of the proper party"); *Perkins,* 2009

WL 3754097, at \*4 (collecting cases); *In re S. African Apartheid Litig.*, 617 F. Supp. 2d 228, 290

(S.D.N.Y. 2009); *In re Gilat Satellite Networks, Ltd.*, No. 02 Civ. 1510, 2005 WL 2277476, at \*25

(E.D.N.Y. Sept. 19, 2005) (reasoning that requiring plaintiff to demonstrate a mistake is contrary

to the plain language of the Rule and inconsistent "with the liberal 'attitude' of Rule 15"); *In re

Simon II Litig.*, 211 F.R.D. 86, 145-46 (E.D.N.Y. 2002) ("This provision, by its express language,

appears not to be relevant when adding a plaintiff"), *vacated on other grounds*, 407 F.3d 125 (2d

Cir. 2005); *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 297-98 (3d Cir. 2010) (discussing amendment

elevating class member to named plaintiff status).[27]

---

[27] *See further* Wright & Miller § 1501; *Junior Gallery, Ltd. v. Neptune Orient Line, Ltd.*, No. 94 Civ. 4517, 1997 WL 26293, at \*6-7 (S.D.N.Y. Jan. 22, 1997) ("courts more liberally approve amendments that change plaintiffs than those substituting new defendants;" the inquiry focuses not on "mistake" but on notice and prejudice); *Red Rock Commodities Ltd. v. M/V Kopalina Szombierki*, No. 92 Civ. 6016, 1994 WL 440822, at \*4 (S.D.N.Y. Aug. 15, 1994); *Andujar*, 113 F.R.D. at 158.

*See also, e.g., Henkel v. Highgate Hotels, L.P.*, No. 3:15-cv-1435, 2018 WL 5886542, at \*2 (M.D. Pa. Nov. 9, 2018); *Olech v. Vill. of Willowbrook*, 138 F. Supp.2d 1036, 1041-42 (N.D. Ill. 2000) ("mistake"

As stated in the 1966 Advisory Committee Notes, as opposed to amendments changing defendants, "relation back of amendments changing plaintiffs is not expressly treated in revised Rule 15(c) since the problem is generally *easier*." Fed. R. Civ. P. 15 advisory committee's note to 1966 amendment. *Accord, e.g.*, Wright & Miller § 1501; *Freight Drivers & Helpers Local Union No. 557 v. Penske Logistics, LLC*, 784 F.3d 210, 218-19 (4th Cir. 2015). Transplanting a "mistake" requirement would subvert this observation and undermine the intent of the drafters by making such amendments infinitely *harder*, if not all but impossible.

### III.  THE CMWL CLAIM IS TOLLED FROM MS. MCKINNEY'S LABOR COMPLAINT, WHICH PUT METLIFE ON NOTICE OF A CLASS-BASED OVERTIME ACTION

The CMWL authorizes an employee subject to wage violations to file a complaint with the Labor Commissioner. The Commissioner is empowered to investigate the claims, remediate violations, and pursue civil actions on employees' behalf. *See* Conn. Gen. Stat. §§ 31-59, 31-68, 31-68a, 31-72; *Comm'r of Labor v. C.J.M. Servs., Inc.*, 806 A.2d 1105 (Conn. App. Ct. 2002), *aff'd in relevant part*, 842 A.2d 1124 (Conn. App. Ct. 2004). By statute, the filing of a complaint with the agency tolls the statute of limitations. Conn. Gen. Stat. § 52-596.[28] This allows the agency to do its job while ensuring that employees are not penalized for electing to pursue administrative

---

requirement specifically designed for defendant-changing amendments; on motions to add plaintiffs, courts instead focus on "questions of fair notice and absence of undue prejudice"); *Holland v. United States*, 62 Fed. Cl. 395, 407 (2004) (under equivalent rules for federal claims court, "mistake" requirement only applies to amendments changing defendants); *Wright*, 586 F.Supp.2d at 469-70; *Otto v. Milwaukee Cty.*, No. 07-C-427, 2007 WL 3228118 (E.D. Wis. Oct. 30, 2007); *Harris v. Johns*, No. 3:06-cv-433, 2007 WL 2310784, at *2 (M.D. Fla. Aug. 8, 2007); *Yanes v. The Minute Maid Co.*, No. Civ. A. 02-2712, 2006 WL 1207992, at *3-4 (D.N.J. May 3, 2006); *Chaplake Holdings, Ltd. v. Chrysler Corp.*, 766 A.2d 1, 7 (Del. 2001) ("Requiring plaintiffs to demonstrate that, but for a mistake, different or additional plaintiffs would have been named in the original complaint serves no purpose where a defendant was originally part of the action and thus on notice of the claims before the expiration of the statute of limitations.").

[28] *See, e.g., Bilodeau v. English*, No. HHDCV176075270, 2019 WL 5066863 (Conn. Super. Sept. 12, 2019) ("[T]he tolling provision of this statute appears to apply because the plaintiff did indeed file a complaint with the Labor Commissioner"); *Barwise v. Lexington Healthcare Grp., Inc.*, No. CV990066432S, 2001 WL 1378792 (Conn. Super. Oct. 24, 2001) (if individual defendants were determined to be employers personally responsible for violations, statutory tolling under § 52-596 would extend to them).

remedies.

Notably, one of the customarily-recognized grounds for equitable tolling is when a plaintiff mistakenly files the case in the wrong forum; as a matter of fairness, the defendant is fully on notice of the claims, and the plaintiff and class should not suffer the consequences of the filing error. *See, e.g., Burnett v. N.Y. Cent. R. Co.,* 380 U.S. 424 (1965); *Danecker v. Bd. of Trs. of Serv. Employees 32BJ N. Pension Fund*, 882 F. Supp. 2d 606, 612 (S.D.N.Y. 2012). As embedded in § 52-596, the rationale for tolling is only stronger when a plaintiff has not done anything incorrectly but has properly availed herself of a remedial avenue and forum provided to her by statute.

MetLife argues, however, that § 52-596 tolling should not extend to the class.[29] But, such a determination is premature; even at summary judgment, the burden falls on the defendant to establish that no genuine issue of material fact exists as to whether statutory tolling provisions are satisfied. *See Romprey v. Safeco Ins. Co. of Am.*, 77 A.3d 726, 735-38 (2013). In any case, tolling should apply on a class-wide basis. As set forth above, the investigation and proceedings on Plaintiff McKinney's CT DOL complaint were not limited to her individual circumstances but focused on MetLife's classification of similarly-situated employees, namely all LTDCSs. *See supra* at n.3. ███████████████████████████████

████████████████████████████████████████

Conn. Gen. Stat. §§ 31-58(f), 31-76i(e); Conn. Regs. § 31-60-15. Palmer Decl., Ex. F (emphasis added). Accordingly, MetLife was placed on notice that the claims of *all* LTDCSs were at issue.

Cases applying the "single filing" rule in Title VII and ADEA cases are analogous. Under those statutes, "[t]he timely filing of an administrative charge by a named plaintiff in a class action

---

[29] In arguing that the Connecticut class claims should only extend back to March 3, 2015, Defendants also ignore the fact that Plaintiff McKinney first filed her Connecticut class action on February 7, 2017.

satisfies the charge filing obligation of all members of the class" and accordingly tolls the statute

of limitations for the class as a whole. *Tolliver v. Xerox Corp.*, 918 F.2d 1052, 1056 (2d Cir. 1990);

*Snell v. Suffolk Cty.*, 782 F.2d 1094, 1100-1102 (2d Cir. 1986) (adopting "single filing rule").[30] As

with the relation back inquiry, "context" matters; notice can be established not only by the pleading

itself (i.e., the initial EEOC charge) but by the course of the agency's investigation. *See, e.g.,*

*Gomes v. Avco Corp.*, 964 F.2d 1330, 1334 (2d Cir. 1992) ("[W]e look not merely to the four

corners of the often inarticulately framed charge, but take into account the scope of the EEOC

investigation which can reasonably be expected to grow out of the charge of discrimination.")

(citation omitted); *Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 214 (E.D.N.Y. 2013)  ("a claim is

deemed 'reasonably related' to an EEOC complaint if the claim fell within the actual scope of the

EEOC investigation arising from the complaint, as indicated in the EEOC decision.").[31]

Here, the CT DOL's investigation encompassed the misclassification claims of LTDCSs

*as a class*, and MetLife had an actual opportunity to conciliate on a class basis, by reclassifying

the position and paying wages due. *See supra* at n.3; Palmer Decl., Ex. F. Instead, MetLife sought

---

[30] *See also Cronas v. Willis Group Holdings Ltd.*, No. 06 Civ. 15295, 2007 WL 2739769, at *3 (S.D.N.Y. Sept. 17, 2007) (noting that the relevant inquiry is whether "the grievance affects a group of individuals defined broadly enough to include those who seek to piggyback on the claim, in order to afford[ ] sufficient notice to the employer to explore conciliation with the affected group.") (citing *Tolliver*)

[31] *See also Brown v. Coach Stores, Inc.*, 163 F.3d 706, 708, 712 (2d Cir. 1998) (where plaintiff alleged failure to promote and cited racial patterns in promotions: "We find Brown's disparate impact claim reasonably related to her failure to promote claim as we would expect that the EEOC, in investigating the complaint, would have assessed Coach's promotion policies and their effect on minority employees."); *Robinson v. Locke*, No. 11 Civ. 2480, 2012 WL 1029112, at *6-12 (S.D.N.Y. Feb. 1, 2012), *adopted,* 2012 WL 1028814 (S.D.N.Y. Mar. 28, 2012) (although the charge never mentioned race, the facts should be viewed "in context" of prior complaints and class action; this history could have reasonably triggered a race-based investigation. Further, waiving exhaustion "as a matter of equity, would not only be consistent with the policies underlying the single-filing rule, but would best aid in the enforcement of Title VII and serve its remedial objectives."); *Dixit v. City of N.Y. Dept. of Soc. Servs.*, 972 F. Supp. 730, 734 (S.D.N.Y. 1997) (no reason to speculate as to whether a hypothetical reasonable investigation could have covered certain claims when the EEOC actually did investigate those allegations); *Minetos v. City Univ. of N.Y.,*  875 F. Supp. 1046, 1052 (S.D.N.Y. 1995) ("the facts do show that the EEOC was alerted to a possible age discrimination claim," through a statement provided two months after filing of the charge).

to avert a class action by picking off Plaintiff McKinney with an individual settlement offer. The purpose of tolling the limitations period under § 52-596—to facilitate recourse to the administrative process—is satisfied for the entire class. It would frustrate that goal to hold that each LTDCS should have filed a separate DOL complaint to preserve the statute of limitations on his/her claim.

At minimum, Ms. McKinney's correspondence with the investigator, which expressly set forth the class reach of MetLife's conduct, should be construed as an amendment to her original labor complaint which relates back to that complaint. Any investigator examining whether the duties and characteristics of Ms. McKinney's job position qualified her as exempt can reasonably have been expected to inquire into the nature and classification of the position more broadly. Indeed, the assigned DOL investigator did just that. *See supra* at n.3; Palmer Decl., Ex. F.

Consequently, statutory tolling should apply on a class-wide basis. Applying tolling to the entire class accords with and effectuates the liberal, remedial purposes of Connecticut's wage and hour laws, which "must be construed broadly in favor of the employees whom the legislature intended to benefit." *E.g., Comm'r of Labor*, 73 Conn. App. at 47 (citing cases). The CMWL is animated by the "important public policy of ensuring that employees receive all wages due to them"; its enforcement provisions are designed for the purposes of "compensating employees and deterring employers from failing to pay wages." *Butler v. Hartford Technical Inst.*, 708 A.2d 222, 227 (Conn. 1997). Where the employer was provided fair and reasonable notice of a class-wide claim, adopting a narrow interpretation of § 52-596 and truncating the class recovery period undercuts these dual objectives. Doing so here would allow MetLife to retain part of the spoils for uniformly misclassifying LTD Claim Specialists, by lopping a year from the limitations period on a claim brought to challenge these practices. A class claim was well "within the scope" of Ms.

McKinney's DOL complaint, as confirmed by the DOL's position-wide investigation and findings.

Relying upon an unpublished decision by a Connecticut lower court, Defendant argues that a state court already "addressed this issue" in its favor. *See* Defs' Mot. at 7 (citing *Butler v. McIntosh*, No. CV 950555751S, 1997 WL 112010 (Conn. Super. Ct. Feb. 21, 1997)).  However, *Butler* is wholly distinguishable. Unlike here, the *Butler* case did not involve a class action; rather, the claimant filed an individual complaint, and the Commissioner tried to shoehorn several other employees into the ensuing suit. Regardless, to the extent the Court believes that the *Butler* decision would counsel against tolling, the Court can and should decline to follow the decision as it contravenes the purposes of § 52-596, frustrates the remedial goals of the CMLW, and ignores the analogous caselaw under Title VII and the ADEA.  *See Connecticut State Fed'n of Teachers v. Bd. of Ed. Members*, 538 F.2d 471, 485 (2d Cir. 1976) (concluding that unreported decisions of Connecticut Superior Courts do not represent "a definitive exposition of state law"  and therefore "are not binding on us."); *Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000) ("Absent law from a state's highest court, a federal court sitting in diversity has to predict how the state court would resolve an ambiguity in state law" and is not bound by lower state courts).[32]

## CONCLUSION

MetLife's attempt to slice and dice the class periods on the CMWL and IMWL claims fails on multiple fronts. Procedurally, the motion is premature because it does not seek to dismiss any claims but merely to set the class period—a task for class certification and/or summary judgment. Substantively, these claims are wholly timely under established relation back and tolling precepts. Accordingly, this Court should deny Defendant's motion to dismiss in its entirety.

---

[32] *See also Stern v. Cosby*, 645 F. Supp. 2d 258, 275 (S.D.N.Y. 2009) (declining to follow intermediate appellate court decisions in predicting how New York Court of Appeals would rule).

Dated: May 29, 2020

Respectfully submitted,

By: /s/ Michael D. Palmer

Michael D. Palmer
Jeremy Heisler
Andrew Melzer
David Tracey
Melinda Koster
Meredith Firetog

**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, Floor 31
New York, NY 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
mpalmer@sanfordheisler.com
jheisler@sanfordheisler.com
amelzer@sanfordheisler.com
dtracey@sanfordheisler.com
mkoster@sanfordheisler.com
mfiretog@sanfordheisler.com

-- and –

Michael R. DiChiara
***KRAKOWER DICHIARA LLC***
*One Depot Square*
*77 Market Street, Suite 2*
*Park Ridge, New Jersey 07656*
201-746-0303
347-765-1600 (fax)

*Counsel for Plaintiffs Debra Julian, Stephanie*
*McKinney, Kimberly Harris, the Collective Action*
*Members, and the Proposed Classes*

26