**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**DEBRA JULIAN & STEPHANIE MCKINNEY**, *on behalf of themselves and others similarly situated*,

*Plaintiffs*,

**v.**

**METROPOLITAN LIFE INSURANCE COMPANY**,

*Defendant*.

**Case No.: 1:17-cv-00957-AJN**

***Electronically Filed***

---

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS DISMISSING CLAIMS THAT WERE NOT DISCLOSED IN BANKRUPTCY PROCEEDINGS**

---

**MORGAN, LEWIS & BOCKIUS LLP**
Christopher A. Parlo
Melissa C. Rodriguez
Ashley Hale
101 Park Avenue
New York, New York 10178
212.309.6000

*Attorneys for Defendant Metropolitan Life Insurance Company*

**TABLE OF CONTENTS**

**Page**


I. PRELIMINARY STATEMENT ..... 1

II. RELEVANT BACKGROUND INFORMATION ..... 3

A. Summary of Claims and Procedural History ..... 3

B. The Bankruptcy Plaintiffs Failed to Disclose their Claims in Previously Filed Bankruptcies ..... 4

III. ARGUMENT ..... 6

A. Standard of Review ..... 6

B. The Bankruptcy Plaintiffs Are Estopped from Bringing the Claims Asserted in the Third Amended Complaint ..... 7

C. The Bankruptcy Plaintiffs' Failure to Disclose Their Claims Was Not a Product of Inadvertence or Good-Faith Mistake ..... 9

1. The Bankruptcy Plaintiffs cannot claim they did not have knowledge of the claims ..... 10

2. The Bankruptcy Plaintiffs cannot claim they had no motive to conceal their current claim from the bankruptcy court. ..... 12

3. That the Bankruptcy Plaintiffs did not reopen their bankruptcy petitions when they joined or opted in to this action further underscores that their nondisclosure was not in good faith ..... 13

D. The Bankruptcy Plaintiffs Lack Standing to Bring the Claims ..... 14

IV. CONCLUSION ..... 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Altman v. Bedford Cent. Sch. Dist.*,
245 F.3d 49 (2d Cir. 2001)....................6

*Amash v. Home Depot U.S.A., Inc.*,
503 B.R. 232 (N.D.N.Y. 2013)....................7, 8, 10, 12

*Amundaray-Rodriguez v. Garcia*,
No. 10-2258, 2011 WL 5117122 (D.P.R. Oct. 26, 2011)....................9

*Azuike v. BNY Mellon*,
962 F. Supp. 2d 591 (S.D.N.Y. 2013)....................6, 9, 12

*Coffaro v. Crespo*,
721 F. Supp. 2d 141 (E.D.N.Y. 2010)....................11, 14

*Galin v. IRS*,
563 F. Supp. 2d 332 (D. Conn. 2008)....................12

*Galin v. United States*,
No. 08-2508, 2008 WL 5378387 (E.D.N.Y. Dec. 23, 2008)....................8

*Gaskins v. Thousand Trails, LP*,
521 F. Supp. 2d 693 (S.D. Ohio 2007)....................12

*Grammer v. Mercedes Benz of Manhattan/Mercedes Benz USA, LLC*,
No. 12-6005, 2014 WL 1040991 (S.D.N.Y. Mar. 13, 2014)....................9, 14

*Guay v. Burack*,
677 F.3d 10 (1st Cir. 2012)....................8

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*,
337 F.3d 314 (3d Cir. 2003)....................9

*Lapointe v. Target Corp.*,
No. 16- 0216, 2017 WL 1397311 (N.D.N.Y. Feb. 14, 2017).................... *passim*

*Makarova v. United States*,
201 F.3d 110 (2d Cir. 2000)....................7

*Musso v. Ostashko*,
468 F.3d 99 (2d Cir. 2006)....................14

*New Hampshire v. Maine*,
532 U.S. 742 (2001)....................7

*Oneida Motor Freight, Inc., v. United Jersey Bank*,
848 F.2d 414 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988) ....7

*Patel v. Baluchi's Indian Rest.*,
No. 08-9985, 2009 WL 2358620 (S.D.N.Y July 30, 2009) ....6

*Pinto v. Ancona*,
692 N.Y.S.2d 128 (N.Y. App. Div. 1999) ....14

*Pray v. Long Island Bone & Joint, LLP*,
No. 14-5386, 2016 WL 9455557 (E.D.N.Y. Aug. 11, 2016) ....11

*In re Prisco*,
No. 11-0474, 2012 WL 4364311 (N.D.N.Y. Sept. 24, 2012) ....10

*Rodriguez-Torres v. Gov. Dev. Bank of P.R.*,
750 F. Supp. 2d 407 (D.P.R. 2010) ....9

*Sea Trade Co. v. FleetBoston Fin. Corp.*,
No. 03-10254, 2008 WL 4129620 (S.D.N.Y. Sept. 4, 2008) ....10

*TradeComet.com LLC v. Google, Inc.*,
693 F. Supp. 2d 370 (S.D.N.Y. 2010) ....7

*Vidal v. Doral Bank Corp*,
363 F. Supp. 2d 19 (D.P.R. 2005) ....14

*Welsh v. Quabbin Timber, Inc.*,
199 B.R. 224 (D. Mass 1996) ....14

**Statutes**

11 U.S.C. § 541(a)(1) ....14

Bankruptcy Code Section 541 ....14

Fair Labor Standards Act ....3, 7

**Other Authorities**

Fed R. Civ. P. 12(b)(1) ....1, 6

Fed. R. Civ. P. 12(c) ....1, 6

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(c), Defendant Metropolitan Life Insurance Company ("Defendant," "MetLife" or the "Company"), by and through its attorneys, Morgan, Lewis & Bockius LLP, respectfully submits this Memorandum of Law in support of its Motion to dismiss the claims of Named Plaintiffs Stephanie McKinney and Kimberly Harris[1], and opt-in Plaintiffs Tamitra Harris, Starlene McKenney, Pamela Koepke, Carol Hubner, and Shaklyn Graulau (collectively the "Bankruptcy Plaintiffs"), because of their failure to disclose this litigation as an asset during their respective bankruptcy proceedings.

## I. PRELIMINARY STATEMENT

The Bankruptcy Plaintiffs' claims must be dismissed because they lack standing to bring them and they are otherwise barred by judicial estoppel. In the Third Amended Complaint ("TAC"), the Bankruptcy Plaintiffs seek relief for claims which they failed to disclose to the bankruptcy courts. Specifically, in their bankruptcy petitions, five of the Bankruptcy Plaintiffs explicitly represented that they were **not** owed any wages and had no employment disputes. The remaining two Bankruptcy Plaintiffs affirmatively represented that they had no contingent claims against anyone. They all made these representations *after* obtaining knowledge of the facts underlying their current overtime claims in this action. The Bankruptcy Plaintiffs' position in their respective bankruptcy proceedings is, thus, wholly irreconcilable with their position in this case that they are owed overtime wages. Moreover, the bankruptcy courts relied on each of their inconsistent positions that they were not owed wages and/or had no claims against MetLife when these courts discharged the Bankruptcy Plaintiffs' debts. Having sought and received equitable relief from the bankruptcy courts, the Bankruptcy Plaintiffs should not now be permitted to look to this court for a windfall.

[1] This Motion applies to Ms. K. Harris' claims to the extent the Court mistakenly finds that her complaint relates back to the original complaint filed in this matter on February 8, 2017 (and it should not, for the reasons set forth in Defendant's motion to dismiss). See Dkt. Nos. 120, 142, 143.

The failure by the Bankruptcy Plaintiffs to disclose the claim at issue cannot be attributed to any lack of knowledge. Indeed, the facts suggest the claim was affirmatively omitted. Each of the Bankruptcy Plaintiffs was represented by counsel during their respective bankruptcy proceedings. Six of the seven Bankruptcy Plaintiffs were employed before November 2013, when they claim they were properly classified as nonexempt and received overtime pay, and for years thereafter, when they claim they were improperly reclassified as exempt. And all of the Bankruptcy Plaintiffs were aware throughout their employment after November 2013 that they were not being paid overtime, despite allegedly working more than 40 hours a week. They also knew exactly what their job duties entailed—which duties they now claim did not involve any discretion, judgment or other factors that make them exempt from overtime wages.

The Bankruptcy Plaintiffs also had motive to conceal their claim so as to avoid the possibility that they might have to share or turn over proceeds from this case with their respective bankruptcy estates. Not one of the Bankruptcy Plaintiffs moved to amend their bankruptcy schedules or otherwise to disclose to the applicable bankruptcy court once they joined or opted in to this action. Because the Bankruptcy Plaintiffs, through their silence, advanced a position in bankruptcy court that is inconsistent with their assertion of claims here, and because the bankruptcy court relied on that position in affording them relief, the Bankruptcy Plaintiffs are estopped from bringing their claims in this action and the claims should be dismissed.

Moreover, the Bankruptcy Plaintiffs lack standing to bring their claims in this action. Any claims asserted by the Bankruptcy Plaintiffs are property of their respective bankruptcy estates, and can only be prosecuted by their respective bankruptcy trustees.[2]

---

[2] We also have not seen anything on the docket in this case, or in any of the bankruptcy proceedings, that indicates that the engagement of Plaintiffs' Counsel as litigation counsel on behalf of any of the debtor Bankruptcy Plaintiffs has been authorized by any bankruptcy court.

## II. RELEVANT BACKGROUND INFORMATION

### A. Summary of Claims and Procedural History

Named Plaintiff Debra Julian, a former Long-Term Disability Claim Specialist ("LTDCS") at MetLife, filed a Complaint against MetLife on February 8, 2017, on behalf of herself and others similarly situated, claiming entitlement to overtime compensation and liquidated damages as a result of allegedly being misclassified as exempt from overtime. Dkt. No. 1, ¶ 1. On March 2, 2017, Ms. Julian amended the Complaint and Stephanie McKinney joined the Complaint as a second Named Plaintiff. Dkt. No. 6. In the Amended Complaint, Plaintiffs asserted that "[f]or at least three years prior to the filing of this Complaint, Defendants routinely denied LTD Claim Specialists overtime compensation that the FLSA, NYLL, and CMWA guarantee to employees who work more than 40 hours in a workweek." Dkt. No. 6, ¶ 4. Plaintiffs further allege in the Amended Complaint that "prior to November 2013, MetLife classified these LTD Claim Specialists as hourly employees and paid them overtime." *Id.* at ¶ 5. However, in November 2013, MetLife allegedly "re-classified" these LTDCSs as exempt from overtime pay. *Id.* ¶ 6.

Notice of this action was sent to LTDCSs on February 21, 2019. *See* Dkt. No. 84. Thereafter, several LTDCSs opted-in to the action, including Ms. Carol Hubner on March 20, 2019, Ms. Shaklyn Graulau on March 22, 2019, Ms. Tamitra Harris on February 26, 2019, Ms. Starlene McKenney on April 17, 2019, and Ms. Pamela Koepke on April 22, 2019. Declaration of Melissa C. Rodriguez, dated May __, 2020 ("Rodriguez Decl."), ¶ 2, Ex. 1. On March 6, 2020, Plaintiffs filed the TAC, at which time Ms. Kimberly Harris joined as a third Named Plaintiff. Dkt. No. 120. Plaintiffs further amended their allegations to include claims under Illinois wage law, and revised some of the allegations underlying their claims. *Compare* Dkt. No. 17 *with* Dkt. No. 120.

In the TAC, Plaintiffs continue to allege that prior to November 2013 LTDCSs were classified as non-exempt. *See* Dkt. No. 120, ¶ 5. Ms. McKinney, Ms. K. Harris, Ms. T. Harris, Ms. McKenney, and Ms. Koepke all worked as LTDCSs before November 2013, when Plaintiffs allege they were "re-classified" from non-exempt to exempt employees (*see* Dkt. No. 120, ¶ 6):

| Plaintiff | Dates of employment as LTDCS[3] |
|---|---|
| Tamitra R. Harris | 2/15/13-12/31/18 |
| Starlene McKenney | 10/30/95-9/24/19 |
| Pamela Koepke | 9/13/04-9/24/19 |
| Carol Hubner | 12/1/97-9/24/19 |
| Stephanie McKinney | 9/4/13-7/6/16 |
| Kimberly Harris | 6/2010-8/17/18 |

Rodriguez Decl. ¶ 3, Ex. 2; *see also* Dkt. No. 120 ¶¶ 15, 16. Ms. Graulau worked as an LTDCS from March 16, 2015 through September 24, 2019. *Id.*

Plaintiffs allege that LTDCS duties have not changed since before November 2013. *See* Dkt. No. 120, ¶ 6 (alleging Plaintiffs were reclassified as of exempt in November 2013 "without a corresponding change in job duties"). According to the TAC, prior to November 2013 through the present, Plaintiffs allegedly had "little to no authority to make many claim decisions on their own" (*id.* at ¶ 28), did not exercise independent judgment (*id*. at ¶ 40), had "no authority to negotiate or bind the company" (*id.* at ¶ 42) and that they were "not authorized to carry out major assignments or investigate and resolve matters of significance without guidance." *Id.* at ¶ 44. Plaintiffs allege that these, and other, factual allegations support their claim for monetary damages on the basis of being misclassified as exempt. *Id.*

**B. The Bankruptcy Plaintiffs Failed to Disclose their Claims in Previously Filed Bankruptcies.**

Each of the Bankruptcy Plaintiffs filed for Chapter 7 bankruptcy and had their debts discharged before joining or opting into this litigation:

[3] These dates are as of the last report run on September 24, 2019.

| Plaintiff | Filing Date of Chapter 7 Bankruptcy Petition | Date of Discharge |
|---|---|---|
| Tamitra R. Harris | 8/14/18 | 1/9/19 |
| Starlene McKenney | 4/17/18 | 7/30/18 |
| Pamela Koepke | 12/26/17 | 4/9/18 |
| Carol Hubner | 7/21/17 | 10/31/17 |
| Shaklyn Graulau | 8/23/16 | 1/19/17 |
| Stephanie McKinney | 11/20/13 | 6/3/15 |
| Kimberly Harris | 3/3/14 | 6/10/14 |

Rodriguez Decl. ¶¶ 4-10, Exs. 3-9. Yet, despite clearly being aware of the alleged underlying factual basis of their claims, none of the Bankruptcy Plaintiffs disclosed their alleged claim against MetLife in their respective Chapter 7 bankruptcy filings. *See id.* In fact, in their bankruptcy petitions, the Bankruptcy Plaintiffs denied they had existing contingent claims, including any employment or wage claims. *See id.* Specifically, Ms. Graulau, Ms. T. Harris, Ms. Hubner, Ms. Koepke and Ms. McKenney were each asked whether they had any "[c]laims against third parties, whether or not you have filed a lawsuit or made a demand for payment *Examples: Accidents, employment disputes, insurance claims or rights to sue*," and each answered, "No." *Id.*, Exs. 5-9, Q. 33 (emphasis added); *see also* Q. 34 (representing they had no "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims"). These individuals also explicitly represented that *they had no wages owed to them*. *Id.* at Q. 30. Ms. McKinney and Ms. K. Harris similarly did not disclose they had any claim against MetLife. When asked in their petitions whether they had any "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," Ms. McKinney and Ms. K. Harris each responded "None." *Id.*, Exs. 3-4, Q. 21. In reliance on these representations, each of the Bankruptcy Plaintiffs' debts were discharged on the date set forth above. *See Id.*, Exs. 5-9.

On the basis of these undisputed and admitted (by the Plaintiffs) facts, the Bankruptcy Plaintiffs should be estopped from asserting their misclassification claims against MetLife and

the Bankruptcy Plaintiffs lack standing to bring their claims. Accordingly, their claims should be dismissed.

## III. ARGUMENT

### A. Standard of Review.

Under Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."[4] A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) "is analyzed under the same standard applicable to a motion to dismiss for failure to state a claim pursuant to [Fed. R. Civ. P.] 12(b)(6)." *Patel v. Baluchi's Indian Rest.*, No. 08-9985, 2009 WL 2358620, *2 (S.D.N.Y July 30, 2009). To avoid dismissal under this standard, a complaint must allege "'enough facts to state a claim to relief that is plausible on its face.'" *Azuike v. BNY Mellon,* 962 F. Supp. 2d 591, 596-597 (S.D.N.Y. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a complaint states a claim that is plausible on its face, the Court may "properly consider 'matters of which judicial notice may be taken, or documents either in plaintiff[s'] possession or of which plaintiff[] had knowledge and relied on in bringing suit.'" *Id.* at 597 (quoting *Halebian v. Berv*, 644 F.3d 122, 130 n.7 (2d Cir. 2011)). Particularly applicable here, "the Court may take judicial notice of documents and other related filings made in the Bankruptcy Court." *Lapointe v. Target Corp.*, No. 16- 0216, 2017 WL 1397311, *2, n.1 (N.D.N.Y. Feb. 14, 2017).

A complaint is properly dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) if the plaintiff lacks standing to pursue his or her claims. *See Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001). In deciding a Rule 12(b)(1) motion, this Court may

---

[4] Defendant raised in its Answer to the TAC the affirmative defenses that "Plaintiffs' TAC, in whole or in part, fails to state facts sufficient to state a claim upon which relief may be granted," "Plaintiffs' claims, and the claims of each putative collective or class action member, or some of them, are barred in whole or in part by the doctrine of estoppel," and "Plaintiffs' claims, and the claims of each putative collective or class action member, or some of them, are barred in whole or in part by the doctrine judicial estoppel, lack of standing and/or lack of capacity." Dkt. No. 144, pp. 22 ¶¶ 1, 3, and 26 ¶ 24.

consider evidence outside of the pleadings, such as by declaration or otherwise, which are germane to the question of the Court's subject matter jurisdiction. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); *TradeComet.com LLC v. Google, Inc.*, 693 F. Supp. 2d 370, 375 n.3 (S.D.N.Y. 2010).

**B. The Bankruptcy Plaintiffs Are Estopped from Bringing the Claims Asserted in the Third Amended Complaint.**

"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Amash v. Home Depot U.S.A., Inc.*, 503 B.R. 232, 236 (N.D.N.Y. 2013) (citing *Rodal v. Anesthesia Grp. of Onondaga, P.C.* 369 F.3d 113, 118 (2d Cir. 2004)). The doctrine is intended "to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001); *see also Oneida Motor Freight, Inc., v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988), *cert. denied*, 488 U.S. 967 (1988) (debtor's failure to list claims against a creditor "worked in opposition to preservation of the integrity of the system which the doctrine of judicial estoppel seeks to protect," and debtor is therefore estopped from bringing such claims). "A party invoking judicial estoppel must show that (1) the party against whom the estoppel is asserted took an inconsistent position in a prior process and (2) that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Lapointe*, 2017 WL 1397311, at *5 (holding plaintiff was judicially estopped from bringing claims under FLSA that were not disclosed in his prior bankruptcy) (quoting *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015). Both factors preclude the Bankruptcy Plaintiffs from asserting their claims in this case.

First, the Bankruptcy Plaintiffs plainly advanced an inconsistent position to the bankruptcy courts presiding over their cases by representing they had no claims despite the

current overtime claim having already accrued and having knowledge of the facts upon which their claims in this case are based. *See Amash*, 503 B.R. at 236 (holding that a debtor advanced an inconsistent position in the bankruptcy court when he claimed "that he had no claims or lawsuits when, in fact, he had the claims that [were] the subject of the instant litigation"). Five of the Bankruptcy Plaintiffs—Ms. Graulau, Ms. T. Harris, Ms. Hubner, Ms. Koepke and Ms. McKenney—specifically represented that they were not owed any wages and that they did not have any employment disputes against anyone, and yet they each now assert those exact claims stemming from facts arising before they filed for bankruptcy. *Compare* Rodriguez Decl. Exs. 5-9 *with* Dkt. No. 120. The two remaining Bankruptcy Plaintiffs—Ms. McKinney and Ms. K. Harris—represented that they had no contingent claims against anyone, and they, too, now assert claims against MetLife premised on conduct predating their bankruptcy filings. *Compare* Rodriguez Decl. Exs. 3, 4 *with* Dkt. No. 120. Accordingly, the first prong is easily met.

Second, each of the Bankruptcy Plaintiffs successfully persuaded the bankruptcy courts to adopt their inconsistent position when the courts discharged their debts. *See Lapointe*, 2017 WL 1397311, at *2; *see also Galin v. United States*, No. 08-2508, 2008 WL 5378387, at *10 (E.D.N.Y. Dec. 23, 2008) (holding that the bankruptcy court adopted a debtor's position by confirming a bankruptcy plan); *Guay v. Burack*, 677 F.3d 10 (1st Cir. 2012) ("A bankruptcy court 'accepts' a position taken in the form of omissions from bankruptcy schedules when it grants the debtor relief, such as discharge, on the basis of those filings."). This prong is, therefore, also easily met.

Accordingly, because the Bankruptcy Plaintiffs took the position before the bankruptcy court that their claims in the instant lawsuit have no monetary value by failing to list such claims as an asset in their respective bankruptcy proceeding as required by law, and the bankruptcy courts adopted those representations when the courts discharged their debts, they are judicially

estopped from seeking any monies in connection with those claims in this Court. *See Grammer v. Mercedes Benz of Manhattan/Mercedes Benz USA, LLC*, No. 12-6005, 2014 WL 1040991, at *4 (S.D.N.Y. Mar. 13, 2014) ("Because the bankruptcy court adopted [Grammar's] representation that [his employment discrimination] claim did not exist when it discharged his debts and closed the [Chapter 7] bankruptcy case and Grammar failed to disclose his EEOC claim, there are clear grounds for dismissing this case on the basis of judicial estoppel.") (quotation and citation omitted)(alterations in original); *see also Rodriguez-Torres v. Gov. Dev. Bank of P.R.,* 750 F. Supp. 2d 407 (D.P.R. 2010) ("nondisclosure of claims as assets in bankruptcy proceedings in order to litigate those claims independently constitutes *a palpable fraud that the court will not tolerate, even passively*.") (emphasis added) (citation omitted); *Amundaray-Rodriguez v. Garcia*, No. 10-2258, 2011 WL 5117122, at *2 (D.P.R. Oct. 26, 2011) (finding judicial estoppel applied where plaintiffs would receive a "windfall" for failing to disclose their claims); *see also Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 325 (3d Cir. 2003) ("[a]pplying a lesser sanction here …would reward [Plaintiff] for what appears to be duplicitous conduct in the course of [his] bankruptcy proceeding … In addition, the integrity of both the bankruptcy process and the judicial process would suffer . . . .").

### C. The Bankruptcy Plaintiffs' Failure to Disclose Their Claims Was Not a Product of Inadvertence or Good-Faith Mistake.

Courts within the Second Circuit "have ruled that failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has (1) no knowledge of the claims, or (2) no motive to conceal the claims." *Azuike,* 962 F. Supp. 2d at 599 (internal quotations omitted) (citing cases). Plaintiffs cannot meet either of these conditions.

1. The Bankruptcy Plaintiffs cannot claim they did not have knowledge of the claims.

With respect to having knowledge of the claims, "if a debtor is aware of facts that may give rise to a cause of action, then it is a known cause of action such that it must be disclosed." *Amash*, 503 B.R. at 236. A debtor does not need to have actually filed a claim to trigger the debtor's obligation to disclose it. *See Sea Trade Co. v. FleetBoston Fin. Corp.,* No. 03-10254, 2008 WL 4129620, at *12 (S.D.N.Y. Sept. 4, 2008) ("[I]t is well-settled that a debtor who seeks bankruptcy protection in the United States must list as an asset any accrued cause of action, regardless of whether the action has been filed") (emphasis added). Moreover, "[t]he duty to disclose still arises even if the debtor does not know the legal basis for this potential cause of action." *In re Prisco*, No. 11-0474, 2012 WL 4364311, at *4 (N.D.N.Y. Sept. 24, 2012). Indeed, the debtor need "not know all facts or even the legal basis for the cause of action; rather, if the debtor has enough information. . .prior to confirmation to suggest that it may have a possible cause of action, then that is a 'known' cause of action such that it must be disclosed. Any claim with potential must be disclosed, even if it is contingent, dependent, or conditional." *Sea Trade Co*., 2008 WL 41296920, at *12 (citation omitted); *see also Lapointe*, 2017 WL 1397311, at *6 ("Although Plaintiff argues that he did not intentionally omit these claims because he did not believe that he had a viable legal claim. . . it is apparent (based upon the deposition testimony summarized in Defendant's memorandum of law) that he was certainly aware of the possibility of a viable legal claim based upon the information he knew at the time.").

Here, the record belies any contention that the Bankruptcy Plaintiffs did not have enough information necessary to be aware that they may have a possible claim when they filed for bankruptcy. For instance, six of the seven Bankruptcy Plaintiffs were employed by MetLife prior to November 2013, at which time they allege they were classified as non-exempt

employees *and received overtime pay*. Dkt. No. 120 ¶ 5. They further allege that after November 2013, they stopped receiving overtime pay, but that their duties had not changed. *Id*. at ¶ 6. These alleged facts underlie their claim for monetary damages based on being misclassified by MetLife as exempt employees. *See generally id.* Accordingly, as early as November 2013, these Bankruptcy Plaintiffs (all but Ms. Graulau) had facts sufficient to suggest they may have a possible claim against MetLife, and yet they did not disclose that claim in their subsequent bankruptcy filings.

Ms. Graulau (and all of the Bankruptcy Plaintiffs) also had enough facts to suggest she had a claim against MetLife before filing her bankruptcy petition. Plaintiffs allege that throughout their employment they had no discretion, exercised no independent judgment, and had no authority to bind the company or carry out "major assignments." Dkt No. 120 ¶¶ 40-48. They further allege that they regularly worked over 40 hours a week and did not receive overtime pay. *Id.* ¶ 7. These allegations demonstrate the Bankruptcy Plaintiffs had more than enough information to know they had a possible claim against MetLife that should have been disclosed in their bankruptcy filings, but was not. *See Pray v. Long Island Bone & Joint, LLP,* No. 14-5386, 2016 WL 9455557, at *8 (E.D.N.Y. Aug. 11, 2016) (finding plaintiff was aware of "the facts that formed the basis of her present claims" when she filed for bankruptcy where plaintiff alleged that "the Defendants required Plaintiff to work, and Plaintiff did in fact work, between forty-four and forty nine hours per week, each and every week," . . . but failed to pay her for "hours ... she worked ... in excess of forty per week.")

Moreover, the fact that the Bankruptcy Plaintiffs were represented by counsel during their bankruptcy proceedings further supports a finding that they had knowledge of their claims. *See Coffaro v. Crespo*, 721 F. Supp. 2d 141, 147 (E.D.N.Y. 2010); *see also Pray*, 2016 WL 9455557, at *8 ("Indeed, that Plaintiff was represented by counsel when she filed her bankruptcy

petition belies her position that she was unaware of the claims she asserts in this action."). It is of no moment whether their counsel advised them they did not have any claims or did not ask them about their claims as "legal advice and ignorance of the law are not defenses to judicial estoppel." *Galin v. IRS*, 563 F. Supp. 2d 332, 341 (D. Conn. 2008) (applying judicial estoppel against plaintiff who, at the time of her bankruptcy petition, did not realize that she had a potential property interest under the law).

2. The Bankruptcy Plaintiffs cannot claim they had no motive to conceal their current claim from the bankruptcy court.

The Bankruptcy Plaintiffs stood to benefit from not disclosing their overtime claims, as the omission ensured that the claims would not fund distributions to creditors. *See Azuike*, 962 F. Supp. 2d at 600 ("[P]laintiff plainly had a motive to conceal his EEOC claim. Had the trustee known about the claim [he] might have attempted to sell the claim or to have extracted a settlement from the defendants in this case for the benefits of [plaintiff]'s creditors. The concealment of [plaintiff]'s claims, by contrast, would put any recovery on the claim beyond the reach of his creditors."). The Bankruptcy Plaintiffs similarly had a motive to conceal their claims. *See Gaskins v. Thousand Trails, LP*, 521 F. Supp. 2d 693, 697-98 (S.D. Ohio 2007) ("a debtor always has a motive for concealing potential causes of action in order to minimize income and assets."); *Amash*, 503 B.R. at 237 ("the reasonable inference may be drawn that Plaintiff had a motive to conceal the claims from the instant and predecessor litigations, that is, he concealed this 'asset' in order to have his bankruptcy reorganization plan approved and to obtain re-classification of his debt"). Here, the Bankruptcy Plaintiffs' failure to disclose their claims prevented each trustee and bankruptcy court from seeking and then distributing to creditors the alleged monetary damages sought in this case. Instead, the Bankruptcy Plaintiffs seek those monies free and clear, with the creditors taking nothing. Their motive is evident.

3. That the Bankruptcy Plaintiffs did not reopen their bankruptcy petitions when they joined or opted in to this action further underscores that their nondisclosure was not in good faith.

"'The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court; rather, the debtor must amend [her] financial statements if circumstances change.'" *Lapointe*, 2017 WL 1397311, at *7 (quoting *Robinson v. Tyson Foods, Inc.*, 595 F.3d 1269, 1274 (11th Cir. 2010)). After joining this action or receiving notice of their claims shortly after their bankruptcy cases closed, the Bankruptcy Plaintiffs did not move to reopen and amend their bankruptcy proceedings. Most egregiously, Ms. T. Harris's debts were discharged by the bankruptcy court less than two months before she opted into this action, yet she did not reopen her bankruptcy to disclose her claim. *See* Rodriguez Decl. ¶ 6, Ex. 5. Ms. McKenney and Ms. Koepke opted-in within a year of having their debts discharged and did not reopen their bankruptcies to disclose the claims. *Id.* at ¶¶ 7,8, Exs. 6,7 Notably, though Ms. McKinney joined this action just two years after her debts were discharged, she also filed a claim for her wages with the Connecticut Department of Labor on February 19, 2016—just nine months after discharging her debts in bankruptcy. *Compare* Rodriguez Decl. ¶ 4, Ex. 3 *with* Dkt. No. 120 ¶ 36. Accordingly, the Bankruptcy Plaintiffs' conduct belies any claim that they were acting in good faith when they failed to disclose the claims they assert now. *See Lapointe*, 2017 WL 1397311, at *7 (finding further evidence of bad faith where "Plaintiff commenced this action approximately four-and-a-half years after he was discharged from bankruptcy and, therefore, had ample opportunity to amend his disclosures.").

Accordingly, the Bankruptcy Plaintiffs are judicially estopped from bringing their claims in this action, and they must be dismissed.[5]

[5] To the extent Ms. McKinney is the purported representative of a putative Connecticut state law class, and Ms. K. Harris is the purported representative of a putative Illinois state law class, the Connecticut and Illinois classes must also be dismissed.

**D. The Bankruptcy Plaintiffs Lack Standing to Bring the Claims**

"When, as here, a debtor fails to list a claim in his [or her] bankruptcy schedules, that claim remains the property of the bankruptcy estate even after discharge, and the debtor lacks standing to pursue it." *Coffaro*, 721 F. Supp. 2d at 148 (internal citations omitted). This is because, under the Bankruptcy Code, "all legal or equitable interests of the debtor in property as of the commencement of the case" become part of the bankruptcy estate. 11 U.S.C. § 541(a)(1). As the Second Circuit has explained, "Section 541 of the Bankruptcy Code provides that the commencement of a bankruptcy case creates an estate, to be comprised of 'all legal and equitable interests' of the debtor, 'wherever located and by whomever held.' The scope of this section is broad, and is intended to maximize the amount of property available for distribution to creditors according to priorities established by the Code." *Musso v. Ostashko*, 468 F.3d 99, 104 (2d Cir. 2006) (internal citation omitted).

Here, as discussed above, *supra* III.C., the Bankruptcy Plaintiffs' claims in this action accrued before they filed for bankruptcy. As a result, any interest they have in this action belongs to their respective estates, and only the trustees of those estates, and not the Bankruptcy Plaintiffs, have standing to pursue their claims in this action. *See Coffaro*, 721 F. Supp. 2d at 148; *Grammer*, 2014 WL 1040991, at *3 *see also Vidal v. Doral Bank Corp*, 363 F. Supp. 2d 19, 22 (D.P.R. 2005) ("a Trustee is the real party in interest with *exclusive standing* to assert claims which are property of the bankruptcy estate") (emphasis added); *Welsh v. Quabbin Timber, Inc.*, 199 B.R. 224, 229 (D. Mass 1996) ("courts have held that because an unscheduled claim remains the property of the bankruptcy estate, the debtor lacks standing to pursue the claims after emerging from bankruptcy, and the claims must be dismissed") (internal citation omitted); *Pinto v. Ancona*, 692 N.Y.S.2d 128, 129 (N.Y. App. Div. 1999) (holding that patient who failed to disclose malpractice action in bankruptcy petition lacked capacity to commence malpractice

action, as his causes of action had vested in the bankruptcy trustee). The claims of the Bankruptcy Plaintiffs must, therefore, be dismissed for lack of standing.

## IV. CONCLUSION

Because the Bankruptcy Plaintiffs advanced inconsistent positions in the bankruptcy court and this Court, and the bankruptcy court adopted their positions when it discharged their respective debts, the Bankruptcy Plaintiffs are estopped from bringing their claims now and they should be dismissed. Additionally, because the Bankruptcy Plaintiffs' claims accrued before they filed for bankruptcy and the bankruptcy court discharged their debts, their claims belong solely to the bankruptcy estate and the Bankruptcy Plaintiffs lack standing to pursue them.

Dated: June 8, 2020

MORGAN, LEWIS & BOCKIUS LLP

By: /s/ *Christopher A. Parlo*

Christopher A. Parlo
Melissa C. Rodriguez
Ashely Hale
101 Park Avenue
New York, New York 10178

*Attorneys for Defendant*