USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/06/2020

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEBRA JULIAN, et al.

        Plaintiffs,

-against-

METROPOLITAN LIFE INS. CO.,

        Defendant.

17-CV-957 (AJN) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

The Court has determined that Exhibit F to the Declaration of Michael Palmer, which is now filed under temporary seal (Dkt. No. 164-6), cannot remain sealed under the standards set forth in *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006), and its progeny. Consequently, Exhibit F, together with references to that exhibit in the parties' briefs and letters, will be unsealed and appear on the public docket.

## Background

Plaintiffs in this action are Long Term Disability (LTD) Claim Specialists who allege that Metropolitan Life Insurance Company (MetLife) misclassified them as exempt employees and consequently failed to pay them overtime compensation as required by federal, New York, Connecticut, and Illinois law. Plaintiffs first asserted claims under Connecticut law on March 2, 2017, when they filed their Amended Complaint (Dkt. No. 6), joining Connecticut resident Stephanie McKinney as a plaintiff. They first asserted claims under Illinois law on March 6, 2020, when they filed their Third Amended Complaint, joining Illinois resident Kimberly Harris as a plaintiff. (Dkt. No. 120.)

On May 1, 2020, MetLife filed a motion to dismiss and/or strike what it characterizes as the "untimely portions" of plaintiffs' putative class claims under Connecticut and Illinois law. (Dkt. No. 142.) The parties agree that plaintiff's Connecticut claims are subject to a two-year statute of

limitations. *See* Conn. Gen. Stat. § 52-596. According to MetLife, this means that any Connecticut claims arising on or before March 2, 2015 – two years prior to the filing of the Amended Complaint – are time-barred, with the exception of McKinney's individual claims, which were tolled on February 19, 2016, when she filed an administrative complaint with the Connecticut Department of Labor (DOL) seeking overtime wages. Def. Mem. (Dkt. No. 143) at 6 (arguing that although Connecticut law provides for the two-year limitations period to be tolled upon the filing of a DOL complaint, "there is no legal basis for extending such tolling beyond the individual claims of Ms. McKinney"). According to plaintiffs, however, the statute of limitations for *all* Connecticut plaintiffs extends back to September 20, 2014 – two years before McKinney filed her DOL claim – because "[c]orrespondence surrounding the claim and investigation plainly put MetLife on notice that Ms. McKinney was not raising individual circumstances but a class-based claim affecting all LTD Claim Specialists." Pl. Mem. (Dkt. No. 161) at 3.

The motion to dismiss remains *sub judice*. The narrow question now before the Court is whether portions of the "[c]orrespondence surrounding [McKinney's] claim and investigation," which plaintiffs submitted in opposition to that motion, qualify for sealing under *Lugosch*. When plaintiffs filed the Declaration of Michael Palmer (Dkt. No. 162), they redacted Exhibit F – as well as two sentences in their opposition memorandum discussing Exhibit F – and filed the unredacted declaration and memorandum separately, under temporary seal (Dkt. Nos. 163, 164), explaining in a letter dated May 29, 2020 (Dkt. No. 160) that they did so only because defendant had designated Exhibit F "confidential" and requested sealing. In a letter dated June 3, 2020 (Def. Ltr.) (filed under temporary seal at Dkt. No. 165), defendant requests that Exhibit F and references thereto remain under seal. In a letter dated June 8, 2020 (Pl. Ltr.) (filed under temporary seal at Dkt. No. 173), plaintiffs argue that sealing would be inappropriate.

Plaintiffs are correct.

### Exhibit F

Exhibit F is an email chain dated August 2 and 3, 2016, between David Warren, an in-house attorney for MetLife, and Yaya Peretto, a wage and hour investigator for the DOL. In her August 2 email, Peretto states that she has spoken to her supervisor and concluded that McKinney "and those who work in the same capacity" are not exempt from Connecticut's overtime laws as "administrative" employees. Therefore, Peretto concludes, McKinney was not "properly paid for hours worked in excess of forty in a work week." Warren replies, on August 3, "We disagree with your decision, but look forward to your final letter of determination." As events transpired, the DOL never issued a final determination. Instead, according to defendant, the DOL "unsuccessfully attempted to broker an *individual* settlement between the Company and Ms. McKinney," but McKinney ultimately "decided not to settle her *individual* claim or further pursue a remedy with the Connecticut DOL, choosing instead to exercise her right to take her claim to Court." Def. Mem. at 3 (emphases in the original). On February 7, 2017, McKinney filed a putative class action complaint in the District of Connecticut, *see* Palmer Decl. ¶ 4 & Ex. A, and on March 2, 2017, as noted above, she joined this action as a plaintiff.

MetLife marked the email chain "confidential" when it was produced in discovery, and now argues that it should remain under seal because it "appears to reflect the beginning of settlement negotiations between [Warren] and the CT DOL investigator handling McKinney's administrative claim," and therefore should be "withheld from public disclosure." Def. Ltr. at 3. Additionally, defendant argues, the correspondence "would result in unfair prejudice to Defendant, as it may be misconstrued by the public as an admission of liability," could "encourage additional meritless lawsuits against Defendant," and might "lend itself to the **grossly incorrect** belief that

3

the CT DOL determined that all of Defendant's employees in Plaintiff McKinney's position were improperly classified as exempt employees," when in fact – as other documents make clear – "**NO** such determination was reached." *Id*. (emphases in the original). MetLife has not objected to the public filing of other emails between Warren and Peretto during the pendency of the McKinney's DOL proceeding. *See*, *e.g*., Palmer Decl. Exs. B-E (Dkt. Nos. 162-2, 162-3, 162-4, 162-5.).

Plaintiffs challenge MetLife's characterization of the communications in question as settlement-related, noting that there is no discussion of settlement in the emails themselves. Pl. Ltr. at 3. Later communications between MetLife and the Connecticut DOL are clearly recognizable as settlement discussions; however, those emails (which were never designated confidential in discovery) were exchanged months later, from November 2 through December 2, 2016. *Id*. Ex. A. Plaintiffs also reject defendant's argument that Exhibit F might be "misconstrued by the public" or encourage meritless lawsuits, calling it "baseless conjecture" which "cannot form the basis for sealing." *Id*. at 3.

## Analysis

There is a "general presumption in favor of public access to judicial documents." *Collado v. City of New York*, 193 F.Supp.3d 286, 288 (S.D.N.Y. 2016). The presumption of access, which is rooted both in the common law and the First Amendment, is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) (*Amodeo II*). Therefore, motions to seal documents filed in a lawsuit must be "carefully and skeptically review[ed] . . . to insure that there really is an extraordinary circumstance or compelling need" to prevent the public from seeing such documents. *In re Orion Pictures Corp.*, 21 F.3d 24, 27 (2d Cir. 1994).

In *Lugosch*, the Court of Appeals articulated a three-step process for determining whether a document may be sealed. First, the court must determine whether the document is a "judicial document" to which the presumption of access attaches. *Lugosch*, 435 F.3d at 119. "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995)). If the document is a "judicial document," the court must determine the weight of the presumption of access. *Id.* "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (quoting *Amodeo II,* 71 F.3d at 1049). "[D]ocuments submitted to a court for its consideration in a summary judgment motion are – as a matter of law – judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment." *Id.* at 121. Finally, the court must "balance competing considerations," if any, including "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Id.* at 120 (quoting *Amodeo II*, 71 F.3d at 1050).

Documents may be sealed only if "specific, on the record findings are made demonstrating that closure [of the record] is essential to preserve higher values and is narrowly tailored to preserve that interest. Broad and general findings by the trial court . . . are not sufficient to justify closure." *Lugosch*, 435 F.3d at 120 (quoting *Matter of New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)) (internal citations omitted). "The party seeking the sealing of judicial documents bears the burden of showing that higher values overcome the presumption of public access." *Alexandria*

5

*Real Estate Equities, Inc. v. Fair*, 2011 WL 6015646, at *2 (S.D.N.Y. Nov. 30, 2011) (citing *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997)).

Although the papers at issue in *Lugosch* were filed in connection with a summary judgment motion, it is well-settled that "[c]ourt filings in connection with a motion to dismiss are likewise judicial documents," *Alcon Vision, LLC v. Lens.com*, 2020 WL 3791865, at *6 (E.D.N.Y. July 7, 2020), "and are generally entitled to a strong presumption of public access." *Id*. *See also Carbon Inv. Partners, LLC v. Bressler*, 2020 WL 5441497, at *2 (S.D.N.Y. Sept. 10, 2020) (quoting *Brown v. Maxwell*, 929 F.3d 41, 49 (2d Cir. 2019)) (exhibits "appended to Defendant's motion to dismiss" "easily qualify as judicial documents," having been filed "precisely because they 'reasonably have the tendency to influence a district court's ruling on a motion or in the exercise of its supervisory powers'"); *City of Almaty, Kazakhstan v. Ablyazov*, 2019 WL 4747654, at *5 (S.D.N.Y. Sept. 30, 2019) ("Documents submitted in support or opposition to a motion to dismiss are judicial documents."); *Omari v. Ras Al Khaimah Free Trade Zone Auth.*, 2017 WL 3896399, at *14 (S.D.N.Y. Aug. 18, 2017) (document "properly introduced" in support of a motion to dismiss was a judicial document, "even though the Court did not rely on it"), *aff'd sub nom. El Omari v. Kreab (USA) Inc.*, 735 F. App'x 30 (2d Cir. 2018); *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 166 (S.D.N.Y. 2018) (quoting *Lugosch*, 435 F.3d at 126) ("documents filed in connection to a Motion to Compel Arbitration or Dismiss 'are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment.'").

The only remaining question, therefore, is whether "higher values," *Alexandria Real Estate Equities*, 2011 WL 6015646, at *2, overcome the presumption of public access to Exhibit F. MetLife has failed to carry its burden on this point. First, the mere fact that a document was marked "confidential" during discovery does not establish that sealing is required. *See Lugosch*, 435 F.3d

6

at 126; *Republic of Turkey v. Christie's Inc.*, 425 F. Supp. 3d 204, 221 (S.D.N.Y. 2019) (quoting *Aioi Nissay Dowa Ins. Co. v. ProSight Specialty Mgmt. Co., Inc.*, 2012 WL 3583176, at *6 (S.D.N.Y. Aug. 21, 2012)) ("the mere existence of a confidentiality agreement covering judicial documents is insufficient to overcome the First Amendment presumption of access.").

Second, Met Life has not shown that Exhibit F is a settlement-related communication entitled to the protection of Fed. R. Evid. 408(a). Plaintiffs are correct that there is no discussion of settlement in the email chain itself. One or both parties may well have begun to *think* about settlement by the time those emails were sent, but since most parties, in most cases, are (or should be) thinking about settlement from the outset, this cannot be grounds for sealing a judicial document absent more concrete "countervailing factors." *Republic of Turkey*, 425 F. Supp. 3d at 221 (quoting *Utica Mut. Ins. Co. v. Munich Reinsurance Am., Inc.*, 2017 WL 9400673, at *3 (N.D.N.Y. Jan. 6, 2017)). In any event, while Rule 408(a) generally makes settlement communications inadmissible "either to prove or disprove the validity or amount of a disputed claim," or for impeachment, "[t]he court may admit [such] evidence for another purpose." Fed. R. Evid. 408(b). Here, plaintiffs submit Exhibit F for the limited purpose of showing that McKinney was "not raising individual circumstances but a class-based claim affecting all LTD Claim Specialists." Pl. Mem. at 3.

Third, MetLife's asserted fear that "the public" might misconstrue Exhibit F as "an admission of liability," resulting in "additional meritless lawsuits," Def. Mem. at 3, lacks any foundation in the document itself. Just as there is no discussion of settlement in Exhibit F, neither is there any "admission of liability." Moreover, the Court conditionally certified a collective action more than two and a half years ago (Dkt. No. 65), after which almost 80 plaintiffs "opted in" to this action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). Plaintiffs' class

certification motion with respect to their state law claims is due on December 23, 2020. (Dkt. No. 218.) On this record, the likelihood that MetLife will face additional lawsuits (meritless or otherwise) because Exhibit F is unsealed appears extremely remote. In any event, the courts generally reject negative publicity "as a basis for overcoming the strong presumption of public access to [the allegedly prejudicial] items." *Centauri Shipping Ltd. v. W. Bulk Carriers KS*, 528 F. Supp. 2d 197, 205 (S.D.N.Y. 2007); *see also Lugosch,* 435 F.3d at 123 n. 5 (quoting *Brown & Williamson Tobacco v. FTC,* 710 F.2d 1165, 1180 (6th Cir.1983)) ("[T]he natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public . . . cannot be accommodated by the courts without seriously undermining the tradition of an open judicial system.").

## Conclusion

For the reasons set forth above Metlife's sealing application is DENIED. The unredacted version of the Palmer Declaration (including Exhibit F) will be unsealed on **Friday, October 9, 2020**, along with plaintiff's unredacted brief in opposition to the motion to dismiss and both sides' letter-briefs submitted with regard to the sealing issue itself.

The Clerk of Court is respectfully directed to close the letter-motion at Dkt. No. 160.

Dated: New York, New York
October 6, 2020

**SO ORDERED.**

**BARBARA MOSES**
**United States Magistrate Judge**