```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  3/31/21
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Julian, *et al.*, *on behalf of themselves and others similarly situated*,<br><br>                    Plaintiffs,<br><br>        –v–<br><br>Metropolitan Life Insurance Company,<br><br>                    Defendant. | 17-cv-00957 (AJN)<br><br>MEMORANDUM<br>OPINION & ORDER |

ALISON J. NATHAN, District Judge:

Plaintiffs bring claims against former employer for violation of wage and overtime requirements of the FLSA. Defendant moves for judgment on the pleadings as to certain Plaintiffs who assert claims that they failed to disclose in prior bankruptcy proceedings. For the reasons that follow, that motion is GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND

### A. Plaintiffs' Allegations

According to Plaintiffs' Third Amended Complaint, Plaintiffs and the class members are all former or current LTD Claim Specialists for Defendant Metropolitan Life Insurance Company, a corporation organized under New York State laws and headquartered in New York City. Dkt. No. 120 ¶ 14-17, 19, 27. Defendant provides life insurance, annuities, employee benefit and asset management to clients throughout the United States. *Id*. ¶ 17. In order to fulfill the basic requirements of the LTD Claim Specialist position, which included collecting information on potential claimants and providing them to supervisory staff, Plaintiffs allege that they typically worked more than 40 hours per week and instead regularly worked between 45-60

hours per week.  *Id.* ¶ 18, 27-29.  Until November of 2013, Defendant classified LTD Claim Specialists as "non-exempt" from overtime compensation and the LTD Claim Specialists received overtime pay when they worked more than 40 hours a week, which occurred regularly. *Id*. ¶ 33-34.  In November of 2013, MetLife re-classified LTD Claim Specialists as "exempt" from overtime compensation despite not changing the job responsibilities.  *Id*. ¶ 33.  As a result of the re-classification, the LTD Claims Specialists did not receive overtime compensation for working more than 40 hours in a given week.  *Id*. ¶ 35.

### B.  Bankruptcy Proceedings

At various points prior to the filing of this lawsuit, certain Plaintiffs filed voluntary petitions for Chapter 7 bankruptcy and eventually received a discharge from the bankruptcy courts.  *See* Dkt. No. 172 and attached exhibits.  Plaintiff McKinney filed on November 20, 2013 and received a discharge on February 19, 2014, Plaintiff Kimberly Harris filed on March 3, 2014 and received a discharge on June 10, 2014, Plaintiff Tamitra Harris filed on August 14, 2018 and received a discharge on January 9, 2019, Plaintiff Pamela Koepke filed on December 26, 2017 and received a discharge on April 9, 2019, and Plaintiff Hubner filed on July 21, 2017 and received a discharge on October 31, 2017.  *Id.*

As a part of these bankruptcy proceedings, each Plaintiff was asked to disclose whether they had any legal claims, contingent or otherwise.   Plaintiffs Stephanie McKinney and Kimberly Harris were asked during the proceedings whether they had any "[o]ther contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims," and both checked "None."  *Id.*  During Tamitra Harris, Pamela Koepke, and Carol Hubner's proceedings, they were asked whether they had any "[c]laims against third parties,

whether or not you have filed a lawsuit or made a demand for payment" with "employment disputes" included in the examples, and all responded "No." *Id.*

### C. Procedural Background

On February 8, 2017, Plaintiff Debra Julian (whose claims are not challenged in the Motion) filed the initial complaint, alleging an overtime class action under the FLSA and the New York Labor Law.  Dkt. No. 1.  Plaintiff McKinney later joined the suit with the filing of the First Amended Complaint on March 2, 2017, adding class claims under the Connecticut Minimum Wage Act.  Dkt. No. 6.  Plaintiffs Julian and McKinney filed the Second Amended Complaint on March 24, 2017. Dkt. No. 17.  On March 22, 2018, their motion for conditional certification was granted.  Dkt. No. 65.

On May 6, 2019, Plaintiffs filed a number of Consent to Join forms, including those executed by Tamitra Harris on February 26, 2019 and Carol Hubner on March 8, 2019.  Dkt. No. 85.  On May 14, 2019, Plaintiffs filed another batch of Consent to Join forms, including the one executed by Pamela Koepke on April 22, 2019.  Dkt. No. 90.  Each of the Consent to Join forms affirmed that the opt-in was employed as an LTD Claim Specialist, or Senior LTD Claim Specialist, at some point from April 30, 2015 to the present and worked over 40 hours at least one week, for which the opt-in was not paid overtime.  Dkt. Nos. 85, 90.

The Third Amended Complaint was filed on March 6, 2020 by Plaintiffs Julian, McKinney, and Kimberly Harris. Defendant filed its Answer on May 1, 2020. Dkt. No. 120.

 On June 8, 2020, Defendant filed the instant motion for partial judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) and 12(b)(1), as to the claims of Plaintiffs Stephanie McKinney and Kimberly Harris, and opt-in Plaintiffs Tamitra Harris, Hubner, Koepke, Graulau and McKenney, on the grounds that the claims were not disclosed in those Plaintiffs' individual

bankruptcies.  Dkt. No. 107.  Defendant later withdrew the Motion as to Plaintiffs Graulau and McKenney.  Dkt. Nos. 191, 198.  On July 9, 2020, Plaintiffs filed their memorandum of law in opposition to the Motion, supported by the Declarations of Plaintiffs Hubner, Kimberly Harris, Tamitra Harris, Koepke, and McKinney.   Dkt. Nos. 192-197. Defendant filed its reply memorandum on July 27, 2020.  Dkt. No. 200.  On September 2, 2020, Plaintiffs submitted a letter providing an update on their communications with the bankruptcy trustees in the underlying bankruptcy proceedings.  Dkt. No. 205.

## II.    LEGAL STANDARD

"Pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, any party may request judgment on the pleadings 'after the pleadings are closed – but early enough not to delay trial." *Lopez v. Bonanza.com, Inc.*, 2019 WL 5199431, at *7 (S.D.N.Y. Sept. 30, 2019) (quoting Fed. R. Civ. P. 12(c)). "The standard for evaluating a Rule 12(c) motion is 'the same standard applicable to dismissals pursuant to [Rule] 12(b)(6).'" *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010)). "To survive a Rule 12(c) motion, [plaintiffs'] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hayden*, 594 F.3d at 160.

"In deciding a motion for judgment on the pleadings, a court may consider the pleadings and attached exhibits, statements or documents incorporated by reference, and matters subject to judicial notice." *Lopez*, 2019 WL 5199431, at *7 (quoting *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 410 (S.D.N.Y. 2006)). Further, "it is proper to consider public documents on a motion to dismiss to determine whether claims are barred by prior litigation." *Cowan v. Ernest Cordelia, P.C.*, 2001 WL 856606, at * 1 (S.D.N.Y. July 30, 2001). "[C]ourts routinely take judicial notice of documents filed in other courts" to establish the

existence of those records.  *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991). *See also Lapointe v. Target Corp.*, 2017 WL 1397311, at *2 n.1 (N.D.N.Y. Feb. 14, 2017) ("the Court may take judicial notice of documents and other relating filings made in the bankruptcy Court.").

"A party may raise a defense of res judicata, collateral estoppel, or judicial estoppel on a motion to dismiss pursuant to Rule 12(b)(6) where the basis for that defense is set forth on the face of the complaint or established by public record." *Evercrete Corp. v. H-Cap Ltd.*, 429 F. Supp. 2d 612, 620 (S.D.N.Y. Apr. 27, 2006) (collecting cases).

## III.    DISCUSSION

Defendant moves to dismiss under Fed. R. Civ. P. 12(c) and 12(b)(1) the claims of named Plaintiffs Stephanie McKinney and Kimberly Harris, as well as opt-in Plaintiffs Tamitra Harris, Pamela Koepke, and Carobl Hubner, on the grounds they did not disclose this litigation as an asset during their respective bankruptcy proceedings.  For the reasons that follow, the Court grants Defendant's motion for judgment on the pleadings on all Plaintiffs pre-petition claims under the doctrine of judicial estoppel.

Defendant argues that the doctrine of judicial estoppel bars Plaintiffs from seeking relief in this Court for claims that they failed to disclose in their bankruptcy proceedings.  "[T]he party asserting judicial estoppel must show" the "two prerequisite elements," which are "(i) that the party against whom estoppel is asserted took an inconsistent position in a prior proceeding and (ii) that that position was adopted by the first tribunal in some manner, such as by rendering a favorable judgment." *Clark v. AII Acquisition, LLC*, 886 F.3d 261, 266 (2d Cir. 2018) (quotations omitted). However, "judicial estoppel is not a mechanical rule" and thus even where the prerequisites are met, courts still "must inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of [judicially estopping a litigant]." *Id.* at 266-67.  In particular,

"[b]ecause this doctrine is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain." *Adelphia Recovery Trust v. Goldman, Sachs & Co.*, 748 F.3d 110, 116 (2d Cir. 2014).

Moreover, application of judicial estoppel to this specific context is not novel. "Courts frequently invoke judicial estoppel to prevent a party who failed to disclose a claim in bankruptcy proceedings from asserting that claim in a subsequent action." *Sea Trade Co. v. FleetBoston Fin. Corp.*, 2008 WL 4129620, at *5 (S.D.N.Y. Sept. 4, 2009), *aff'd sub nom.*, *Adrogue Chico S.A. v. FleetBoston Fin. Corp.*, 427 F. App'x 43 (2d Cir. 2011) (summary order).[1] *See e.g.*, *U.S. ex rel. O'Toole v. Community Living Corp.*, 2020 WL 2512099, at *6 (S.D.N.Y. May 14, 2020) ("[W]ere it true that Relator wholly failed to disclose his claims either to the bankruptcy court or to Plaintiff, it is clear that the claims currently before this Court would indeed be barred due to Relator's failure to disclose said claims").

As discussed below, for Plaintiffs' pre-petition claims only, the Court determines that the prerequisites for the application of judicial estoppel are satisfied and that the balance of the equities tip in favor of estoppel.[2]

### A.  The Prerequisites for the Application of Judicial Estoppel

---

[1] Plaintiffs briefly mention in a footnote, correctly, that the Second Circuit requires that courts "look to the law of the circuit in which the bankruptcy proceeding occurred for the limited purpose of determining whether the failure to list a particular claim on a debtor's bankruptcy filings 'is equivalent to an assertion that [the debtor] did not have such a claim." *Ashmore v. CGI Group, Inc.*, 923 F.3d 260, 273 (2d Cir. 2019).  However, the circuits in which the plaintiffs' bankruptcies were filed also invoke judicial estoppel for failure to disclose a legal claim in bankruptcy proceedings.  *See Cannon–Stokes v. Potter*, 453 F.3d 446, 447–48 (7th Cir. 2006); *Kimberlin v. Dollar General Corp.*, 520 F. App'x 312, 314 (6th Cir. 2013); *Weakley v. Eagle Logistics*, 894 F.3d 1244, 1246 (11th Cir. 2018).

[2] Plaintiffs contend that Defendant's motion is "fatally premature" or should have been a summary judgment motion. Pl. Mem. at 6-9.  To the contrary, "[a] party may raise a defense of . . . or judicial estoppel on a motion to dismiss pursuant to Rule 12(b)(6)." *Evercrete*, 429 F. Supp. 2d at 620.  The same is true of Rule 12(c) motions, as they are evaluated under the same standard, and may be raised "after the pleadings are closed – but early enough not to delay trial." *Lopez*, 2019 WL 5199431, at *7 (citations omitted). See also *Coppelson*, 2021 WL 148088, at *3 (collecting cases construing 12(b)(6) motions as 12(c) motions because pleadings have closed).  Therefore, Defendant's motion is properly before the Court.

Defendant argues that Plaintiffs took the position in their respective bankruptcy proceedings that they did not have any viable legal claims, and that this position in contrary to the one they now assert before this Court.  The threshold judicial estoppel requirements are met for Plaintiffs' pre-petition claims for unpaid wages, but not for any post-petition claims (which includes all of Plaintiff McKinney's claims).

### 1.  Pre-Petition Claims

Except for Plaintiff Mckinney, Plaintiffs all took the position before the bankruptcy court that they did not have any available legal claims when they filed their petitions.  In in bankruptcy proceedings, "[a] debtor seeking bankruptcy protection must disclose all of her assets, including any pre-petition legal claims that the debtor has." *Thomas v. JP Morgan Chase, N.A.*, 2012 WL 2872164, at *7 (E.D.N.Y. July 11, 2012) (citing *Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008)).  The disclosure requirement includes all legal claims that a debtor may have even if no lawsuit has been filed, so long as those claims have accrued.  *In re Salander*, 450 B.R. 37, 45 (Bankr. S.D.N.Y. 2011) ("When a bankruptcy petition is filed" all legal or equitable interests of the debtor become property of the estate, "includ[ing] all causes of action that the debtor had a right to bring at the time the bankruptcy was filed.").  All Plaintiffs concede that, when they were presented with the precise question of whether they had legal claims of any kind (contingent or otherwise) during their bankruptcy proceedings, they checked "No." *See supra* I.B.

The bankruptcy courts then adopted those positions when they discharged Plaintiffs' debts.  The element of "adoption of the position by a tribunal" is "usually fulfilled in the bankruptcy context when the bankruptcy court confirms a plan pursuant to which creditors release their claims against the debtor." *Galin v. U.S.*, 2008 WL 5378387, at *10 (E.D.N.Y. Dec.

23, 2018) (cleaned up).  *See also Rosenshein v. Kleban*, 918 F. Supp. 98, 104-05 (S.D.N.Y.

1996) ("The bankruptcy court . . . discharged their debts on the basis of their incomplete

disclosure of assets, thereby adopting their position.").

Moreover, the position those Plaintiffs took before the bankruptcy court is inconsistent

with the position Plaintiffs have taken before this Court, where Plaintiffs allege that they did

have viable legal claims that accrued prior to when those petitions were filed.    In terms of when

a claim accrues, "the standard rule [is] that accrual occurs when the plaintiff has a complete and

present cause of action," in other words, "when the plaintiff can file suit and obtain relief."

*Wallace v. Kato*, 549 U.S. 384, 388 (2007).  In the context of the FLSA, "a cause of action . . .

for unpaid minimum wages or unpaid overtime compensation and for liquidated damages

'accrues' when the employer fails to pay the required compensation for any workweek at the

regular pay day for the period in which the workweek ends."  29 C.F.R. § 790.21(b).  Plaintiffs'

claims for unpaid overtime therefore accrued when they were allegedly misclassified as exempt

from overtime and worked over 40 hours.  According to the facts alleged in the Third Amended

Complaint, all Plaintiffs, other than Plaintiff McKinney, had unpaid overtime claims that accrued

prior to the filing of their bankruptcy petitions.

In response, Plaintiffs argue that they were not aware at the time they filed for bankruptcy

that they had viable wage claims against Defendant.  However, "if a debtor is aware of facts that

may give rise to a possible cause of action, then that is a 'known' cause of action such that it

must be disclosed." *Grammer v. Mercedes Benz of Manhattan,* No. 12 CIV. 6005 LTS JCF, 2014

WL 1040991, at *3 (S.D.N.Y. Mar. 13, 2014).  Plaintiffs knew that they were classified as

exempt from overtime and that they were working more than forty hours a week.  Therefore,

their "lack of knowledge and ignorance of the legal significance of the facts underlying [their

wage-and-hour] causes of action do not alter their status as property of the bankruptcy estate."
*Reyes v. Sears Holding Corp.*, 2019 WL 3754197, at *5 (E.D.N.Y. Aug. 7, 2019).  Where "all of
the facts underlying" Plaintiffs' wage-and-hour claims existed "pre-bankruptcy," then "[e]ven if
[Plaintiffs were] not aware that those facts created a legally cognizable injury, [they] cannot
escape from the fact" that the underlying facts "created a potential causes of action before [they]
filed [their] bankruptcy petition[s]."  *Id*. at *4.  *See also Grammer*, 2014 WL 1040991, at *3.

To the extent Plaintiffs argue that, as an equitable consideration, their failure to disclose
these claims was a good faith mistake and thus that judicial estoppel should not apply, that
argument is addressed *infra* III.B.3.   The prerequisites to the application of judicial estoppel,
that a party have made prior inconsistent statements that were adopted in an earlier proceeding,
are satisfied as to Plaintiffs' pre-petition claims.

## 2.  Post-Petition Claims

The prerequisites for judicial estoppel are not satisfied for Plaintiffs' post-petition claims.
Defendant originally argued for judicial estoppel with regards to Plaintiffs claims for unpaid
wages during the periods before *and after* the bankruptcy petitions were filed.  However,
Defendant appears to have abandoned the argument for estoppel of any post-petition claims in its
Reply brief.  Dkt. No. 200 at 5-6, 8-10.  This is for good reason, as "a Chapter 7 estate does not
include the wages a debtor earns or the assets he acquires *after* the bankruptcy filing."  *Harris v.
Viegelahn*, 135 S. Ct. 1829, 1835 (2015).  Because Plaintiffs did not, and were not required to,
make any representations to the bankruptcy court about future claims for unpaid wages, Plaintiffs
did not make prior, inconsistent statements as to these claims and there is no basis for the
application of judicial estoppel.  *See Thomas,* 2012 WL 2872164, at *7 ("A debtor seeking

bankruptcy protection must disclose all of her assets, including any *pre*-petition legal claims that the debtor has.") (emphasis added).

For that reason, judicial estoppel does not apply to any of Plaintiff McKinney's claims, as she does not assert any pre-petition claims for unpaid wages. She filed her bankruptcy petition on November 20, 2013, and Defendant did not reclassify its LTD Claim Specialists as exempt until in or about November of 2013. Dkt. No. 197 ¶ 6. Thus, at most, Plaintiff McKinney had been classified as exempt for about 20 days when she filed for bankruptcy. She has attested that she did not work overtime hours during this time, as this was her orientation period, and has stated that she is not "assert[ing] any claim for overtime damages relating to [her] hours worked prior to the filing of [her] bankruptcy petition." *Id.* ¶ 15.

Therefore, Defendant's motion for judgment on the pleadings as to Plaintiff McKinney's claims, or any claims for unpaid wages after the petitions were filed, is denied.

## B. **The Balance of the Equities**

As discussed above, the prerequisites for judicial estoppel apply to Plaintiffs' pre-petition claims for unpaid wages because Plaintiff failed to disclose them to the bankruptcy courts. But the Court's inquiry is not over. "That a litigant (i) took a prior inconsistent position and (ii) convinced an earlier tribunal to adopt that position may be necessary conditions for judicial estoppel to be imposed, but they are not sufficient ones." *Clark*, 886 F.3d at 266-67. "Before judicially estopping a litigant," the Court must also "inquire into whether the particular factual circumstances of a case 'tip the balance of equities in favor' of doing so." *Id.* Considering the various equitable factors applicable to this case, including whether (a) Plaintiffs derived an unfair advantage, (b) the impact on judicial integrity is certain, (c) Plaintiffs acted in good faith, and (d)

Defendant will receive a windfall for their alleged illegal conduct, the Court determines that the equities tip in favor of judicial estoppel.

### 1. Unfair Advantage

The Second Circuit instructs that the Court is to begin the inquiry by assessing whether "the party asserting the two inconsistent positions would derive an unfair advantage against the party seeking estoppel." *Id.* at 267.  To be sure, the Court agrees with Plaintiffs that their prior inconsistent statements have not provided them an unfair advantage over Defendant.  But the Second Circuit has also made clear that the lack of unfair advantage over the other party "does not end the inquiry" in a case like this one, where Plaintiffs *have* gained a significant unfair advantage over their "former creditors" who "had a right to consider the undisclosed claims during bankruptcy." *Id.* (cleaned up).  Because "full disclosure by debtors is essential to the proper functioning of the bankruptcy system," *Chartschlaa*, 538 F.3d at 122, and therefore the "sanctity of the oath and the integrity of the judicial process" generally, courts may "justif[y] the imposition of judicial estoppel" in these circumstances. *Clark*, 886 F.3d at 267.

### 2. Impact on Judicial Integrity

"Because this doctrine is primarily concerned with protecting the judicial process, relief is granted only when the risk of inconsistent results with its impact on judicial integrity is certain." *Ashmore v. CGI Group, Inc.*, 923 F.3d 260, 273 (2d Cir. 2019).  Courts have readily recognized that the "risk of inconsistent results with its impact on judicial integrity" is certain in these circumstances. *Id.  See, e.g., id.*; *Jeziorowski v. Credit Protection Ass'n, L.P.*, 2017 WL 1549965, at *3 (W.D.N.Y. May 1, 2017).  And the Court sees no reason in this particular case why Plaintiffs' failure to disclose their claims to the bankruptcy courts is any different.

### 3. Good Faith

Because the doctrine is inherently equitable, "if the failure to disclose results from a good faith mistake or an unintentional error, judicial estoppel does not apply." *Isnady v. Village of Walden*, 2019 WL 3252753, at \*6 (S.D.N.Y. July 19, 2019) (citation omitted), *aff'd* 799 F. App'x 91 (2d Cir. Apr. 2, 2020). While "the Second Circuit has not established a standard for when to apply the good faith exception," the "district courts in this Circuit have referenced other circuit courts' rulings and held that failure to disclose assets will only be deemed inadvertent or due to mistake when either the debtor has [1] no knowledge of the claims or [2] no motive to conceal the claims." *Id*. (quoting *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013)). *See Ashmore*, 923 F.3d at 281 n.15 (noting that the Second Circuit has "rarely" invoked the good faith exception, or "explored its limits").

First, there is no basis for the Court to determine that Plaintiffs had "no knowledge" of their claims. *Isnady*, 2019 WL 3252753 at \*6. Plaintiffs argue that they were not aware that they had viable claims until after the bankruptcy petitions were filed when they received the opt-in notices for the suit or otherwise received legal advice – and that in fact Plaintiffs had relied to their detriment on Defendant's misclassification of them as exempt from overtime. As discussed above, Plaintiffs are not required to know of a particular lawsuit that they can join or to have been told by counsel that they have a claim for Plaintiffs to know that they have a claim.[3] Plaintiff's obligation to disclose that they had a claim to the bankruptcy court was triggered when they knew the *facts* giving rise to their claims. Plaintiffs were "well aware of the facts giving rise to the present claim by the time [they] filed [their] insolvency petition." *Sea Trade Co. v. FleetBoston Fin. Corp*., No. 03 CIV. 10254 (JFK), 2008 WL 4129620, at \*17 (S.D.N.Y.

---

[3] Considering that a FLSA collective action "notice has no independent legal significance," *Huer Huang v. Shanghai City Corp.*, 2020 WL 5849099, at \*14 (S.D.N.Y. Oct. 1, 2020), and thus has no bearing on Plaintiffs' obligations to timely file their claims, it certainly cannot have any bearing on Plaintiffs' obligations to disclose any viable legal claims it has to the bankruptcy court.

Sept. 4, 2008). *See also Galin v. I.R.S.*, 563 F. Supp. 2d 332, 341 (D. Conn. May 1, 2008) (The "law is clear that legal advice and ignorance of the law are not defenses to judicial estoppel.").

Nor is the Court convinced that Plaintiffs' failure to disclose their claims was the fault of Defendant. Defendant did not "conceal[] any facts that would entitle [Plaintiffs] to relief under the FLSA," including the fact that they were classified as exempt from overtime. *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001); *Cf. id* (denying a plaintiff's argument that the statute of limitations should be equitably tolled on the grounds that he detrimentally relied on Defendant's misclassification of him as an independent contractor, because the plaintiff knew that he had been classified as an independent contractor and that he was working overtime, and therefore he "knew the *facts* that would comprise a cause of action under either the FLSA").

Overall, in terms of a debtors' knowledge, it is not the case that judicial estoppel is only appropriate where a debtor intentionally defrauds the bankruptcy court. The Court need not determine that Plaintiffs' failure "to disclose was the product of malice or 'purpose' for judicial estoppel to apply," but rather that "the failure to list the accrued cause of action was not 'a good faith mistake or unintentional error.'" *Sea Trade Co. Ltd.*, 2008 WL 4129620 at *17 (citing *Simon v. Safelite Glass Corp.*, 128 F.3d 68, 73 (2d Cir. 1997)). The Court cannot know whether, at the time of filing, Plaintiffs had the quiet intent to pursue their unpaid wage claims after their debts were discharged, but instead can only inquire whether Plaintiffs were aware of the facts giving rise to their claims. Even if Plaintiffs were subjectively ignorant that they had legal claims, "[t]o reward Plaintiff's ignorance would create a loophole for the unscrupulous debtor to evade his creditors following bankruptcy." *Reyes v. Sears Holdings Corp.*, 2019 WL 3754197, at *4. As a matter of equity, it would thwart the bankruptcy process entirely to hold that the party

claiming estoppel needed to present evidence that a debtor had concrete plans to bring their

claims but were secretly waiting until after their debts had been discharged to do so.

Aside from knowledge, courts have also recognized a good faith exception where a debtor

has "no motive to conceal their claims." *Isnady*, 2019 WL 3252753 at *6. But the reasons not to

disclose a viable claim to the bankruptcy court in this situation is apparent. "Had the trustee known

about" Plaintiffs' claims against Defendant, "[it] might have attempted to sell the claim or to have

extracted a settlement from the defendants in this case for the benefit of [plaintiff's] creditors."

*Ibok v. Siac-Sector Inc.*, 2011 WL 293757, at *8 (S.D.N.Y. Jan. 31, 2011) (collecting cases), *report*

*and recommendation adopted*, 2011 WL 979307 (S.D.N.Y. Mar. 14, 2011). *See also Azuike*, 962

F. Supp. 2d at 600 (same). Therefore, because Plaintiffs were aware of the facts surrounding their

claims and had an apparent motive to conceal them, Plaintiffs failure to disclose is not "deemed

inadvertent or due to mistake." *Isnady*, 2019 WL 3252753 at *6.

The Court's conclusion that the good faith exception does not apply is bolstered by the fact

that even after Plaintiffs initiated or joined this litigation and asserted claims before this Court

covering the time period prior to their filing of bankruptcy petitions, Plaintiffs still did nothing to

correct their nondisclosure with the bankruptcy court. It was only after Defendant filed the instant

motion that Plaintiffs decided to take action and inform the bankruptcy court or the trustees. "[A]n

attempt on the part of a debtor to correct an omission only after an opposing party either threatens

to or actually does file a motion is of little to no consequence in assessing a claim of judicial

estoppel." *Goldson v. Kral, Clerkin, Redmond, Ryan, Perry & Van Etten, LLP*, No. 13CV2747-

GBD-FM, 2014 WL 4061157, at *6 (S.D.N.Y. July 11, 2014) (cleaned up), *report and*

*recommendation adopted*, No. 13 CIV. 2747 GBD FM, 2014 WL 3974584 (S.D.N.Y. Aug. 13,

2014).

### 4. **Defendant's Windfall and Contribution**

Plaintiffs also argue that the Court should decline to apply judicial estoppel because the Defendant will receive a windfall despite their allegedly illegal conduct if the Court estops Plaintiffs' claims.  The Court has already recognized that Defendant has not been prejudiced by Plaintiffs prior inconsistent statements and further recognizes that, if it were true that Defendant is liable for failing to pay Plaintiffs overtime, Defendant would inherit the good fortune of evading liability on the estopped claims for its violations of the FLSA.

But Defendant is not the Court's only focus in this inquiry.  As discussed above, the Court must also consider the interests of Plaintiffs' creditors and the bankruptcy courts.  The "central purpose of the bankruptcy code to give debtors a fresh start in life and a clear field for future effort unburdened by the existence of old debts," *In re Bogdanovich*, 292 F.3d 104, 107 (2d Cir. 2002), and in exchange Plaintiffs are required to comply with the requirements of the Chapter 7 process, which includes making "full disclosure[s]"of all of their assets.  *Chartschlaa*, 538 F.3d at 123.  If courts were to decline to apply judicial estoppel for the sole reason that it would allow defendants to indirectly benefit from the plaintiff's nondisclosure in a prior bankruptcy proceeding, it would signal to debtors to "[c]onceal your claims; get rid of your creditors on the cheap, and start over with a bundle of rights."  *Sea Trade Co.*, 2008 WL 4129620, at *16.  Judicial estoppel is warranted when the facts demonstrate that this process has been thwarted.

Lastly, Plaintiffs argue that, as a matter of equity, the Court should consider Defendant's contribution to the prior inconsistent statements.  They claim that, assuming Defendant's liability, Defendant's failure to properly compensate Plaintiff's may have contributed to Plaintiffs need to file for bankruptcy in the first place.  Perhaps so, but Defendant's conduct had

no bearing on Plaintiffs' decision *not to disclose* their claims to the bankruptcy court. And that decision is the reason for applying judicial estoppel in this case.

\* \* \*

Therefore, because the requirements for judicial estoppel are satisfied and the equities favor estoppel, the Court will apply judicial estoppel to Plaintiff's claims for unpaid wages prior to the filing of their bankruptcy petitions.

### 3. Dismissal is appropriate

Plaintiffs request that, even if the Court determines that judicial estoppel applies, the Court choose an alternative remedy to dismissal. Plaintiffs ask instead that they be permitted to seek to reopen their bankruptcies and amend their disclosures, or to allow the trustee to intervene on this case. The Court does not find those alternatives to be appropriate. First, Plaintiffs have already received the benefit of non-disclosure, and the damage to the integrity of the judicial system will not be rectified by an attempt to amend. "[A]llowing a debtor to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing potential assets only if he is caught concealing them," which is "an approach that would only diminish a debtor's incentive to provide a true and complete disclosure of her assets to the bankruptcy courts." *Azuike v. BNY Mellon*, 962 F. Supp. 2d 591, 599 (S.D.N.Y. 2013) (quotations omitted). Additionally, this motion has been pending since June 8, 2020, and there has been no attempt to intervene by any bankruptcy trustee. Therefore, dismissal is the appropriate remedy.

### IV.   CONCLUSION

For the reasons stated above, Defendant's motion is GRANTED IN PART and DENIED IN PART. Defendant's motion for judgment as to Plaintiffs' claims for unpaid wages prior the

16

filings of their bankruptcy petitions is GRANTED.  Defendant's motion for judgment as to

Plaintiff McKinney's claims and the post-petition claims of any Plaintiff are DENIED.

This resolves Dkt. No. 170.  The Court will resolve the parties' pending summary

judgment and certification-related motions in due course.


SO ORDERED.

Dated: March 31, 2021
        New York, New York

_____
ALISON J. NATHAN
United States District Judge

17